## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
#### (WEST PALM BEACH DIVISION)

In re:

**PLATO CHRIS FOUFAS,**                          **CASE NO.  20-22967-EPK**

       **Debtor.**                                **CHAPTER 7**

_____/

**DEBORAH MENOTTE, as Chapter 7**
**Trustee for the Debtor, Plato Chris Foufas,**

       **Plaintiff,**                          **ADV. PROC. NO. 21-01362-EPK**

**v.**

**PLATO CHRIS FOUFAS, Individually,**
**BRIARCLIFFE LAKESIDE ASSOCIATES, LLC,**
**an Illinois limited liability company,**
**FOUFAS PROPERTIES/BRIAR CLIFFE, INC.,**
**an Illinois corporation, EARLSTED, LLC,**
**a Nevada limited liability company,**
**WRIGHTFORD CORPORATION, a**
**Nevada corporation,**
**SIXTH AND GEST PROPERTIES, LLC, a**
**Delaware limited liability company,**
**PLATO FOUFAS & COMPANY, LLC,**
**a Delaware limited liability company,**
**PFCO, INC., an Illinois corporation,**
**ASTOR STREET HOLDINGS, LLC,**
**a Delaware limited liability company,**
**KM SETTLEMENT DATED MAY 23, 1996**
**BETWEEN PLATO CHRIS FOUFAS AND**
**NOVA CORPORATION, a foreign trust,**
**THE KM SETTLEMENT DATED JANUARY 9, 1998**
**BETWEEN PLATO FOUFAS AND ST. VINCENT**
**TRUST SERVICES, LTD., a foreign trust,**
**ORION CORPORATE & TRUST SERVICES, LTD., as**
**Trustee of the KM Settlement, a foreign limited company,**
**GUARDIAN FIDUCIARY MANAGEMENT, LTD., as**
**Protector of the KM Settlement, a foreign limited company,**
**and TIMOTHY FOUFAS, Individually,**

       **Defendants.**

_____/

## FIRST AMENDED ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT, TURNOVER OF ESTATE PROPERTY, AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, SUBSTANTIVE CONSOLIDATION, <u>AND FOR OTHER RELIEF</u>

The Plaintiff, Deborah Menotte, Chapter 7 trustee of the estate of the Debtor, Plato Chris Foufas, by and through counsel, and pursuant to Rule 7001, Federal Rules of Bankruptcy Procedure, files this First Amended Adversary Complaint For Declaratory Judgment, Turnover of Estate Property, Avoidance And Recovery of Fraudulent Transfers, Substantive Consolidation, and for Other Relief (the "<u>Amended Complaint</u>") and sues the Defendants, Plato Chris Foufas, Briarcliffe Lakeside Associates LLC, Foufas Properties/Briarcliffe, Inc., Earlsted, LLC, Wrightford Corporation, Sixth and Gest Properties, LLC, Plato Foufas & Company, LLC, PFCO, Inc., Astor Street Holdings, LLC, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9, 1998 Between Plato Foufas and St. Vincent Trust Services, Ltd., Orion Corporate & Trust Services, Ltd., as Trustee of the KM Settlement, Guardian Fiduciary Management, Ltd., as Protector of the KM Settlement and Timothy Foufas (collectively, the "<u>Defendants</u>") and states, as follows:

### <u>THE PARTIES</u>

1.      This is an adversary proceeding brought by the Plaintiff pursuant to Federal Rule of Bankruptcy Procedure 7001(4) for declaratory judgment, turnover, avoidance of fraudulent transfers, substantive consolidation, and for other related relief.

2.      Plaintiff, Deborah Menotte ("<u>Plaintiff</u>" or "<u>Trustee</u>"), is the Chapter 7 Trustee duly appointed and acting Chapter 7 Trustee for the Debtor and bankruptcy estate (the "<u>Estate</u>").

3.      The Defendant/Debtor, Plato Chris Foufas ("<u>Foufas</u>" or "<u>Debtor</u>"), is the Chapter 7 debtor in the main bankruptcy proceeding, and is a resident of Palm Beach County, Florida.

4.      Defendant, Briarcliffe Lakeside Associates, LLC ("<u>Briarcliffe</u>"), is a limited

liability company organized and existing under the laws of the State of Illinois that is also registered in the State of Colorado.  Further, at all times material hereto, Briarcliffe was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

5.      Moreover, at all times material, Briarcliffe is the owner of a single family residence with an address of 210 Woods Road, Woody Creek, Colorado 81611 (the "Colorado Property"), which is located near Aspen, Colorado.

6.      Defendant, Foufas Properties/Briarcliffe, Inc. sometimes referred to as Foufas Properties/Briar Cliffe, Inc. ("Foufas Properties"), is a corporation organized and existing under the laws of the State of Illinois and which, at all times material hereto, was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

7.      Defendant, Earlsted, LLC ("Earlsted"), is a limited liability company organized and existing under the laws of the State of Nevada that is registered as a foreign limited liability company to transact business in the State of Florida. Further, at all times material hereto, Earlsted was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

8.      Defendant, Wrightford Corporation ("Wrightford"), is a corporation organized and existing under the laws of the State of Nevada that is registered as a foreign limited liability company to transact business in the State of Florida. Further, at all times material hereto, Wrightford was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

9.      Defendant, Sixth and Gest Properties, LLC d/b/a Devon Self Storage (hereinafter, "Sixth and Gest"), is a limited liability company organized and existing under the laws of the State of Delaware that is also registered in the State of Ohio. Further, at all times material hereto, Sixth

and Gest was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

10.     Defendant, Plato Foufas & Company, LLC a/k/a Plato Foufas & Co., LLC (hereinafter, "PFCO LLC"), is a limited liability company organized and existing under the laws of the State of Delaware and is registered as a foreign limited liability company to transact business in the State of Florida. Further, at all times material hereto, PFCO LLC was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

11.     Defendant, PFCO, Inc. ("PFCO"), is a corporation organized and existing under the laws of the State of Illinois. Further, at all times material hereto, PFCO was formed, owned, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

12.     Defendant, Timothy I. Foufas ("T. Foufas"), is a resident of Cook County, Illinois, and is the son, as well as, an insider of the Debtor as defined in §101(31) of the Bankruptcy Code.

13.     Defendant, Astor Street Holdings, LLC ("Astor Street"), is a limited liability company organized and existing under the laws of the State of Delaware that is also registered in the State of Ohio. Further, Astor Street is owned by the Defendant, T. Foufas, but was formed, operated, and/or controlled by the Debtor with intent to hinder, delay, or defraud creditors.

14.     Defendant, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation ("KM Settlement 1996"), is a foreign self-settled offshore trust currently sited in Belize. Further, at all times material hereto, the KM Settlement was formed, owned, operated, and/or controlled by the Debtor with an intent to hinder, delay, or defraud creditors.

15.     Defendant, The KM Settlement dated January 9, 1998 ("KM Settlement 1998") Between Plato Foufas and St. Vincent Trust Services, Ltd., is a foreign self-settled offshore trust currently sited in Belize City, Belize.

16. Further, at all times material hereto, the KM Settlement 1996 and KM Settlement 1998 were relocated, amended and restated from time to time, including, but not limited to, the First, Second, Third, Fourth and Fifth Amendments and Restatements to the KM Settlement 1998 (hereinafter, the KM Settlement 1996 and KM Settlement 1998, together with all amendments and restatements thereto, shall be referred to collectively as the "KM Settlement" or "KM Trust").

17. Defendant, Orion Corporate & Trust Services, Ltd. ("Orion" or "KM Trustee"), is a Belize limited company that serves as trustee of the KM Settlement.

18. Defendant, Guardian Fiduciary Management, Ltd. ("Guardian" or "Protector"), is a Bahamian limited company that serves as "Protector" of the KM Settlement.

19. Further, at all times material hereto, the Debtor was the *de facto* and/or *de jure* officer, director, manager, and/or undisclosed owner, shareholder, member, trustee, beneficiary, and/or control person of the KM Trust and each of the above-referenced Defendant business entities (a) Briarcliffe, (b) Sixth and Gest, (c) Earlsted, (d) Foufas Properties, (e) PFCO, (f) PFCO LLC and (g) Wrightford (collectively, the "Business Entity Defendants" or "Business Entities").

## JURISDICTION AND VENUE

20. The Bankruptcy Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

21. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

22. Pursuant to Rule 7004(d), Fed. R. Bankr. P., the Business Entities and T. Foufas, are subject to nationwide service of process in this adversary proceeding. Further, the exercise of personal jurisdiction over the Defendants, KM Settlement, Orion, Guardian, T. Foufas and the Business Entity Defendants, does not offend traditional notions of fair play or substantial justice,

and is otherwise consistent with the provisions of the U.S. Constitution.

23.     Moreover, as more particularly described below, KM Settlement, Orion, Guardian, T. Foufas and Business Entities, are subject to the jurisdiction of this Court pursuant to Florida's Long Arm Statute Section, §48.193 (1)(a) and (2), *Fla. Stats.* because, at all times material hereto, these Defendants, personally or through an agent, engaged in continuous and systematic activities within and/or directed to the State of Florida, as follows:

i.      operated, conducted, engaged in, or carried on a business or business venture within the state with respect to certain business, banking, and financing transactions involving the KM Settlement and the Settlor and principal trust beneficiary, Foufas, who is a resident of the State of Florida, as well as, other third parties in the state;

ii.     having an office or agency in the State of Florida; and

iii.    conducted and engaged in substantial and not isolated activities within the State of Florida in connection with certain business, banking, and financing transactions involving the KM Settlement and the Settlor and principal trust beneficiary, Foufas, who is a resident of the State of Florida, as well as, other third parties in the state.

24.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

25.     All conditions precedent to the filing of this action have been performed, occurred, waived or have otherwise been excused.

## GENERAL ALLEGATIONS

### A.    Procedural Background.

26.     On November 27, 2020 (the "Petition Date"), the Defendant/Debtor filed a voluntary petition for relief (the "Petition") under Chapter 7 of the Bankruptcy Code (the "Code"), which bankruptcy case is pending before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Case").

27.     On December 11, 2020, the Debtor filed his Summary of Schedules, Schedules A-J (the "Schedules") and Statement of Financial Affairs ("SOFA")[ECF No. 8]. On December 29,

2020, the Debtor filed the Amended SOFA ("Amended SOFA") [ECF No 13].

28.    Pursuant to the Notice of Chapter 7 Bankruptcy Case [ECF No. 2], the 341 Meeting of Creditors was first noticed for December 30, 2020 (the "Meeting of Creditors"), but was later continued and concluded on January 20, 2021 (the "Continued Meeting of Creditors").

29.    On March 10, 2021, the Trustee filed the Chapter 7 Trustee, Deborah Menotte, Notice Taking Rule 2004 Examination *Duces Tecum* of the Debtor (the "Rule 2004 Examination") [ECF No. 33] which noticed the Rule 2004 Examination of the Debtor for April 7, 2021, and requested the production of numerous documents relating to the financial affairs and condition of Foufas, including, without limitation, the Debtor's interests in trusts, bank accounts, "business entities" and "undisclosed entities" as defined therein and discussed in more detail below.

30.    Accordingly, on March 30, 2021, the Trustee sent to Debtor's counsel a Demand for Turnover and Request for Standstill of Dissipation of Estate Property Pursuant 11 U.S.C. §542 (the "Standstill Demand").

31.    On March 31, 2021, the Debtor's counsel confirmed receipt of the Standstill Demand and indicated that the Debtor would cooperate in the production of documents responsive to the Notice no later than April 15, 2021.

32.    On April 5, 2021, due to extensions of time requested by the Debtor to produce documents responsive to the Rule 2004 Examination, the Trustee filed an Amended Notice Taking Rule 2004 Examination *Duces Tecum* of the Debtor (the "Amended Rule 2004 Examination") [ECF No. 36] resetting the Rule 2004 Examination of Foufas for May 6, 2021.

33.    On April 21, 2021, the Trustee filed an Emergency Motion by Chapter 7 Trustee, Deborah Menotte, For Preliminary Order Directing Turnover and Imposing Standstill Pending Further Order of the Court (the "Turnover Motion") [ECF No. 37].

34.     On April 26, 2021, Foufas filed the Debtor's Motion by Chapter 7 Trustee, Deborah Menotte, For Preliminary Order Directing Turnover and Imposing Standstill Pending Further Order of the Court (the "Turnover Response") [ECF No. 41].

35.     On May 6, 2021, after notice and hearing on the Turnover Motion, the Court entered an Order Granting, In Part, and Denying, In Part Emergency Motion by Chapter 7 Trustee, Deborah Menotte, For Preliminary Order Directing Turnover and Imposing Standstill Pending Further Order of the Court (the "Turnover Order")[ECF No. 50], which remains in effect.

36.     On May 6, 2021, the Trustee conducted an initial Rule 2004 examination of the Debtor, which was continued and concluded on July 20, 2021.

37.     On October 5, 2021, Foufas filed his Amended Schedule C [EFC No. 74] claiming the subject real property located at 11932 Longwood Green Drive Wellington, FL 33414, as his homestead exemption under "Fla. Const. Art. X, §4(a)(1)" with respect to the subject real property located at 11932 Longwood Green Drive Wellington, FL 33414 (the "Homestead Property").

**B.      Formation of the KM Settlement and Dissolution Action.**

38.     In a bifurcated dissolution proceeding (hereinafter, the "Dissolution Action")[1] before the Circuit Court of Cook County, Illinois (the "Divorce Court"), the marriage of the Debtor and his ex-wife, Theodora Foufas ("Teddy"), was dissolved on November 6, 1995, leaving the issues of property division and maintenance to be resolved at a later date.

39.     While the property division portion of the Dissolution Action was still pending, Foufas, as 'Settlor' and 'Grantor', caused the creation of the KM Settlement and transferred

---

[1] See, *In re Marriage of Plato Foufas, Petitioner v. Theodora ("Teddy") Foufas, Respondent, Case No. 91 D 4780,* pending in the Circuit Court of Cook County, Illinois, and any related appeals, including the appellate case, *In Marriage of Plato Foufas, Petitioner/Counter-Respondent-Appellant v. Theodora ("Teddy") Foufas, Respondent/Counter-Petitioner-Appellee, Case No. 2020 IL App (1st) 1-19-2017-U,* in the Appellate Court of Illinois, First District.

substantially all of his business holdings and interests into the offshore trust. The initial beneficiaries of the KM Settlement were Foufas, along with his current wife and insider of the Debtor, Charmaine Brower a/k/a Charmaine Foufas ("Brower"), and T. Foufas, who has since been removed as a beneficiary. A copy of the KM Settlement is attached hereto as **Exhibit "A"**.

40.    The KM Settlement was initially created by Foufas on or about May 23, 1996, and sited on the Island of Nevis, West Indies, but was later relocated, amended and restated from time to time during the Divorce Action and up through the Petition Date. On or about January 9, 1998, the KM Settlement was relocated to the Isle of Saint Vincent, West Indies. Subsequently, on or about October 3, 2003, the KM Settlement was relocated to Belize City, Belize, which is the current situs of the trust, and amended again in October, 2020, just prior to filing the Petition.

41.    On or about October 4, 1999, a Supplemental Judgment of Dissolution of Marriage (the "Supplemental Judgment") was entered in the underlying Dissolution Action, awarding Teddy monthly maintenance in the amount of $22,000.00.   A copy of the Supplemental Judgment is attached hereto as **Exhibit "B"**.

42.    The Supplemental Judgment provided that the KM Trust, referred to therein as the 'Grantor Trust', created by the Debtor "*constituted a fraudulent conveyance in law in accordance with the provisions of the Uniform Fraudulent Transfer Act*." (Supplemental Judgement, pg. 11).

43.    On November 12, 2003, Foufas filed a petition in the Dissolution Action seeking a modification of his maintenance and support obligations to Teddy. The Divorce Court denied the petition and, on December 14, 2004, denied the Debtor's motion for reconsideration.

44.    In July 2009, the Debtor and Brower purportedly transferred and assigned all of their then-existing personal property to the KM Settlement (the "Assignments").

45.    On March 18, 2016, Teddy filed a Petition for Indirect for Adjudication of Indirect

Civil Contempt (the "<u>Contempt Petition</u>") in the Dissolution Action seeking to have Foufas found in indirect civil contempt of court for having failed to pay maintenance since January 1, 2006. In connection with the Contempt Petition, Foufas and Teddy submitted an Agreed Admission of Exhibits & Stipulations As To Facts Regarding Petition For Adjudication of Indirect Civil Contempt filed March 22, 2016 (the "<u>Stipulation of Facts</u>"). A copy of the Stipulation of Facts (without exhibits) is attached hereto as **Exhibit "C"**.

46.     Following a hearing on June 4, 2018, the Divorce Court found that Teddy had established a *prima facie* case of indirect civil contempt and issued a rule to show cause against Foufas why he should not be held in contempt of court for failing to pay court ordered maintenance from January 1, 2006, through February 29, 2016.

47.     Thereafter, on August 1, 2019, the Divorce Court issued an order, finding Foufas in indirect civil contempt of court for willful failure to pay maintenance to Teddy, and ordering the Defendant committed to the Cook County Jail until he purges himself of contempt by paying $3,564,000 for past due maintenance plus statutory interest of $1,875,621.78, for a total amount due Teddy of $5,183,621.78 (the "<u>Contempt Order</u>").  However, the Divorce Court had stayed the Contempt Order until November 1, 2019, to allow Foufas time to post a $250,000 bond, which was not forthcoming.

48.     In support of its finding of contempt, the Divorce Court stated that: "Debtor failed to show an inability to pay the past due maintenance; the KM trust is the source of the funds paying all of Debtor's expenses; Debtor controls the KM trust; and, until at least June 27, 2019, Debtor possessed the ability to amend the terms of the KM trust and/or make decisions regarding payments and distributions". The Debtor appealed the Contempt Order.

49.     On June 5, 2020, the Appellate Court of Illinois ruled in its Order that "Plato both

voluntarily created the KM trust and voluntarily placed all of his assets into that trust with the obvious purpose of avoiding the payment of his maintenance obligations. The evidence clearly established that Plato had the ability to pay his maintenance obligations and willfully failed to do so. We conclude that Plato failed in his burden of proving that he neither had money to pay his maintenance obligations nor willfully disposed of money or assets with which he might have paid." (See, ¶19). A copy of the Illinois Appellate Order is attached hereto as **Exhibit "D"**.

50.     Moreover, the Appellate Court held that "the circuit court's order [Divorce Court] finding Plato in indirect civil contempt and ordering his incarceration until he purges the contempt by paying Teddy $5,183,621.78 is not against the manifest weight of the evidence. As a consequence, we affirm both the circuit court's order finding Plato in indirect civil contempt and its denial of his motion for rehearing." (See, ¶23).

**C.     The Debtor's Control of The KM Settlement And Trust Assets.**

51.     Prior to the Petition Date and throughout the Dissolution Action, the Debtor has continued to conceal his business interests in the Business Entity Defendants and other assets in the KM Trust through a series of amendments and changes in the trust situs.  This inequitable and improper conduct has allowed Foufas to fund his lavish lifestyle for himself and Brower, while attempting to place his substantial assets beyond the reach of creditors.

52.     The KM Settlement's current operative trust document is the First Restatement of the Fifth Amendment and Restatement of the KM Settlement dated January 9, 1998, which was signed on October 30, 2020 ("First Restatement"). In accordance with the First Restatement and through prior amendments, Orion has served as 'Trustee' and Guardian has served as 'Protector' of the KM Settlement. A copy of the First Restatement is attached hereto as **Exhibit "E"**.

53.     The trust corpus or *res* of the KM Settlement presently consists of the following

assets and properties: (i) EFG Bank AG of Zurich, Bank Account No. XX-9367, with a balance of $1,419,708.08 as of December 31, 2020 (the "Swiss Account"); (ii) stock, membership, and partnership interests, including, but not limited to, any voting, distributions and other legal, beneficial and/or equitable ownership rights in the Business Entities (collectively, the "Stock/Membership Interests"); and (iii) Assignments of various personal property, cash and assets of the Debtor and Brower (collectively, the "Personal Property") (hereinafter, the Swiss Account, Stock/Membership Interests, and Personal Property, together with any other legal, beneficial and/or equitable interests of the KM Settlement in real or personal property shall be referred to collectively as the "Trust Assets").

54.     Following the entry of the Turnover Order, and until the recent incarceration of Foufas in the Cook County jail by the Divorce Court for failure to comply the Contempt Order, the Debtor has been able to maintain his *pre-petition* lifestyle with Brower, from distributions received from the KM Settlement and Business Entities. In reality, the Debtor has always retained a legal, equitable and/or beneficial interest in the Trust Assets and, therefore, the self-settled KM Settlement is invalid as violating public policy.

i.     **The role of Guardian and Orion in relation to Foufas and KM Settlement:**

55.     From its inception, the KM Settlement was a self-settled trust in which Foufas was the "Settlor" and, as of the Petition Date, was and continues to be the prime trust beneficiary. According the terms of the First Schedule of the First Restatement, in particular, ¶1(a) and (b) thereof, the KM Settlement is a discretionary trust whereby Orion and Guardian have the power to pay or apply all or any part of the income of the Trust Assets to or for the benefit of Foufas. Accordingly, there is no blanket protection of the Trust Assets from the Trustee to be recovered and administered for the benefit of creditors of the Estate.

56.     Pursuant to the Second Amendment And Restatement of The KM Settlement dated October 3, 2003, by and between Foufas and Cititrust International, Inc. ("Cititrust"), as former trustee of the KM Settlement (the "Second Amendment"), and by written notice to Cititrust dated October 3, 2003, Foufas appointed Guardian as 'Protector' of the KM Settlement.  As Protector of the KM Trust, Guardian was granted certain powers regarding the appointment and removal of Trustees and administration of the KM Trust, subject to the appointment and removal of Guardian by Foufas, as the Settlor of the KM Settlement.

57.     Following the appointment of Guardian as Protector of the KM Settlement, and at all times material hereto, Guardian operated as an international business corporation providing asset protection and management services through the use of offshore trusts and other investment vehicles for clients located within the United States and throughout the world.  Guardian, along with its affiliated companies, allows individuals, such as Foufas, including corporations, partnerships, and other business entities to shield assets from the reach of creditors.

58.     Furthermore, in its capacity as Protector of the KM Settlement, Guardian has engaged in continuous and systematic contacts with Foufas directed to the forum state of Florida, such that Guardian reasonably anticipated being haled into the Florida courts. By way of example, but not limitation, Foufas and Guardian communicated and corresponded with each other directed to the Debtor at the Homestead Property, through the exchange of letters dated May 7, 2021 (from Foufas) and May 12, 2021 from Guardian (the "Guardian Letter"), respectively, concerning the Turnover Order. A true and correct copy of Guardian Letter is attached hereto as **Exhibit "F"**.

59.     Notwithstanding that the Protector states in the Guardian Letter that the Turnover Order is an "Event of Duress" and refused to liquidate the Trust Assets or comply with the order, Guardian engaged substantial and not isolated activities in Florida concerning the KM Settlement.

60.      Likewise, Orion operates and transacts business internationally providing banking, investment, and financial services to individuals and corporations through the establishment of offshore trusts, companies and bank accounts, to conduct international trade, investment activities, and asset protection to clients located within the United States and around the world. As part of its business, Orion serves as the trustee(s) of offshore trusts which it forms and/or administers.

61.      In fact, Orion maintains, solicits and promotes its "Offshore Trust" services on its website *orionibc.com*, among other platforms, and is associated with the Law Firm of Arguelles & Company, LLC (the "Arguelles Law Firm"). Through its affiliation with the Arguelles Law Firm, Orion transacts and/or has transacted business within the state of Florida in association with the law firm and Orion Corporate & Trust Services, LLC, a Florida limited liability company, which was formed in March, 2017, and later dissolved in 2019.

62.      Pursuant to the Third Amendment And Restatement of The KM Settlement dated November 21, 2006, by and between Foufas and Orion (the "Third Amendment"), the Debtor appointed Orion as successor Trustee to Cititrust of the KM Settlement. Upon the execution of the Third Amendment by Foufas in Miami-Dade County, Florida, Orion accepted the appointment as 'Trustee' of the KM Trust and has continued in that role up through and after the Petition Date.

63.      Following the enactment of the Second Amendment and Third Amendment, Orion and Guardian have exchanged numerous communications including, without limitation, receiving written directions with Foufas, relating to the administration, distributions, and transfer of monies, from the KM Settlement and Business Entities. Most recently, Foufas has made several demands for substantial distributions in 2020 and 2021 under the First Amendment, while he was residing at the Homestead Property and otherwise declared his residency in Florida.

64.      Further, at all times material, upon the advice of Foufas and under his direction,

14

authority and control, Orion has retained and paid for services of various legal and accounting professionals within the United States and in the state of Florida, to represent the KM Settlement and/or Foufas in various matters, including the Divorce Action and IRS tax obligations.

65.     In fact, Orion and KM Settlement have been represented by Denis Kleinfeld, Esq. ("Kleinfeld") and Carl H. Linder, Esq. ("Linder"), who are licensed Florida attorneys and partners at their respective law firms practicing from law offices located in Miami, Florida. Notably, both Kleinfeld and Linder specialize and focus in the practice areas of asset protection, international wealth and preservation, including personal and corporate taxation and planning, including the formation and use of offshore trusts to protect assets in the Cook Islands and Belize.

66.     When representing Orion and the KM Trust, Kleinfeld and Linder communicated with Foufas and Belizean counsel in Florida concerning, among other things, certain "Events of Default" arising from the Debtor's IRS problems and protection of the Trust Assets located within the United States. During the Rule 2004 Examination, Foufas testified that Kleinfeld was crucial to the process of incorporating and creating the organizational structure of the Business Entities and, historically, has represented and advised Foufas and Orion with respect to the KM Settlement.

67.     Moreover, in accordance with The First Schedule of the First Amendment, both Attorney Klienfled and Attorney Linder, have been named as "Co-Trustees" of two residual trusts, namely, the "Credit Shelter Trust" and "Marital Trusts," created under the KM Settlement from the Trust Estate.  Accordingly, the KM Trust and KM Settlement, have engaged in continuous and systematic contacts directed to the forum state of Florida, such that these Defendants reasonably anticipated being haled into the Florida courts.

**ii.     The role of T. Foufas in relation to Foufas and KM Settlement:**

68.     As an insider of the Debtor, and beneficiary of the KM Settlement for many years,

T. Foufas engaged in continuous and systematic contacts with Foufas, as well as, other third party entities directed to the forum state of Florida.  In particular, T. Foufas admittedly worked with his father starting in 2007 and was employed by Levalon Properties, LLC ("Levalon"), a real estate property management company, that was also dominated and controlled by the Debtor.

69.     During his tenure with Levalon, T. Foufas was an officer of the company holding the position of President. T. Foufas also served as Senior Vice President of Bayshore Management Company, LLC ("Bayshore"), an investment and advisory firm in which the KM Settlement was listed as manager, and dominated and controlled by Foufas. According to the Florida Secretary of State, Division of Corporations, Levalon and Bayshore were Delaware corporations registered as a foreign limited liability company authorized to transact business in the state of Florida.

70.     Further, since 2007, T. Foufas has been serving on the Board of Directors for a publicly traded company known as The LGL Group, Inc., a Florida corporation ("LGL Group"). Given his directorship with LGL Group, and according to the public record filings of this company, T Foufas either has or maintains an office at 2525 Shader Road, Orlando, Florida 32804.

71.     In these roles, T. Foufas performed financial, real estate and advisory services in connection with transactions involving the Business Entities, the KM Settlement and other business entities transacting business in Florida. As such, T. Foufas has engaged in continuous and systematic contacts directed to the forum state of Florida, and reasonably anticipated being haled into the courts of Florida.

72.     In fact, at all times material, Foufas, along with his confederates Brower and T. Foufas, including the Debtor's longtime assistant and confidant, Melissa Leonardo ("Leonardo"), have been appointed as officers, directors, and managers of the Business Entities. Moreover, as insiders of the Debtor, both Brower and T. Foufas, as well as, Leonardo have actual acknowledge

of the millions of dollars of indebtedness that Foufas owes to Teddy pursuant to the Supplemental Judgment and Contempt Order, the IRS and other creditors, and have enabled the Debtor to obfuscate and avoid the Contempt Order and other collection efforts by creditors of the Estate.

**D.      The Debtor's Domination and Control of The Business Entities.**

73.      Prior to the Petition Date, the Debtor was a licensed attorney and businessman focusing primarily in the real estate development and investment, asset management, hospitality and gaming industry. As part of the Debtor's scheme to hinder, delay or defraud creditors, and avoid payment of his domestic support obligations to Teddy and taxes to the IRS, the Debtor has utilized the various Business Entities to serve as his nominees and/or alter egos.

74.      Specifically, at all times material, and as described herein (1) Foufas exercises control over and dominates the Business Entity Defendants and their respective assets; (2) Foufas has a close familial and/or business relationship with all of the purposed directors, officers, and managers of the Business Entities, namely, Brower, T. Foufas and Leonardo, such that these Defendants are insiders of the Debtor as defined in ; (3) each of the Business Entities are owned by the KM Settlement, an offshore self-settled trust in which Foufas is the settlor and principal beneficiary; and (4) the Debtor utilizes the Business Entities to pay for his personal expenses and conceal income. The corporate structure and organizational charts of the Business Entities are incorporated at Exhibit "E", pgs. 37-40.

75.      Foufas has and continues to direct the KM Settlement on how, when, and where to distribute the Trust Assets. The Debtor freely accessed and obtained funds from the Trust Assets by submitting quarterly budgets for the payment of his and Brower's personal expenses, as well as, for the purported business expenses of PFCO LLC and Briarcliffe to Orion. The budgets were always approved and "rubber stamped" by Orion regardless of the basis of, or reasons for, the

requested disbursements and distributions from the Trust Assets.

76.     Significantly, the funds distributed and received from the KM Trust are deposited into bank accounts held and maintained by the various Business Entities, but controlled by Foufas, principally for the personal use and enjoyment of the Debtor and Brower, and direct payment of their personal living expenses to the exclusion of creditors of the Estate. This scheme has allowed the Debtor to under report and conceal his actual sources of income from the Plaintiff, Teddy, IRS and creditors of the Estate.

77.     On Schedule I, Part 2: No. 8h, the Debtor lists other monthly income: "Discretionary Distribution from KM Settlement (a Trust)" in the amount of $4,400.00 in monthly discretionary distributions, and the sum of $1,900.00 from his non-filing spouse monthly income at $1,900.00. Lastly, on Schedule I, Part 2: No. 10 and 12, the Debtor lists his combined monthly income of $8,500.00. However, as detailed below, the amount disclosed on the Schedules is grossly undervalued and misstated.

a.     **The Swiss Account:**

78.     The KM Settlement maintains its sole bank account at EFG Bank AG of Zurich, Bank Account No. XX-9367, with a balance of $1,419,708.08 as of December 31, 2020.

79.     On July 16, 2020, the Debtor requested from Orion and received distributions from the KM Trust through the Swiss Account totaling $250,000.00 and, on September 30, 2020, received additional funds from the Swiss Account in the aggregate amount of $233,000.00.

80.     Further, upon information and belief, on January 20, 2021, the Debtor requested and received distributions from the Swiss Account in the aggregate amount of $275,000.00.

b.     **PFCO LLC and PFCO:**

81.     PFCO LLC purports to be a real estate investment sponsor & asset management

service company; however, since at least 2019, PFCO LLC has conducted no business. Yet, PFCO LLC appears to serve no legitimate business purpose besides providing a bank account for Foufas to receive distributions from the KM Settlement, which funds are fraudulently claimed as business deductions for personal expenses of the Debtor to avoid payment of income taxes to the IRS.

82.    The membership interests in PFCO LLC are allegedly owned 99% by the KM Settlement and 1% by PFCO as managing member. However, PFCO is a shell company that has no business operations or assets that is purportedly owned 100% by the KM Settlement.

83.    The Debtor is the president, treasurer, and co-director, while Brower is the executive VP, secretary, and co-director, together with Leonardo who is listed as assistant secretary of PFCO. At the 2004 Examination, the Debtor was unable to specify any involvement that Brower had in the management and operations, if any, of PFCO and PFCO LLC.

84.    Notwithstanding the Standstill Demand, and unbeknownst to the Trustee, on April 19, 2021, the Debtor sent a letter to Ms. Ping of Orion, directing the KM Trustee to make distributions from the KM Settlement in the amount of $223,000.00 to PFCO LLC.

**c.    Earlsted and Wrightford:**

85.    Earlsted is another shell entity that has no assets other an operating bank account. Despite receiving hundreds of thousands of dollars from the KM Settlement (which is the only source of funds deposited into its bank account), Earlsted has never filed tax returns.

86.    The membership interests in Earlsted are purportedly held solely by the KM Settlement and Wrightford is listed as the manager. Earlsted was formed on January 31, 2012, less than ten (10) years prior to the Petition Date.

87.    Wrightford is another shell company that has no business operations or assets that is purportedly owned 100% by the KM Settlement. The company was formed on April 3, 2012,

also less than ten (10) years prior to the Petition Date.

88.    Brower is the president, secretary, treasurer and director of Earlsted and Leonardo is listed as assistant secretary. At the 2004 Examination, the Debtor was unable to specify any involvement that Brower had in running Earlsted or Wrightford.

    **d.    Improper Distributions from PFCO, LLC and Earlsted:**

89.    Based on the books, records and financial records of Foufas and Business Entities, PFCO, LLC, Earlsted and Wrightford, served no legitimate business purpose and were utilized as mere instrumentalities to mislead creditors and as devices for funneling monies under the guise of distributions to Foufas. Regardless of its form, the distributions or payments to Foufas were improper, especially, where the Debtor has disavowed any membership interest in either PFCO, LLC and Earlsted, while Orion or Guardian completely ceded and relinquished control to Foufas.

90.    In 2018, the Debtor caused Earlsted to make disbursements of $334,482.01 and PFCO LLC to make distributions of $176,159.30 from corporate accounts, earmarked for the payment of personal, non-business related, expenses of Foufas and Brower.

91.    In 2019, the Debtor caused Earlsted to make disbursements of $341,832.75 and PFCO LLC to make disbursements of $115,647.48, which were earmarked for the payment of personal expenses of Foufas and Brower, and not legitimate business expenses.

92.    Sometime in 2020, the Debtor also caused Earlsted to make disbursements of $393,623.02 and PFCO LLC to make disbursements of $112,990.75 for the payment of personal expenses of Foufas and Brower. Again, there is no evidence that these funds were used for legitimate business expenses or purposes of these Business Entities.

93.    Notwithstanding the Standstill Demand, and unbeknownst to the Trustee, on April 19, 2021, the Debtor sent a letter to Ms. Ping of Orion, the Trustee of the KM Settlement, directing

the KM Trust make distributions of $223,000.00 to PFCO LLC and $27,000.00 to Briarcliffe.

**e.    Briarcliffe and Foufas Properties:**

94.    Briarcliffe is a single purpose entity that holds title to the Colorado Property, which is a residential property with no commercial activity, that has remained under the complete control of Foufas. The membership interests in Briarcliffe are purportedly held 99.93% by the KM Settlement and .07% by Foufas Properties as managing member.

95.    Significantly, the Colorado Property is used exclusively by Foufas and Brower as their seasonal "vacation home" under a purported lease agreement with Briarcliffe that is paid for by the KM Settlement with the Trust Assets. The Colorado Property continues to be utilized post-petition for the sole use, benefit and enjoyment of Foufas and Brower and without any legitimate business purpose nor any accounting to creditors of the Estate.

96.    Nevertheless, Briarcliffe fraudulently claims business expense deductions for the Colorado Property even though the seasonable use of the vacation property as a vacation home for the Debtor and Brower, has no legitimate business purposes and expenses.

97.    Foufas Properties is a shell company that has no business operations or assets that is allegedly owned 100% by the KM Settlement.  Brower is the president, secretary, treasurer and director of the company and Leonardo is listed as assistant secretary.  At the 2004 Examination, Foufas was unable to specify any involvement by Brower in managing Briarcliffe or Foufas Properties, except for accessorizing and decorating the Colorado Property.

98.    There is no evidence that Brower has performed any duties as an officer and director of any of the Business Entities that has contributed to the preservation of the Colorado Property. Accordingly, as described herein, Briarcliffe and Foufas Properties are mere instrumentalities to shield assets, avoid payment of taxes, and hinder, delay or defraud the Debtor's creditors

**f.      Astor Street and Sixth And Gest:**

99.      Moreover, at all times material, Sixth and Gest is another single purpose entity that acquired real property to construct an operational self-storage facility located at 73 West Sixth Street, Cincinnati, Ohio (the "Storage Property"). The Storage Property is the principal asset of Sixth and Gest.

100.      According to  Operating Agreement of Sixth And Gest Properties, LLC  effective January 1, 2018 (the "Operating Agreement"), KM Settlement owns eighty (80%) percent of the membership interests and shares in one-hundred (100%) percent of the profit and losses, as well as, the distributions of the company, along with all voting rights (the "KM Trust S&G Interest"). Astor Street purportedly holds a twenty (20%) percent passive, non-economic membership interest in Sixth and Gest (the "Astor Street S&G Interest"), and is also listed as the managing member of the company.

101.      Furthermore, the Operating Agreement states that the KM Settlement made a capital contribution of $1,750,000.00 (the "Capital Contribution") to acquire its membership interest in Sixth and Gest, while Astor Street provided no capital contribution.  However, the funds representing the Capital Contribution did not come from the KM Trust, but instead, were originated by PFCO LLC from the proceeds of sale of one of the Debtor's prior real estate investments known as the Mansards Apartments.

102.      Following the sale of the Mansards Apartments on or about October 6, 2016, Foufas exerted control over and directed that the sale proceeds be deposited directly into the PFCO LLC bank account. Then, in or about August, 2017, Foufas caused the disbursement of the Capital Contribution for the acquisition of the Storage Property to be held by Sixth and Gest in exchange for the KM Trust S&G Interest.

103.    During this time, Foufas was directing and controlling the Business Entities, and directed the transfers of the Capital Contribution and KM Trust S&G Interest relating to Sixth and Gest (collectively, the "KM Settlement Transfers"). The KM Settlement Transfers were part of the continuing scheme to hinder, delay or defraud creditors of the Estate, and made without Foufas receiving reasonably equivalent value from the KM Trust in exchange for such transfers.

104.    Moreover, at all times material, Astor Street and T. Foufas, acted at the direction and behest of Foufas with respect to the management of Sixth and Gest.  Additionally, Astor Street received the Astor Street S&G Interest as part of the Debtor's scheme to hinder, delay or defraud creditors of the Estate, and without Astor Street providing reasonably equivalent value to the Debtor in exchange for its interest in Sixth and Gest (the "Astor Street S&G Transfer").

105.    In March 2017, the Debtor caused PFCO LLC to transfer to or for the benefit of Astor Street and T. Foufas the sum of $200,000.00.  Thereafter, on January 17, 2018, the Debtor caused PFCO LLC to transfer to or for the benefit of Astor Street and T. Foufas an additional sum of $207,000.00; and on April 24, 2019, the Debtor caused PFCO LLC to transfer to or for the benefit of Astor Street and T. Foufas an additional sum of $35,750.00, totaling $442,750.00 in avoidable transfers (the "PFCO/Astor Street Transfers").

106.    The PFCO/Astor Street Transfers were purportedly made pursuant to a memorandum memorialize an oral agreement between PFCO LLC and T. Foufas for "deferred" consulting fees relating to the management of Mansards Apartments. However, the PFCO/Astor Street Transfers were made as part of the Debtor's scheme to hinder, delay or defraud creditors of the Estate, and without Astor Street and T. Foufas providing reasonably equivalent value to Foufas in exchange for the PFCO/Astor Street Transfers (hereinafter, the Astor Street S&G Transfer and PFCO/Astor Street Transfers shall be referred to collectively as the "Astor Street Transfers").

107.     Meanwhile, upon information and belief, the Storage Property was recently constructed and is currently in the process of leasing up the storage units. PFCO LLC continues to provide "loans" to Sixth and Gest to cover operating expenses for the Storage Property at the direction of the Debtor.

g.      **The Business Entities are the nominees and alter egos of Foufas.**

108.     Finally, at all times material hereto, the Business Entity Defendants were formed and utilized by Foufas through his interest in the KM Trust for fraudulent and improper purposes, and as mere instrumentalities which has and continues to cause injury to the Estate and its creditors. Foufas has dominated and controlled the Business Entities to such an extent that their corporate independence is non-existent and, therefore, the Business Entity Defendants are the nominees and/or alter-egos of Foufas.

109.     The Business Entity Defendants, were also engaged in the same line of business as Foufas, *to wit*, real estate development and asset management or involved in other financial schemes designed to avoid creditors of the Estate. Foufas and the Business Entities conducted business from the same business locations, and operated as a single economic unit or common enterprise by, among other things, commingling assets to the point that the financial affairs of the Business Entities were inextricably intertwined and entangled with the Debtor.

110.     The Business Entities also functioned as a facade for Foufas who acted as the dominant control person in all business activities and functions. As such, Foufas was able to siphon off corporate funds from the Business Entities for his personal use and benefit.

E.     **The Insolvency of the Debtor.**

111.     From and after four (4) years prior to the Petition Date, the Debtor was insolvent, was within the zone of insolvency and/or intended to incur or believed that Foufas would incur

debts that would be beyond his ability to pay as such debts matured.

112. The insolvency of Foufas is attributable to, among other things, the events which transpired during the Dissolution Action, including the entry of the Contempt Order. Furthermore, the creation, relocation, restatements and amendments of the KM Trust, left Foufas with unreasonably small capital and inability of the Debtor to pay debts as such debts became due, particularly the millions of dollars of indebtedness owed to Teddy for alimony pursuant to the Supplemental Judgment and Contempt Order, including the IRS and other creditors of the Estate.

### COUNT I
### DECLARATORY JUDGEMENT- 28 U.S.C. §2202 and 11 U.S.C. §541
### (Against Foufas, KM Settlement, Orion, and Guardian)

113. Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

114. This is an action for declaratory relief pursuant to 28 U.S.C. §2201(a) for which this Court has jurisdiction.

115. The Plaintiff seeks a declaration of rights and other legal relations concerning the Trustee and Defendants, KM Settlement, Foufas, Orion and Guardian, and the parties respective rights, title and interests in and to the KM Settlement and Trust Assets, including the ownership, dominion and control of these assets by the Debtor.

116. There is a bona fide, actual, present, and practical need for a declaratory judgment because the evidence demonstrates that assets of the KM Trust are property of the Estate. Further, there is an actual controversy over the status and nature of the ownership, dominion and control by the Debtor to the KM Settlement, Business Entities, and other Trust Assets.

117. Prior to the Petition Date, and at all times material hereto, the Debtor was both the 'Settlor' and prime beneficiary of the KM Settlement and has controlled and otherwise misappropriated the Trust Assets for his own personal use, benefit and enjoyment to the exclusion

and detriment of creditors of the Estate.

118.    From its inception, the KM Settlement was formed with fraudulent intent as found by the Divorce Court within the Supplemental Judgment, which provided that the KM Trust, referred to therein as the Grantor Trust, created by the Debtor "constituted a fraudulent conveyance in law in accordance with the provisions of the Uniform Fraudulent Transfer Act." The Supplemental Judgment is a final order in the Dissolution Action.

119.    As such, under applicable non-bankruptcy law, the assets held by the KM Trust constitute property of the Estate under 11 U.S.C. §541(c)(2) because applicable non-bankruptcy law does not recognize transfer restrictions in self-settled trusts where a debtor is both the settlor and beneficiary.

120.    Additionally, under applicable non-bankruptcy law, the assets held by the KM Trust constitute property of the Estate because the transfers to the KM Trust have been avoided in the Dissolution Action.

121.    The Trustee's ability to administer KM Settlement and its assets is dependent upon a determination of the ownership under Florida or other applicable law.

122.    The relief sought herein is not the mere giving of legal advice by the Court or the answer to questions propounded from curiosity. As described above, an actual controversy exists as to the ownership of the KM Settlement and whether the Trust Assets are property of the Debtor's Estate, rendering the Trustee unsure of her rights related thereto.

**WHEREFORE**, the Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, respectively requests this Court take jurisdiction of this matter and enter a declaratory judgment against Defendants, Plato Chris Foufas, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9,

1998 Between Plato Foufas and St. Vincent Trust Services, Ltd., Orion Corporate & Trust Services, Ltd. and Guardian Fiduciary Management, Ltd., and (i) finding that the KM Settlement and all Trust Assets held within the KM Trust constitute property of the Estate; (ii) declaring and adjudicating the respective rights and interests of the Trustee, Foufas, KM Settlement, Orion, and Guardian; and (iii) grant such further relief as the Court may be just and proper.

## COUNT II
### TURNOVER OF PROPERTY OF THE ESTATE - 11 U.S.C. §542
**(Against Foufas, KM Settlement, Orion, and Guardian)**

123.     Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

124.     This is an action for turnover of property of the Estate pursuant to Section 542 of the Bankruptcy Code.

125.     The KM Settlement, together with the Trust Assets, and/or the value and proceeds thereof, constitute property of the Estate under 11 U.S.C. § 541 of the Bankruptcy Code to be recovered and administered by the Trustee for the benefit of creditors of the Debtor.

126.     Accordingly, pursuant to 11 U.S.C. § 542 of the Bankruptcy Code, all assets of the KM Trust including, but not limited to, the Swiss Account, Stock/Membership Interests, and Personal Property must be turned over to the Trustee for administration.

127.     In addition, the Trustee is entitled to an accounting of all transactions relating to the KM Settlement, and all transfers and other property received by the Defendants, including, but not limited to, the Trust Assets.

**WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, respectfully requests the Court to enter judgment in favor of the Trustee against the Defendants, Plato Chris Foufas, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9, 1998 Between

Plato Foufas and St. Vincent Trust Services, Ltd., Orion Corporate & Trust Services, Ltd. and

Guardian Fiduciary Management, Ltd.: (i) ordering that all assets of the KM Settlement including,

but not limited to, the Swiss Account, Stock/Membership Interests, Personal Property, and any

other Trust Assets be immediately delivered and turned over to the Trustee; (ii) granting money

damages in the amount of the value of KM Settlement and/or Trust Assets, plus interest at the

applicable federal statutory rate, and reasonable attorneys' fees and expenses; (iii) requiring the

Defendants to provide an accounting to the Trustee with respect to the KM Trust pursuant to 11

U.S.C. § 542(a); and (iv) granting such other and further relief as may be just and proper.

**COUNT III**
**DECLARATORY JUDGMENT- 28 U.S.C. §2202 and 11 U.S.C. §541**
**(Against Foufas, Business Entity Defendants, and Astor Street)**

128.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

129.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201(a) for which

this Court has jurisdiction.

130.    The Plaintiff seeks a declaration of rights and other legal relations concerning the

Trustee, and the Defendants, Foufas, Business Entity Defendants and Astor Street, determining

that the Business Entities are held as 'nominees' for Foufas who asserts dominion and control of

the Business Entities' as assets of the Debtor.

131.    There is a bona fide, actual, present, and practical need for a declaratory judgment

because the evidence demonstrates that Foufas has a legal, beneficial and/or equitable ownership

interest in the Business Entity Defendants such that these Business Entities are the nominees of

the Debtor and should be declared property of the Estate such that the Trustee may sell to increase

the assets of the Estate for purposes of making a distribution to the Debtor's creditors.

132.    As described herein, (1) the Debtor exercises control over the Business Entity

Defendants and their respective assets, including the Colorado Property and Storage Property; (2) the Debtor has a close familial or business relationship with all of the purposed directors, officers, and managers of Business Entity Defendants; (3) each of the Business Entity Defendants is owned by the KM Settlement, which is the Debtor's self-settled offshore trust in which Foufas is the primary beneficiary; and (4) the Debtor utilizes the Business Entity Defendants to pay for his and Brower's personal expenses and to otherwise conceal assets from creditors of the Estate.

133.   This request for a declaratory judgment deals with a present, ascertained, or ascertainable state of facts or presents controversy as to the facts described herein.

134.   The Plaintiff's ability to administer the ownership interests of Foufas and other interests of the Defendants, if any, in the Business Entity Defendants and their assets is dependent upon a determination of the ownership under Florida or other applicable law.

135.   The relief sought herein is not the mere giving of legal advice by the court or the answer to questions propounded from curiosity. As described above, an actual controversy exists as to the ownership of the Business Entity Defendants and whether the Business Entities and their assets are the nominees of Foufas and thus property of the Estate, rendering the Trustee unsure of her rights related thereto.

136.   The Defendant, Astor Street, is joined as a nominal defendant in this count to the extent that this Defendant may assert and hold completing claims or interests in the Business Entities adverse to the Trustee and Estate.

**WHEREFORE**, the Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, respectfully requests this Court enter a final declaratory judgment against the Defendants, Plato Chris Foufas, Briarcliffe Lakeside Associates, LLC, Foufas Properties/Briarcliffe, Inc., Earlsted, LLC, Wrightford Corporation, Sixth and Gest Properties,

LLC, Plato Foufas & Company, LLC, PFCO, Inc. and Astor Street Holdings, LLC, and determining that (i) the Business Entity Defendants are held as nominees for Foufas who asserts dominion and control of the Business Entities' as assets of the Debtor and Estate; (ii) the Debtor is the true legal, beneficial, and/or equitable owner of the Business Entity Defendants; (iii) the Debtor's equitable ownership interest in Business Entity Defendants is property of the Estate; and (iv) the Debtor holds his equitable interest Business Entity Defendants in trust for the benefit of the Estate and; (v) any further relief as may be just and proper.

**COUNT IV**
**ALTER EGO/PIERCING THE CORPORATE VEIL**
**(Against Business Entity Defendants and Foufas)**

137.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

138.    At all times material hereto, the Business Entity Defendants were formed and utilized by Foufas, individually, and through his interest in the KM Settlement, for fraudulent and improper purposes, which has and continues to cause injury to the Estate and its creditors.

139.    Specifically, the Debtor created and utilized the Business Entity Defendants for improper purposes by, *inter alia*, hindering, delaying or defrauding creditors and concealing his assets from Teddy, evading his financial obligations to creditors and tax liabilities to the IRS, and otherwise treating the Business Entities as his personal piggy bank.

140.    Moreover, prior to and after the Petition Date, the Debtor has exercised dominion and control over the Business Entity Defendants to such extent that their independent identities are non-existent and, therefore, the Business Entities are merely alter egos of Foufas.

141.    For the reasons described herein, the Trustee and creditors of this Estate have been harmed by the formation and use of Business Entity Defendants as the alter egos of the Debtor.

**WHEREFORE**, the Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of

the Debtor, Plato Chris Foufas, respectfully requests this Court enter final judgment against the Defendants, Plato Chris Foufas, Briarcliffe Lakeside Associates, LLC, Foufas Properties/Briarcliffe, Inc., Earlsted, LLC, Wrightford Corporation, Sixth and Gest Properties, LLC, Plato Foufas & Company, LLC and PFCO, Inc. (i) determining that Business Entity Defendants are alter egos of the Debtor; (ii) determining that the Debtor used Business Entity Defendants for a fraudulent and improper purpose causing injury to the Estate; (iii) piercing the corporate veil; (iv) awarding the Trustee attorneys' fees and costs; and (v) granting such other and further relief as may be just and proper.

**COUNT V**
**TURNOVER OF PROPERTY OF THE ESTATE - 11 U.S.C. §542**
**(Against Business Entity Defendants)**

142.   Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

143.   This is an action for turnover of property of the Estate pursuant to Section 542 of the Bankruptcy Code.

144.   The Business Entity Defendants constitute property of the Estate under 11 U.S.C. § 541 of the Bankruptcy Code to be recovered and administered by the Trustee for the benefit of creditors of the Debtor.

145.   Accordingly, the Business Entity Defendants, and all assets of the Business Entities including, but not limited to, the Colorado Property and Storage Property, and/or the value and proceeds thereof, must be turned over to the Trustee for administration.

146.   In addition, the Trustee is entitled to an accounting of all transactions relating to, and all transfers received and made by the Business Entity Defendants, including, but not limited to, the Colorado Property and Storage Property.

**WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the

Debtor, Plato Chris Foufas, respectfully requests the Court to enter judgment in favor of the Trustee against Defendants, Briarcliffe Lakeside Associates, LLC, Foufas Properties/Briarcliffe, Inc., Earlsted, LLC, Wrightford Corporation, Sixth and Gest Properties, LLC, Plato Foufas & Company, LLC and PFCO, Inc. and (i) declaring that the Business Entity Defendants, or their value, be immediately delivered and turned over to the Trustee by the Business Entity Defendants; (ii) granting money damages in the amount of the value of Business Entities, plus interest at the applicable federal statutory rate, and reasonable attorneys' fees and expenses; (iii) requiring the Business Entities Defendants to provide an accounting of all the Defendants transactions pursuant to 11 U.S.C. § 542(a); and (iv) granting such other and further relief as may be just and proper.

**COUNT VI**
**ACTION SEEKING SUBSTANTIVE CONSOLIDATION OF THE NON-DETBOR**
**BUSINESS ENTITIES WITH AND INTO THE BANKRUPTCY ESTATE**
**(Against KM Settlement and Business Entity Defendants)**

147.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

148.    This is an action against the KM Settlement and Business Entity Defendants to substantively consolidate, along with their respective assets and liabilities, with and into the Estate pursuant to Section 105 of the Bankruptcy Code.

149.    At all times material hereto, Foufas formed, operated and/or otherwise treated the KM Settlement and Business Entity Defendants as his nominees and/or alter egos, such that substantive consolidation of the assets and liabilities of the KM Settlement and Business Entity Defendants with and into the Estate is necessary and appropriate.

150.    In addition to the foregoing, and to the extent necessary or appropriate, substantive consolidation is also necessary and appropriate for other reasons which include, but are not necessarily limited to, the following: (i) Foufas and the KM Settlement and non-debtor Business Entity Defendants were both engaged in the same line of business, *to wit*, real estate investments

and asset management; (ii) upon information an belief, Foufas and the KM Settlement and Business Entities conducted business from the same business locations; (iii) Foufas and the KM Settlement and Business Entities operated as a single economic unit commingling assets and business functions; (iv) the business and financial affairs of Foufas and the KM Settlement and Business Entities were inextricably intertwined and entangled; (v) the KM Settlement and Business Entities functioned as a facade for Foufas who acted as the dominant control person in all business activities and functions; (vi) Foufas siphoned off assets and corporate funds from the KM Settlement and Business Entities for his personal use; (vii) the KM Settlement and Business Entities were each formed and operated by Foufas for improper purposes, including to hinder, delay or defraud creditors of the Debtor; (viii) the benefits of consolidation will far outweigh any harm from consolidation; and (ix) separating the assets and liabilities of Foufas and the KM Settlement and Business Entities would be detrimental to creditors.

151.    Based upon the foregoing, substantive consolidation of the KM Settlement and Business Entity Defendants, along with their respective assets and liabilities, with and into the bankruptcy estate of the Debtor, is necessary and appropriate.

**WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, demands the entry of judgment against the Defendants, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9, 1998 Between Plato Foufas and St. Vincent Trust Services, Ltd., Orion Corporate & Trust Services, Ltd., Guardian Fiduciary Management, Ltd., Briarcliffe Lakeside Associates, LLC, Foufas Properties/Briarcliffe, Inc., Earlsted, LLC, Wrightford Corporation, Sixth and Gest Properties, LLC, Plato Foufas & Company, LLC and PFCO, Inc. substantively consolidating the KM Settlement and Business Entity Defendants, along with their respective assets and liabilities,

with and into the bankruptcy estate of the Debtor, that such substantive consolidation be without prejudice to protect and preserve the right of the Debtor and the Business Entities to commence and prosecute separate claims under Chapter 5 of the Bankruptcy Code and avoidance claims under applicable state law, and for any other relief the Court may deem appropriate.

**COUNT VII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 548(e)(1) OF THE BANKRUPTCY CODE**
**(Against KM Settlement)**

152.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

153.    Pursuant to 11 U.S.C. § 548(e)(1) and 11 U.S.C. § 544, the Trustee may in addition to any transfer that the trustee may otherwise avoid, seek to avoid any transfer of an interest of the debtor in property, that was made on or within 10 years before the date of the filing of the petition, if—

(A) such transfer was made to a self-settled trust or similar device;

(B) such transfer was by the debtor;

(C) the debtor is a beneficiary of such trust or similar device; and

(D) the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

154.    At all times material, Foufas was the settlor and is the principal beneficiary of the KM Settlement, which is a self-settled offshore trust that is directed and controlled by the Debtor.

155.    The Debtor caused the KM Settlement Transfers, consisting of the Capital Contribution and KM Trust S&G Interest in Sixth and Gest, to be transferred to the KM Settlement.

156.    Further, the Debtor made the KM Settlement Transfers to the KM Settlement with actual intent to hinder, delay, or defraud Teddy and the IRS with whom the Debtor was indebted to on the date of the subject transfers.

157.    The KM Settlement was the initial transferee or the entity for whose benefit the transfers were made, and as a result, the Trustee is entitled to avoid and recover the KM Settlement Transfers pursuant to 11 U.S.C. §550(a)(1).

158.    To the extent that the KM Settlement is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the transfers were made, the Trustee is entitled to recover these the transfers pursuant to 11 U.S.C. §550(a)(2).

**WHEREFORE**, the Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, demands judgment against Defendants, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9, 1998 Between Plato Foufas and St. Vincent Trust Services, Ltd., Orion Corporate & Trust Services, Ltd. and Guardian Fiduciary Management, Ltd., and (a) determining that the KM Settlement Transfers, consisting of the Capital Contribution and KM Trust S&G Interest, were fraudulent and avoidable under 11 U.S.C. §548(e) of the Bankruptcy Code; (b) avoiding the KM Settlement Transfers and entering judgment in favor of Plaintiff against KM Settlement, Orion and Guardian in the aggregate amount of at least $1,750,000.00, or in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that the KM Settlement, Orion and Guardian may have against the Estate, including, without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNT VIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.105(1)(a) OF THE FLORIDA STATUTES**
**(Against Astor Street and T. Foufas)**

159.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

160.    Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of this title or that is not allowable only under §502(e) of this title.

161.    Section 726.105(1)(a), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

162.    Further, pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

163.    The Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, were transfers made with the actual intent to hinder, delay, and/or defraud creditors pursuant to § 726.105(1)(a), Florida Statutes.

164.    At the time of the Astor Street Transfers, the Debtor was, and still is, indebted in an amount greater than the Astor Street Transfers.

165.    At the time of the Astor Street Transfers, the Debtor had incurred debts beyond

36

their ability to pay as they became due.

166.    As set forth above, the Debtor was otherwise insolvent at the time(s) of the Astor Street Transfers.

167.    As a result of the Astor Street Transfers, the Trustee has been damaged pursuant to 11 U.S.C. §544(b) for the total value of the Astor Street Transfers.

168.    Defendants were the initial transferees or the entity for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Astor Street Transfers from Astor Street and T. Foufas under 11 U.S.C. §544 of the Bankruptcy Code and §726.105(1)(a) of the Florida Statutes as actual intent fraudulent transfers.

169.    Alternatively, the Defendants are the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to recover the Astor Street Transfers as referenced above from Defendant pursuant to §726.105(1)(a) of the Florida Statutes and 11 U.S.C. §550(a)(2).

170.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is authorized to the extent that the respective Astor Street S&G Transfer and Astor Street Transfers are avoided §726.105(1)(a) of the Florida Statutes.

**WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, demands judgment against Defendants, Astor Street Holdings, LLC and Timothy Foufas (a) determining that each of the Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, are fraudulent and avoidable under §726.105(1)(a), Fla. Stats.; (b) determining that each of the Astor Street Transfers are fraudulent and avoidable under §726.105(1)(a), Fla. Stats.; (c) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in the aggregate amount of at least

$442,750.00, or in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (d) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (f) disallowing any claim that Defendants may have against the Estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (g) for such other and further relief as the Court deems just and proper.

### COUNT IX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(b) OF THE FLORIDA STATUTES
#### (Against Astor Street and T. Foufas)

171.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

172.    Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of this title or that is not allowable only under §502(e) of this title.

173.    Section 726.105(1)(b), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(b) Without receiving reasonably equivalent in value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining

assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

174.    Further, pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

175.    The Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, were transfers made to Defendants without the Debtor receiving reasonably equivalent value in exchange for the Astor Street Transfers pursuant to §726.105(1)(b), Florida Statutes.

176.    At the time(s) of the Astor Street Transfers, the Debtor was engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transactions in which the Debtor were engaged.

177.    At the time of the Astor Street Transfers, the Debtor had incurred debts beyond their ability to pay as they became due.

178.    As set forth above, the Debtor was otherwise insolvent at the time(s) of the Astor Street Transfers.

179.    As a result of the Astor Street Transfers, the Trustee has been damaged pursuant to 11 U.S.C. §544(b) for the total value of the Astor Street Transfers.

180.    The Defendants were the initial transferees or the entities for whose benefit the

Astor Street Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Astor Street Transfers from Astor Street under 11 U.S.C. §544 of the Bankruptcy Code and §726.105(1)(b) of the Florida Statutes as a constructively fraudulent transfer.

181.    Alternatively, the Defendants are the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to recover these Transfers as referenced above from Defendants pursuant to §726.105(1)(b) of the Florida Statutes  and 11 U.S.C. §550(a)(2).

182.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is authorized to the extent that the respective transfers are avoided under 11 U.S.C. §548(a)(1)(B).

**WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, demands judgment against Defendants, Astor Street Holdings, LLC and Timothy Foufas (a) determining that each of the Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, are fraudulent and avoidable under §726.105(1)(b), Fla. Stats.; (b) determining that each of the Astor Street Transfers are fraudulent and avoidable under §726.105(1)(b), Fla. Stats.; (c) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in the aggregate amount of at least $442,750.00, or in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (d) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment

40

interest, and costs of suit, all pursuant to 11 U.S.C. §550; (f) disallowing any claim that Defendants may have against the Estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (g) for such other and further relief as the Court deems just and proper.

**COUNT X**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.106(1) OF THE FLORIDA STATUTES**
**(Against Astor Street and T. Foufas)**

183. Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

184. Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of Title 11 or that is not allowable only under §502(e) of this title.

185. Section 726.106(1), Florida Statutes, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

186. The Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, were transfers were made without the Debtor receiving reasonably equivalent value in exchange for such transfers pursuant to §726.106(1), Florida Statutes.

187. As set forth above, at the time(s) of the Astor Street Transfers to the Defendants, the Debtor was insolvent or became insolvent as a result of the Astor Street Transfers.

188. At the time(s) of the Astor Street Transfers, the Debtor were indebted to creditors in an amount in excess of the Astor Street Transfers.

189. As a result of the Astor Street Transfers, the Trustee and Estate has been damaged

pursuant to 11 U.S.C. § 544(b) for the total value of the Astor Street Transfers.

190.    The Defendants were the initial transferees or the entities for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Astor Street Transfers from Defendants. Alternatively, Defendants are the immediate or mediate (subsequent) transferees of the initial transferee for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to recover the Astor Street Transfers as referenced above from Defendants pursuant to §726.106(1), Florida Statutes  and 11 U.S.C. §550(a)(2).

191.    As a result of the above, the Trustee can avoid the Astor Street Transfers to the Defendants, Astor Street and T. Foufas, pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the Debtor, Plato Chris Foufas, demands judgment against Defendant, Astor Street Holdings, LLC and Timothy Foufas (a) determining that each of the Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, are fraudulent and avoidable under §726.106(1), Fla. Stats.; (b) determining that each of the Astor Street Transfers are fraudulent and avoidable under §726.106(1), Fla. Stats.; (c) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in the aggregate amount of at least $442,750.00, or in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (d) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein,

42

plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (f) disallowing any claim that Defendants may have against the Estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (g) for such other and further relief as the Court deems just and proper.

**COUNT XI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 1304(a) and (b) OF THE DELAWARE STATUTES**
**(Against Astor Street and T. Foufas)**

192.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

193.    Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of Title 11 or that is not allowable only under §502(e) of this title.

194.    Section 1304(a)(1) and (2), Delaware Statutes, provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

195.    The Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, to Defendants, Astor Street and T. Foufas, were transfers made with

the actual intent to hinder, delay, and/or defraud creditors pursuant to Section 1304(a)(1), Delaware Statutes.

196.    Additionally, the Astor Street Transfers, to Defendants, Astor Street and T. Foufas, were made without the Debtor receiving reasonably equivalent value in exchange for such transfers pursuant to Section 1304(a)(2), Delaware Statutes.

197.    As set forth above, at the time(s) of the Astor Street Transfers to the Defendants, the Debtor was insolvent or became insolvent as a result of the Astor Street Transfers.

198.    At the time(s) of the Astor Street Transfers, the Debtor were indebted to creditors in an amount in excess of the Astor Street Transfers.

199.    As a result of the Astor Street Transfers, the Trustee and Estate have been damaged pursuant to 11 U.S.C. § 544(b) for the total value of the Astor Street Transfers.

200.    Defendants were the initial transferee or the entity for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Astor Street Transfers from the Defendants.

201.    Alternatively, Defendants are the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Astor Street Transfers were made, and as a result, the Trustee is entitled to recover the Astor Street Transfers as referenced above from Defendant pursuant to §1304(a)(1) and (2), Delaware Statutes and 11 U.S.C. §550(a)(2).

202.    As a result of the above, the Trustee can avoid the Astor Street Transfers to the Defendants, Astor Street and T. Foufas, pursuant to Sections 544 and 548 of the Bankruptcy Code and Section 1304(a)(1) and (2), Delaware Statutes, and recover the value thereof for the benefit of the Estate pursuant to Section 550 of the Bankruptcy Code.

    **WHEREFORE**, Plaintiff, Deborah Menotte, as Chapter 7 for the bankruptcy estate of the

44

Debtor, Plato Chris Foufas, demands judgment against Defendants, Astor Street Holdings, LLC and Timothy Foufas (a) determining that each of the Astor Street Transfers, consisting of the Astor Street S&G Transfer and PFCO/Astor Street Transfers, are fraudulent and avoidable under Section 1304(a)(1) and (2), Delaware Statutes; (b) determining that the Astor Street Transfers are fraudulent and avoidable under Section 1304(a)(1) and (2), Delaware Statutes; (c) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in the aggregate amount of at least $442,750.00, or in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (d) avoiding the Astor Street Transfers and entering judgment in favor of Plaintiff against Defendants in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (f) disallowing any claim that Defendants may have against the Estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (g) for such other and further relief as the Court deems just and proper.

### COUNT XII
### AVOIDANCE AND RECOVERY OF PROPERTY
### PURSUANT TO SECTION 550 OF THE BANKRUPTCY CODE
#### (Against KM Settlement, Astor Street and T. Foufas)

203.    Plaintiff restates and re-alleges paragraphs 1 through 112, as fully set forth therein.

204.    The subject transfers consisting of the (i) KM Settlement Transfers and (ii) Astor Street Transfers (collectively, the "Transfers and Obligations") are avoidable pursuant to Sections 544 and 548 of the Bankruptcy Code, including §726.105(1)(a) and (b), §726.106(1), Florida Statutes, and § 1304(a)(1) and (2), Delaware Statutes, such that the Transfers and Obligations are

recoverable by Plaintiff pursuant to Section 550 of the Bankruptcy Code.

205.    At all times material hereto, the Defendants, KM Settlement, Astor Street and T. Foufas were the initial transferees of the Transfers and/or Obligations and/or were the entities for whose benefit the subject transfers were made and obligations were incurred and, therefore, the subject Transfers and Obligations are recoverable by the Trustee under Section 550 of the Bankruptcy Code.

206.    Alternatively, the Defendants are the immediate or mediate (subsequent) transferees of the initial transferee(s) for whose benefit the subject transfers were made and obligations were incurred, and as a result, the Trustee is entitled to recover these Transfers and Obligations as referenced above from the Defendants pursuant to 11 U.S.C. §550(a)(2).

**WHEREFORE**, the Plaintiff, Deborah Menotte, as Chapter 7 Trustee for the estate of Plato Foufas, demands the entry of judgment against Defendants, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9, 1998 Between Plato Foufas and St. Vincent Trust Services, Ltd., Orion Corporate & Trust Services, Ltd., Guardian Fiduciary Management, Ltd., Astor Street Holdings, LLC and Timothy Foufas and (a) determining that each of the Transfers and Obligations are fraudulent and avoidable under Sections 544 and 548 of the Bankruptcy Code, §726.105(1)(a) and (b), §726.106(1), Florida Statutes, and §1304(a)(1) and (2), Delaware Statutes; (b) avoiding the Transfers and Obligations and entering judgment in favor of Plaintiff against Defendants in the aggregate amounts of the KM Settlement Transfers and Astor Street Transfers, individually, or jointly and severally, and in such amounts as are determined at trial,  plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendants may have against the Estate, including without limitation, pursuant to and as

provided in 11 U.S.C. §502(d); and (d) for such other and further relief deemed just and proper.

## COUNT XIII
## INJUNCTIVE RELIEF PURSUANT TO FEDERAL RULE
## BANKRUPTCY OF PROCEDURE 7065 AND 11 U.S.C. § 105
### (Against All Defendants)

207.    Plaintiff restates and re-alleges paragraphs 1 through 112, as if fully set forth herein.

208.    This is an action for injunctive relief pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105.  The Trustee has no adequate remedy at law.

209.    Unless and until the Estate's interest in the assets and property that is the subject of Counts I through VII above are adjudicated, any acts that may impair the ability of the Trustee to administer estate property and interests of the Estate therein must be preliminarily and/or permanently enjoined from further transferring, dissipating or disposing of such property.

210.    Accordingly, it is imperative that the Court order and direct that the Defendants be preliminarily and permanently enjoined and restrained by this Court from further transferring, dissipating, encumbering, liening or otherwise disposing of the property that is the subject of Counts I through VII above or any interest therein, which property shall include the Trust Assets, Business Entities and all the other property and things of value relating to the KM Settlement, which are the subject of counts set forth above, and all other monies, properties, assets, securities or other things of value derived from or traceable to any and all such property.

211.    The requested injunctive relief is a necessary incident to and in furtherance of equitable relief being sought against such property herein.

212.    Granting the injunctive relief requested herein is necessary to avoid irreparable harm to the Estate. Further transfer, dissipation or encumbrance of such assets would be detrimental to the Estate and could deprive creditors from receiving a distribution on account of the property that is the subject of Counts I through VII above, to which they are entitled under the

provisions of the Bankruptcy Code.

213.    The public interest favors granting the injunctive relief sought herein since this is a public bankruptcy proceeding and the interests of the creditors of the Estate to recoup some portion of their losses pursuant to the applicable provisions of the Bankruptcy Code are paramount. Ensuring that the creditors of the Estate receive the distributions to which they are entitled under law helps serve the public interest.

214.    Conversely, not granting injunctive relief would enable the Defendants to frustrate the proper workings of the Bankruptcy Code and deny creditors that to which they are entitled under law. Such a result would run counter to the public interest in the fair and equitable administration of the bankruptcy laws.

215.    In addition, the requested injunctive relief is a necessary incident to and in furtherance of the requests herein to recover property of the estate.

216.    Preliminary and permanent injunctive relief, as requested herein, is also necessary in order to preserve the *status quo* pending a full and final determination of this litigation.

217.    Based upon the allegations asserted above, there is a substantial likelihood that the Trustee will prevail on the merits.

**WHEREFORE**, the Plaintiff, Deborah Menotte, as Chapter 7 Trustee for the estate of Plato Foufas, demands the entry of an order, judgment or decree preliminarily and permanently enjoining and restraining each of the Defendants, Plato Chris Foufas, Briarcliffe Lakeside Associates LLC, Foufas Properties/Briarcliffe, Inc., Earlsted, LLC, Wrightford Corporation, Sixth and Gest Properties, LLC, Plato Foufas & Company, LLC, PFCO, Inc., Astor Street Holdings, LLC, KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation, The KM Settlement dated January 9, 1998 Between Plato Foufas and St. Vincent Trust Services, Ltd.,

Orion Corporate & Trust Services, Ltd., Guardian Fiduciary Management, Ltd., and Timothy Foufas, and their respective agents, servants, employees and attorneys, and all those in active concert or participation with them who receive notice hereof, from selling, liening, encumbering, pledging, hypothecating, mortgaging, secreting, removing, alienating, gifting, dissipating, disposing of, and/or transferring, whether directly or indirectly the property that is the subject of Counts I through VII above, and requests such other and further relief deemed just and proper.

**Dated this __14th__ day January, 2022.**

Respectfully submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for Trustee*
200 East Broward Blvd., Suite 1110
Fort Lauderdale, Florida 33301
Telephone: (954) 453-8000
Facsimile:  (954) 453-8010

By:___/s/ *Barry P. Gruher*_____
      Barry P. Gruher, Esq.
      Florida Bar No. 960993
      bgruher@gjb-law.com
      Zachary I. Malnik, Esq.
      Florida Bar No. 1010272
      zmalnik@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of was served via CM/ECF

Notification to all parties on the attached service list on this  14th  day of January, 2022.

By: /s/ Barry P. Gruher
Barry P. Gruher, Esq.


## SERVICE LIST

***Served Via CM/ECF***

Joaquin J Alemany on behalf of Defendant Orion Corporate & Trust Services, Ltd.
joaquin.alemany@hklaw.com, jose.casal@hklaw.com

Robert C Folland on behalf of Defendant Astor Street Holdings, LLC
rob.folland@btlaw.com, courtney.dunham@btlaw.com

Robert C Folland on behalf of Defendant Timothy Foufas
rob.folland@btlaw.com, courtney.dunham@btlaw.com

Barry P Gruher on behalf of Plaintiff Deborah Menotte, Chapter 7 Trustee
bgruher@gjb-law.com, vlambdin@gjb-law.com;gjbecf@gjb-law.com;cscavone@gjb-law.com;gjbecf@ecf.courtdrive.com;chopkins@gjb-law.com

Craig A. Pugatch, Esq on behalf of Defendant Braircliffe Lakeside Associates, LLC
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant Earlsted, LLC
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant Foufas Properties/Braircliffe, Inc.
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant Guardian Fiduciary Management, Ltd.
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant KM Settlement dated May 23, 1996 between Plato Chris Foufas and Nova Corporation
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant PFCO, Inc.
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant Plato Foufas & Company, LLC

capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant Sixth and Gest Properties, LLC
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant The KM Settlement dated January 9, 1998
Between Plato Foufas and St. Vincent Trust Services, Ltd.
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Craig A. Pugatch, Esq on behalf of Defendant Wrightford Corporation
capugatch.ecf@rprslaw.com, jheredia@rprslaw.com

Robert F. Reynolds on behalf of Defendant Plato Chris Foufas
rreynolds@robertreynoldspa.com

Jason Slatkin, Esq. on behalf of Defendant Guardian Fiduciary Management, Ltd.
jslatkin@loriumlaw.com, ecf.jslatkin@loriumlaw.com

# EXHIBIT A

RMED COPY

**THIS SETTLEMENT** is made the 23rd day of may 1996 (One Thousand nine hundred and ninety six) **BETWEEN** PLATO CHRIS FOUFAS of 148 Placer Lane Aspen Colorado United States of America (hereinafter called "the Settlor") of the one part and NOVA CORPORATION of Hunkin's Plaza P.O. Box 556 Main Street Charlestown Nevis West Indies a company incorporated in Nevis (hereinafter called the "Original Trustee") of the other part

**WHEREAS**:

(1)     The property specified in the First Schedule hereto has been transferred to the Original Trustee to the intent that the Original Trustee and any subsequent Trustee or Trustees appointed under this Deed should hold and administer such property on the trusts hereinafter set out and

(2)     This Settlement shall be called and known as "THE K.M. SETTLEMENT"

## NOW THEREFORE THIS DEED WITNESSETH as follows:-

1.0     Definitions and Interpretation

1.1     In this Deed where the context so admits the following expressions shall have the following meanings:-

    1.1.1     **"The Trustee" or "The Trustees"** whether an incorporated company or individual means the Original Trustee or other the Trustee or Trustees for the time being of this Settlement

    1.1.2     **"The Trust Fund"** means and includes

        1.1.2.1     those items detailed in Schedule 1 hereto and referred to in Recital (1) to this Deed

1.1.2.2    All other (if any) further money investments and other property which may hereafter be paid or transferred to the Trustee or Trustees by the Settlor or any other persons to be held upon the trusts hereof

1.1.2.3    The money investments and property for the time being representing the said sum of and the said further money investments and other property or any part or parts thereof

1.1.3    **"The Vesting Day"** means the period commencing from the date of this Deed and ending on the earliest of the following dates:-

1.1.3.1    The period of eighty years from the date hereof

1.1.3.2    The first date on which there is no Beneficiary (hereinafter defined) living

1.1.3.3    Such date as the Trustee or Trustees may in conformity with the law of Nevis at any time by deed appoint

1.1.4    **"Adopted"** means adopted in such matter that the adoption is recognised by the law of Nevis

1.1.5    **"The Beneficiaries"** means and includes the following persons:-

1.1.5.2    The Settlor, PLATO CHRIS FOUFAS

1.1.5.3    The Settlor's Spouse, CHARMAINE FOUFAS (nee BROWER)

1.1.5.4    The Settlor's son, TIMOTHY FOUFAS and any remoter descendants

1.1.5.4    Any other children of the Settlor and their remoter descendants

1.1.5.5    save in respect of any Excluded Person such person or persons or class of persons whomsoever and wheresoever as the Trustee or Trustees may at any time or times before the expiration of the Trust Period by Deed or Deeds appoint as beneficiaries **PROVIDED FURTHER** that the Trustee or no person for the time being one of the Trustees or a descendant of any grandparent of one of the Trustees or a spouse of one of the Trustees or of such descendant shall be capable of enjoying any benefit as a member of the class of beneficiaries **AND PROVIDED ALSO** that no beneficiary may be resident or ordinarily resident in the Isle of Man

1.1.6    **"Beneficiaries by Default"** means and includes the persons or organisations named in 3.1 hereof

1.1.7    The **"Protector"** means Bank of Scotland Trust Co. (International) Ltd. or other Protector for the time being of this Settlement appointed in accordance with this Settlement

1.1.8    The **"Trust Period"** shall mean the period ending on the earlier of:

1.1.8.1    the last day of the period of eighty years from the date of this Settlement which period (and no other) shall be the applicable perpetuity period or

1.1.8.2    such date as the Trustee or Trustees shall by Deed at any time or times specified (not being a date earlier than the date of execution of any such Deed or later than a date previously specified)

1.1.9    **"Nevis"** except where the context so admits Nevis wherever appearing herein means Nevis or such other jurisdiction or place if any which has

been declared by the Trustee or Trustees as the place from which the Proper Law of this Settlement adopts and applies

1.1.10    **"Excluded Person"** means any person(s) who have been excluded in whole or in part from benefit in this Settlement and are named initially in Schedule 2 hereof

1.1.11    **"Professional Person"** includes any corporate body or financial institution acting in any legal or other capacity in respect of this Settlement

2.0    Trust Fund and Income

2.1    The Trustee or Trustees shall stand possessed of the Trust Fund and the income thereof upon the trusts and with and subject to the powers and provisions hereinafter declared and contained

2.2    The Trustee or Trustees shall stand possessed of the Trust Fund **UPON TRUST** in their discretion to permit so much of the same as shall not from time to time consist of money to remain as invested or to sell call in or convert into money all or any of such investments and other property as form part of the Trust Fund from time to time and to invest the money arising thereby and any other capital monies received by them in such of the investments hereinafter authorised as they shall in their absolute discretion decide with power from time to time to change any such investments for others of a like nature

2.3    Subject to any appointment made pursuant to the powers hereinafter conferred on them the Trustee or Trustees shall during the Trust Period stand possessed of the income of the Trust Fund **UPON TRUST** to accumulate it by way of compound interest by investing it and the resulting income thereof in such of the investments hereinafter authorised as they shall in their absolute discretion decide such accumulations to be

added to the capital of the Trust Fund and to be held as one fund with it for all purposes

2.4     Capital and Income

The Trustee or Trustees shall have power revocably or irrevocably in writing to appoint all or any part or parts of the capital and income of the Trust Fund Upon Trust for such one or more of the Beneficiaries and if more than one in such names and proportions and at such time or times and either absolutely or upon such trusts (whether discretionary or otherwise) and subject to such conditions provisos and limitations and subject to such restrictions in all respects as they may in their absolute discretion decide

**PROVIDED THAT:-**

2.4.1     Any such appointment of capital of the Trust Fund (whether or not the appointment affects income also) shall be made by Deed

2.4.2     Every such appointment shall be made and every interest limited thereunder shall vest in possession if at all before the expiration of the Trust Period and no appointment shall be revoked after the expiration of the Trust Period

2.4.3     No such appointment shall invalidate any payment or application of income or capital previously made under the trusts or powers herein elsewhere contained

2.4.4     Any such appointment may (if the Trustee or Trustees think fit and without restricting the general meaning and effect of the powers contained in this Clause) be made in respect of income alone without any appointment of capital

2.5     In any such appointment the Trustee or Trustees may declare that the whole or any part or parts of the capital or of the income or of the capital and income of the Trust Fund shall be held (either irrevocably or revocably) upon such trusts for the Beneficiaries or any one or more of them and subject to such powers (including powers of maintenance and advancement) and provisions (including provisions for the accumulation of income for any fixed terminable or other period permitted by the law of Nevis) whether or not such powers and provisions are similar to those contained herein for the benefit of the Beneficiaries or any one or more of them and including the reservation or delegation to the Trustee or Trustees or any other person or persons (except the Settlor or any spouse for the time being of the Settlor) of the like discretion as to the disposition of the capital and income of the Trust Fund in respect of which any such declarations shall be made in favour of all or any of the objects thereof as are conferred upon the Trustee or Trustees in relation to the Beneficiaries by this Settlement and generally in such manner as the Trustee or Trustees shall think fit

2.6     In any appointment the Trustee or Trustees shall have power (if they so desire) to appoint separate trustees of the property of which trusts are declared under Clause 2.5 and to provide for the appointment of new or additional separate trustees thereof so that all or any such trustees or new or additional trustees may be persons resident outside the jurisdiction of the Courts of Nevis **PROVIDED THAT** such the Trustee or Trustees shall not include the Settlor or any spouse for the time being of the Settlor

2.7     All interests created by any such appointment shall vest in possession if at all before the expiration of the Trust Period

2.8     The Trustee or Trustees shall be discharged from any further liability in respect of any part of the Trust Fund which is transferred to any of the Beneficiaries or to any such separate Trustee or Trustees

2.9     Subject to any appointment made pursuant to the last preceding Clause and notwithstanding the trust to accumulate contained in Clause 2.3 the Trustee or Trustees shall during the Trust Period have power in their discretion to pay or apply the whole or any part or parts of the income of the Trust Fund as it arises to or for the maintenance and support or otherwise howsoever for the benefit of all or such one or more exclusively of the others or other of the Beneficiaries for the time being as the Trustee or Trustees shall think fit

2.9.1     Subject to any appointment made pursuant to Sub-Clause 2.4.1 the Trustee or Trustees shall during the Trust Period have power in their discretion to pay or transfer any income or capital of the Trust Fund to the Trustee(s) of any other trust wherever established and subject to law or whatever jurisdiction under which any one or more of the Beneficiaries (but not any other persons or person) is or are interested **PROVIDED THAT** no interest thereunder is capable of vesting in possession later than the expiration of the Trust Period **AND PROVIDED ALSO** that neither the Settlor nor any spouse for the time being of the Settlor is or is capable of being appointed as a trustee of such trust

2.9.2     For the purposes of Sub-Clause 2.9.1 "trust" means any trust created by any settlement declaration of trust will codicil or other instrument under the law of any jurisdiction and a person shall be deemed to be interested under a trust if any capital or income thereof is or is capable of being transferred paid applied or appointed to him for his benefit either pursuant to the terms of the trust or in consequence of any exercise of any power or discretion conferred on any person by the Trust

2.9.3     The Trustee or Trustees shall be discharged from any further liability in respect of any income or capital of the Trust Fund paid or transferred to the Trustee(s) of any other trust pursuant to Sub-Clause 2.9.1

3.0    Default Trusts

3.1    Upon the death of the Settlor, the Trustee or Trustees shall distribute the Trust property, as then constituted, to such person or persons or organisations, excluding the Settlor, the Settlor's estate, the creditors of the Settlor other than the Settlor's spouse, or the creditors of the estate of the Settlor other than the surviving spouse of the Settlor, upon such conditions and estates, in trust or otherwise, with such powers, in such manner, and at such time or times as the Settlor appoints and directs by will, specifically referring to this power of appointment.

3.2    In default of and subject to any exercise of the powers hereinafter conferred on them the Trustee or Trustees shall at the expiration of the Trust Period hold the Trust Fund **UPON TRUST** to transfer it to such of the Beneficiaries as are then living and if more than one in equal shares absolutely and to all or any beneficiaries may be by default namely International Red Cross, International Cancer Research and Save the Children Fund

3.3    The Trustee or Trustees shall have power at any time by Deed to declare that any future date specified in such Deed shall be the date of the expiration of the Trust Period for the purposes of Clause 3.1 hereof

4.0    Trust Investments

4.1    Any money for the time being subject to the trusts hereof may be invested or laid out by the Trustee or Trustees in any part of the world in any way in which they in their absolute discretion think fit (whether or not the money so invested will produce income) as if they were a sole absolute beneficial owner of the money and for the purposes of this Clause the purchase of any property whether moveable or immovable (including chattels) for the beneficial occupation use or enjoyment of any person who would be entitled to receive or to whom or for whose benefit the Trustee or Trustees would have power to pay or apply the income of such property if it produced

income and the lending of money to any person with or without interest and with or without security shall constitute investment and in exercising their powers of investment the Trustee or Trustees need not diversify the investments held by them

4.2     Without prejudice to the generality of the above any monies for the time being subject to the trusts hereof may be invested or laid out in the purchase of (or at interest upon the security of) such stocks funds shares securities or other investments or property of whatsoever nature and wheresoever situate and whether involving liability or not and whether producing income or not or upon such personal credit with or without security as the Trustee or Trustees shall in their absolute discretion think fit including the purchase erection and improvement of any property as a residence for any person who is a Beneficiary hereunder the purchase and improvement of chattels for the use of such person to the intent that the Trustee or Trustees shall have the same full and unrestricted powers of investing and transposing investments and laying out monies in all respects as if they were absolutely entitled thereto beneficially and in the professed exercise of this power the Trustee or Trustees shall not be liable for any loss to the Trust Fund arising from any investment or purchase made in good faith

4.3     Without prejudice to the generality of the preceding Clause hereof:-

4.3.1     The acquisition of any investment although of a speculative nature shall be deemed to be an authorised investment of trust moneys and the Trustee or Trustees shall not be under any obligation or be liable for any loss occasioned by any failure to diversify investments notwithstanding that the whole or a substantial part of the Trust Fund may consist of the stocks shares or debentures of a single company

4.3.2     The acquisition of any reversionary interest in property or any policy or securities or other investments not producing income or in respect of which no dividend interest or rent is payable shall be deemed to be an authorised investment of trust moneys

4.3.3    The acquisition of any limited interest in property including any limited equitable interest under a settlement or trust or any annuity or policy or securities or other investments being of a wasting nature shall be deemed to be an authorised investment of trust moneys

4.3.4    Any investment of whatever nature including a loan in or to private or public companies incorporated in any part of the world shall be deemed to be an authorised investment of trust moneys

4.3.5    Any Investment in the debentures or debenture stock or preference or preferred ordinary or ordinary or deferred shares or stock of any private or public company incorporated in any part of the world shall be deemed to be an authorised investment of trust moneys

4.3.6    The Trustee or Trustees shall have power to make any such investment as is mentioned in Sub-Clauses 4.3.2 and 4.3.3 notwithstanding that the making thereof may affect or alter the interests of the persons respectively interested in capital and income hereunder

4.3.7    The Trustee or Trustees shall have power to apply any monies forming part of the capital or income of the Trust Fund in the purchase or subscription of partly-paid shares and shall have power to pay up such shares at such times and in such manner as they shall in their absolute discretion determine

4.3.8    The Trustee or Trustees shall have power pending the investment thereof for any period to place any monies forming part of the Trust Fund on current or deposit account with any bank or banks or any other company or corporation conducting the business of banking or accepting monies on deposit in any part of the world and may open and maintain banking accounts in their joint names or the name of this Settlement

THE K M SETTLEMENT

4.3.9    The Trustee or Trustees may invest the whole or any part of the capital or income of the Trust Fund in effecting purchasing or otherwise acquiring and paying premiums on any policy or policies of assurance upon the life of any person whether such policies be whole life or endowment or policies to cover death within any term (howsoever short) or policies restricted to death by accident and generally upon any terms and conditions as the Trustee or Trustees shall think fit and the Trustee or Trustees shall have all the powers of an absolute beneficial owner as respects any policy forming part of the Trust Fund including the power to exercise any option afforded by such policy or to sell or realise any such policy or to convert the same into a fully paid up policy or into any other form of assurance

4.3.10   The Trustee or Trustees shall have power to leave any assets subject to any of the trusts of this Settlement in the state of investment in which they may be from time to time

4.3.11   The Trustee or Trustees shall have power at any time or times to sell or call in any investments or property for the time being comprised in the Trust Fund or transpose or convert the same into any other investments or property the acquisition of which monies subject hereto is hereby authorised

4.3.12   The Trustee or Trustees shall have the power at any time to purchase any policy of insurance so as to specifically or otherwise provide indemnity in whole or in part so as to afford such indemnity to settle in whole or in part any court action whether commenced or not and wheresoever bought and whether subject to any Court Order and the Trustee or Trustees shall have the benefit personally or otherwise of any monies owing and or accruing from any such policy

4.3.13   Any purchase of any policy of insurance of whatever nature and whether for the benefit in whole or in part of any beneficiary trustee or protector shall be deemed to be an authorised investment of trust monies

5.0     Powers of Administration

5.1     Without prejudice to the generality of any other powers hereby or by law conferred
        upon them the Trustee or Trustees shall be at liberty to delegate all or any of the trusts
        powers and duties from time to time vested in or imposed on them by this Settlement
        or by law in relation to the Trust Fund or the income thereof (including but without
        prejudice to the generality of the foregoing discretionary trusts and powers which
        require or empower the determination of beneficial interests therein) to any person
        resident or domiciled in any part of the world and so that any such delegation shall be
        made in such manner and to such extent and at such time as the Trustee or Trustees
        shall in their absolute discretion think fit and shall be binding on all persons
        beneficially interested hereunder

5.2     The Trustee or Trustees shall not be bound or required to interfere in the management
        or conduct of the business of any company wherever resident or incorporated in which
        the Settlement shall be interested although holding the whole or a majority of the
        shares carrying the control of the company but so long as the Trustee or Trustees shall
        have no actual notice of any act of dishonesty or misappropriation of monies on the
        part of the directors having the management of such company the Trustee or Trustees
        shall be at liberty to leave the conduct of its business (including the payment or
        non-payment of dividends) wholly to such directors without requiring to be supplied
        with any information concerning the company or its affairs beyond that to which
        every shareholder would be entitled and no Beneficiary hereunder shall be entitled to
        require the distribution of any dividend by any company wherever incorporated or
        resident in which the Settlement may be interested or require the Trustee or Trustees
        to exercise any powers they may have of compelling any such distribution

5.3     The Trustee or Trustees shall have all powers of investment management sale
        exchange partition hypothecation mortgage pledge assignment leasing insurance
        protection improvement equipment dealing and disposition (and all other powers)
        of an absolute beneficial owner of the Trust Fund and their powers shall not be

restricted by any principle of construction or rule or requirement of law but shall operate according to the widest generality of which the foregoing words are capable notwithstanding that certain powers have been hereinbefore more particularly set forth

5.4     The Trustee or Trustees shall until the expiration of the Trust Period have and may exercise at any time or times the following additional powers:-

    5.4.1     To effect any transaction concerning or affecting any part of the Trust Fund or any other property whatsoever if the Trustee or Trustees think the transaction is for the benefit of the Trust Fund or the persons interested in it as if the Trustee or Trustees were a sole absolute beneficial owner of the Trust Fund and for the purposes of this paragraph "transaction" includes any sale exchange assurance grant lease surrender reconveyance release reservation or other disposition and any purchase or other acquisition and any covenant contract licence option or right of pre-emption and compromise partition insurance or other dealing or arrangement and "effect" has the meaning appropriate to the particular transaction and references to property include references to restrictions and burdens affecting property

    5.4.2     To make improvements to or to develop land or buildings or other structures which form part of the Trust Fund and in particular to erect enlarge improve or rebuild any buildings or other structure on such land if the Trustee or Trustees think it will be for the benefit whether permanent or temporary of the Trust Fund and to pay the cost of any such improvements and developments and all incidental costs out of the capital of the Trust Fund

    5.4.3     To pay the whole or any part of the cost of repairing or insuring any property which forms part of the Trust Fund out of the income or capital of the Trust Fund or partly out of the income and partly out of the capital as they think fit

5.4.4     To permit any person who would (if it were producing income) be entitled to the income from any moveable or immovable property (including chattels) which or the proceeds of sale of which form part of the Trust Fund or to whom or for whose benefit the Trustee or Trustees would have power to pay or apply such income to have the beneficial occupation use or enjoyment of such property upon such conditions (if any) as to the payment or non-payment of rent rates taxes and other outgoings as to insurance and the keeping of inventories and generally upon such terms (if any) as the Trustee or Trustees may in their discretion think fit

5.4.5     To borrow money for any purpose connected with the trusts of the Settlement (including the making of investments held as part of the Trust Fund) and to pledge or mortgage the whole or any part of the Trust Fund or any property which forms part of the Trust Fund by way of security for such loan

5.4.6     To lend any part of the Trust Fund (and to raise cash for this purpose by the sale of investments) to any of the Beneficiaries and/or to any other person or company upon such security (if any) and upon such terms as to the payment of interest (if any) and the repayment of the loan as the Trustee or Trustees in their discretion think fit

5.4.7     To deposit with a Bank or similar institution any part of the Trust Fund and guarantee a loan not exceeding the amount of the deposit to be made to any of the Beneficiaries and/or to any other person or company the same Bank or other institution upon such security (if any) and upon such terms as the Trustees in their discretion think fit

5.4.8     To vest any property forming part of the Trust Fund in any Bank or Bankers Nominee Company or other Company or Corporation carrying on business as nominees or in any other two or more persons (other than the Settlor or

any spouse for the time being of the Settlor) as nominees for the Trustee or Trustees and so that any such bank or bankers nominee company or other company or corporation or any such person acting as nominee may be resident outside the jurisdiction of the law of Nevis and so also that any such company or corporation or person may be paid such fees as the Trustee or Trustees shall think fit out of the Trust Fund or the income thereof and the Trustee or Trustees shall not be responsible for any loss which may arise by reason only of any property being so vested

5.4.8.1    To give proxies and powers of attorney (with or without power of substitution) for voting or acting on behalf of the Trustee or Trustees in relation to any property forming part of the Trust Fund

5.4.8.2    To keep the deeds or documents of title to any part of the Trust Fund in any part of the world as the Trustee or Trustees may from time to time decide

5.4.8.3    To take and act in accordance with Counsel's Opinion concerning any differences arising under or problems concerning this Settlement or any matter in any way relating to the Trust Fund or to the Trustee's or Trustees' duties in connection with the Trust and to pay Counsel's fees out of the capital or the income of the Trust Fund as the Trustee or Trustees think fit

5.4.8.4    To engage the services of Advocates Solicitors or Attorneys Bankers Accountants (including accountants to prepare annual accounts of the Settlement) Stockbrokers and other agents in any part of the world (whether or not being the Trustee or one of the Trustees) to transact any business or to do any act required to be transacted or done including the receipt

or payment of money or the execution of documents and to pay for such services out of the capital or income of the Trust Fund as the Trustee or Trustees think fit including without prejudice to the generality of the foregoing the legal and other costs incurred in connection with the creation of this settlement

5.4.8.5 To decide what part of the expenses of the Settlement shall be charged to capital and what part to income and to decide as between separate funds and separate parts or shares the allocation of income gains profits and losses

5.4.8.6 To institute prosecute and defend any suits or actions or other proceedings affecting the Trustee or Trustees or the Trust Fund to compromise any matter of difference or to submit any such matter to arbitration to compromise or compound any debts owing to them or any other claims and to adjust any disputes in relation to debts or claims against them upon such evidence as seems sufficient to them and in whole or in part at public auction or private sale or otherwise and upon such terms as the Trustee or Trustees deem advisable to make partitions of any trust property with any joint owners having any interest therein whether by sale or by set-off or by agreement or otherwise

5.4.8.7 To invest and reinvest and manage accumulations of income either separately or together with other parts of the Fund

5.4.8.8 Upon and for the purpose of any distribution or appropriation of the Trust Fund to place such value on any assets from time to time forming part of the Trust Fund as the Trustee or Trustees in their discretion shall deem just and proper and any such valuation shall be absolutely final and binding and conclusive

on all the Beneficiaries and further upon any such distribution to decide to whom specified assets shall be given and to distribute assets subject to the payment of such amounts (if any) as may be necessary to adjust the shares of the various Beneficiaries

5.4.8.9    To exercise any power or discretion vested in the Trustee or Trustees notwithstanding that one or more of the Trustees may personally be interested in the exercise thereof **PROVIDED THAT** at least one of the Trustees has no interest in the exercise of such power or discretion

5.4.8.10   If any probate succession or other duties fees or taxes become payable in Nevis or elsewhere in respect of the Trust Fund or any part of it on the death of any person the Trustee or Trustees in their discretion may pay all or any part of such duties fees and taxes out of the Trust Fund without recourse against or by any Beneficiary and with absolute discretion as to the time and manner of such payment

5.4.8.11   All or any tax liability and/or costs and disbursements and expenses whatsoever attaching to any beneficiary and/or trustee whether current past or contingent and wheresoever raised may be paid in whole or in part by the Trustee or Trustees from the Trust Fund without recourse against or by any Beneficiary and with absolute discretion as to the time and manner of such payment

5.4.8.12   Revocably or irrevocably in writing to release either wholly or in part all or any of the powers and discretions (including this present power) vested in the Trustee or Trustees under the terms of this Settlement or under the law of Nevis to the intent

that the Trustee or Trustees may in particular and without restricting the general meaning and effect of this present power provide that any of such powers and discretion shall cease to be exercisable for a specified period or periods or a specified purpose or purposes or so as to benefit a specified person or persons or class of persons or in respect of a specified part or parts of the Trust Fund or the income from it

5.5.1   In the professed execution of the trusts and powers hereof the Trustee or Trustees shall not be liable:-

5.5.1.1   for any loss to the Trust Fund arising by reason of any improper or speculative or hazardous investment made in good faith or in consequence of the failure depreciation or loss of any investment made in good faith

5.5.1.2.   for the negligence or fraud of any agent employed by the Trustee or Trustees in good faith notwithstanding the employment of such agent was not necessary or expedient

5.5.1.3   by reason of any mistake or omission made in good faith by the Trustee or Trustees

5.5.1.4   by reason of any other matter or thing except wilful fraud or wrong-doing on the part of the Trustee or Trustees

And without prejudice to the generality of the foregoing the Trustee or Trustees shall be under no obligation to investigate the merits of and no Trustee or Trustees shall be liable with respect to any investment made or disposed of or retained at the suggestion of any investment adviser appointed by the Trustee or Trustees

5.5.2     The Trustee or Trustees shall not be required to give a bond or security for the due and faithful administration of the Trust Fund or for the discharge of the trusts hereby created

5.5.3     The Trustee or Trustees shall be entitled to exoneration and indemnity out of the Trust Fund for any liability loss or expense incurred hereunder and for any judgement recovered against and paid by the Trustee or Trustees other than liability loss expense or judgement arising out of their own wilful fraud or wrong-doing

5.5.4     Provided there is at least one Trustee who has no personal interest the Trustee or Trustees may exercise any power or discretion conferred on the Trustee or Trustees by the Settlement or by law notwithstanding that some other Trustee or Trustees may be otherwise interested (whether directly or indirectly and whether in a personal or fiduciary capacity) in the exercise or the result of the exercise of such power or discretion

5.6     If a Trustee or Trustees retires from the trusts hereof or becomes incapable of acting as a Trustee hereof such Trustee or Trustees shall be released from all claims demands actions proceedings and accounts of any kind on the part of any person (whether in existence or not) actually or prospectively interested under this Settlement for or in respect of the Trust Fund or the income of the Trust Fund or the trusts of this Settlement or any act or thing done or omitted in execution or purported execution of such trusts other than and except only actions arising from any fraud or fraudulent breach of trust in which the Trustee or (in the case of a corporate trustee) any of its officers was a party or privy

5.7     If any income or capital is to be paid or applied hereunder to or for the benefit of any person who is for the time being under the age at which he or she may give a good receipt the Trustee or Trustees may pay it to the person direct (notwithstanding that any receipt given may not be good) or to his or her parent or guardian as trustee for

the benefit of such person without seeing to its application, and any person and/or guardian in receipt of such monies shall be liable to account to the Trustee or Trustees and or the beneficiaries for such monies

5.8    Every discretion or power hereby conferred on the Trustee or Trustees shall be an absolute and unfettered discretion or power and no trustee shall be obliged to give any Beneficiary any reason or justification for any exercise of such discretions

5.9    Appointment of New Trustees

5.9.1    If and so often as the Trustee or Trustees or any of them shall die or desire to be discharged from or refuse to or become unfit or incapable to act in the trusts of this Settlement the executor or administrator or liquidator of the last surviving Trustee or the continuing Trustee shall have the power by writing to appoint a new trustee or new trustees in the place of the trustees so dying or desiring to be discharged or refusing or becoming unfit or incapable to act as aforesaid or (as the case may be) in addition to the Trustee or Trustees for the time being hereof and upon every such appointment the Trust Fund shall forthwith be transferred to or vested in the trustees so appointed jointly with the continuing trustees (if any), provided that in the event that a new Trustee is appointed to the Trust for whatever reason, that before such appointment can take effect, such must be with the unanimous approval of the then remaining trustees together with the express approval of the Protector

5.9.2    Upon every appointment of a new trustee or trustees the Trust property shall forthwith be transferred to or vested in the trustee or trustees so appointed jointly with the continuing trustees (if any)

5.9.3    Neither the Settlor nor any spouse for the time being of the Settlor shall be appointed a trustee hereof

5.9.4 Any person may be or remain or be appointed as a new or additional trustee of this Settlement notwithstanding that he is resident outside the jurisdiction of the Courts of Nevis and subject to such person not being a UK resident

5.9.5 Any outgoing Trustee shall execute and do all such documents and acts as may be necessary for vesting the Trust fund in the new or continuing Trustees

5.9.6 On any change in the Trustees howsoever arising the persons who are the Trustees after the change may cause a memorandum to be endorsed on or permanently annexed to this Settlement stating the date of the change and the names of such persons and if such memorandum is signed by such persons and certified by a notary public as having been signed by them before him any person dealing with the trusts shall be entitled to rely upon such memorandum (or the latest of such memoranda if more than one) as sufficient evidence that the persons named therein are the duly constituted Trustees for the time being of this Settlement

5.10 Any Trustee and/or Protector for the time being hereof and/or any previous persons in such capacity being an Advocate Accountant or other Professional Person whensoever engaged shall be entitled to charge and be paid for all professional and other services rendered by him and all time spent by him in the same manner in all respects as he would have been entitled to charge and be paid if he had not been appointed a trustee hereof including for the avoidance of doubt the receipt and retention of all or any commission payable in respect of any investment made of the Fund

5.11 The Trustee or Trustees may at any time or times during the Trust Period engage the services of persons (who may be persons associated with the Settlor but may not be the Settlor or any spouse of the Settlor) to give investment advice and may remunerate any such person out of the capital or income of the Trust Fund as the Trustee or Trustees think fit

5.12    No trustee (nor any associated company of any corporate body being a trustee) shall be accountable for any remuneration or other benefit received by him or by any other person from any company in which shares stock debentures or other securities are for the time being held by the Trustee or Trustees as part of the Trust Fund

5.13    Without prejudice to any right under the general law of the Trustee or Trustees to refuse disclosure of any document it is hereby declared that the Trustee or Trustees shall not be bound to disclose to any person any of the following documents that is to say

5.13.1    Any document disclosing any deliberations of the Trustee or Trustees (or of any of the Trustees) as to the manner in which the Trustee or Trustees should exercise any power or any discretion conferred upon the Trustee or Trustees by this Settlement or disclosing the reasons for any particular exercise or non-exercise of any such power or any such discretion or the material upon which such reasons shall or might have been based

5.13.2    Any other document relating to the exercise or proposed exercise of any power or any discretion conferred on the Trustee or Trustees by this Settlement **PROVIDED ALWAYS** that the Trustee or Trustees shall be under no obligation to refuse either to disclose any such document as aforesaid or to supply any information directly or indirectly relating to the formation or administration of this Settlement to the authorities of any state purporting to have the right to call for such document or information whether or not such purported right is legally enforceable against the trustees and neither the Trustee or Trustees nor any associate of a corporate body being a Trustee hereof nor any director employee or partner or any of the foregoing nor any other person who may have or be in a position to obtain legitimate possession of any such document or information shall be under any liability to any person beneficially interested hereunder for any such disclosure or supply of information

5.14   The Trustee or Trustees shall have power (subject to the application (if any) of the rule against perpetuities) to carry on the general administration of these Trusts in any jurisdiction in the world whether or not such jurisdiction is for the time being the proper law of this Settlement or the Courts of such jurisdiction of the time being the forum for the administration of these Trusts and whether or not the Trustee or Trustees or any of them are for the time being resident or domiciled in or otherwise connected with such jurisdiction

5.15   The Trustee or Trustees with the consent of the Protector (if any) but otherwise in their absolute discretion may at any time declare in writing that from the date of such Declaration the proper law of the Settlement shall be that of any specified jurisdiction (not being a jurisdiction under the law of which this Settlement would be capable of revocation) and that all rights under this Deed and its construction and effect shall be subject to and construed according to the laws of that jurisdiction

5.16   The Trustee or Trustees with the consent of the Protector (if any) but otherwise in their absolute discretion may at any time declare in writing that from the date of such declaration the forum for the administration of these Trusts shall be the Courts of any specified jurisdiction

6.0   Abeyance Period

6.1   If during the lifetime of the Settlor it appears to the Trustee or Trustees that the Settlor has done or has attempted to do or has suffered any act or thing or that any event has happened whereby he would in accordance with the law enforced in any part of the world be deprived of the right to receive the income of the trust fund or any part of it and to retain the same for his own use and benefit absolutely they shall serve on the Settlor a notice in writing called an "Abeyance Notice" which shall remain current unless and until a "Cancellation Notice" is served in accordance with the provisions of the next following sub clauses hereof

6.2   If during the currency of an Abeyance Notice and during the lifetime of a Settlor it

appears to the Trustee or Trustees that the Settlor is not deprived as aforesaid they shall serve on him a notice in writing to that effect called herein a "Cancellation Notice"

6.3    In this settlement an "Abeyance Period" shall mean the period between the abeyance of an Abeyance Notice and the Closing Date or (if earlier) the date of the first Cancellation Notice served thereafter

7.0    <u>Power to Add to the Beneficiaries</u>

7.1    The Trustee or Trustees may with the written consent of the Protector (if any) at any time or times during the Trust Period add to the Beneficiaries such one or more objects of persons or classes of persons as the Trustee or Trustees which such consent shall (subject to the application (if any) of the rule against perpetuities) determine

7.2    Any such addition shall be made by Deed

    7.2.1    naming or describing the objects or persons to be added

    7.2.2    specifying the date or the happening of the event (not being earlier than the date of execution of the Deed but before the end of the Trust Period) upon which the addition shall take effect

8.0    <u>Appointment of New Protector</u>

8.1    The Protector shall cease to be the Protector on death if an individual or on dissolution if a corporation or in either case on becoming unable or unfit to act or making a valid appointment under Clause 8.2

8.2    The Protector may by Deed irrevocably appoint any other person to be protector of this Settlement and if the Trustee or Trustees have been given notice of the

appointment and if the person appointed consents in writing such person shall immediately become the Protector

8.3     The Protector has the power to approve any appointment of any new trustee in accordance with the provision as set out in Sub-Clause 5.9.1 herein

8.4     The Protector may by Deed revocable during protectorship nominate a person to become the Protector upon the person making the nomination ceasing to be the Protector and thereupon if the nomination remains unrevoked and the Trustee or Trustees have been given written notice of the nomination and the person nominated consents in writing such person shall immediately become the Protector

8.5     If the Protector shall cease to be Protector of this Settlement for any reason whatever without having validly appointed a Successor the Protector shall be such person as deemed appropriate and as nominated by the President of the Isle of Man Law Society as at the date of any application and/or appointment being made

8.6     If notwithstanding the provisions of Clauses 8.1, 8.2, 8.3, 8.4 and 8.5 there shall be at any time no protector of this Settlement the Trustee or Trustees may by deed irrevocably appoint any person not being one of the Trustees to be the Protector

9.0     Protector Indemnity

9.1     The Protector shall not be liable for any loss to the Trust Fund arising in consequence of the failure deprecation or loss of any investment or investments or any mistake or omission or any other matter or thing except wilful fraud or wrongdoing on the part of the Protector and this clause shall apply whether or not the Protector had or should have had notice of the matter causing loss

10.0    Protective Provisions

10.1    If at any time during the continuance of the Trust the Protector (if any) shall so declare by endorsement on the Trust Deed as a result of or in the event of any of the following events or circumstances happening during the Trust Period:-

    10.1.1    the declaration or existence of a state of war in consequence whereof any residents or inhabitants of Nevis or a company is declared to be an enemy

    10.1.2    any declaration of war against Nevis or the inhabitants thereof or the Government of the United States of America or United Kingdom.

    10.1.3    the invasion with hostile intent of Nevis by any foreign military forces

    10.1.4    the enactment of any law or any action by or on the part of any governmental authority agency or officer of or in Nevis the aim purpose effect or result of which is to cause or effect:-

        10.1.4.1    the acquisition expropriation or confiscation of any assets comprising the Trust Fund or the restriction suspension or abrogation in whole or any part of the terms of this Deed or Trust Fund or any act or deed which the Trustee or Trustees may in their absolute discretion deem to be in any way hostile to or prejudicial to the Trust or

        10.1.4.2    the compulsory conversion of the assets comprising the Trust Fund or any part thereof or

        10.1.4.3    any act or deed compelling the Trustee or Trustees to sell transfer or otherwise dispose of any assets comprised in the Trust Fund or

10.1.4.4    any interference in any way with the Trustee's or Trustees's discretion to invest the Trust Fund as they deem appropriate under the terms of this Trust

10.1.5    the withdrawal cancellation or restriction of the exemptions or reliefs granted at present or agreed to be granted in relation to the Trust by the authorities of Nevis or any other authorities or the happening of any act or thing whereby the same shall or may cease to be effective in or appear to be so

10.1.6    the passing of any law or enactment in or affecting the Proper Law of the Trust whereby the interests of the Trust or any Beneficiary or Ultimate Residuary Beneficiary is in the opinion of the Protector (if any) adversely effected notwithstanding that such persons or bodies are non-resident of Nevis

10.1.7    the overthrow or apparent overthrow of the government of Nevis by force or coup d'etat including but without limiting the foregoing the usurpation or apparent usurpation of government by military junta or dictator or by any other means:-

then immediately and without further action on the part of any person or entity:

10.1.7.1    the Trust Fund shall remain vested in the Trustee or Trustees or if the Protector (if any) shall designate another Trustee or Trustees the Trust fund shall vest in such other Trustee or Trustees which shall automatically become the Trustee or Trustees hereof and the replaced Trustee or Trustees shall not thereafter be responsible as Trustees hereunder except for acts of wilful fraud or misappropriation

10.1.7.2     in such event the Proper Law of this Trust shall forthwith be deemed to be the British Virgin Islands and the Courts of the British Virgin Islands shall have exclusive jurisdiction unless the Protector (if any) shall direct by written instrument that the Proper Law of this Trust shall become some other place and that the laws of such other place shall be the Proper Law of this Trust in which case such other place shall be and be deemed to be the Proper Law of the Trust

## 11.0   Proper Law Forum and Place of Administration

11.1   This Settlement is established under the laws of Nevis and the trusts powers and provisions hereof and the rights of the parties hereto and of all persons claiming any interest hereunder and the construction and effect of each and every provision hereof shall be subject to the exclusive jurisdiction of and shall take effect and be construed and regulated only according to the laws of Nevis (which shall be the forum for the administration thereof) notwithstanding that one or more of the Trustees hereof may from time to time be resident or domiciled elsewhere than in Nevis **PROVIDED ALWAYS** that the Trustee or Trustees may at any time and from time to time during the Trust Period by Deed change the proper law of this Settlement by declaring that this Settlement shall from the date of such Deed take effect in accordance with the law of any other place in any part of the world being a law which will either (i) recognise this Settlement and any subsisting appointments hereunder as valid according to their terms or (ii) recognise the power of appointment contained in Clause 5 hereto as valid **PROVIDED THAT** in changing the proper law to a law which does not recognise some or all of the trusts on default of appointment or contained in any subsisting appointment under the power aforesaid the Trustees shall by the same Deed and with the like consent make an appointment under the said power creating trusts for the benefit of the Beneficiaries or some of them in a form which will be recognised by the new law

11.2    This Instrument shall be governed by the law for the time being in force in Nevis

11.3    The Courts of Nevis shall be the forum for the administration of these Trusts

**IN WITNESS WHEREOF** the Settlor and the Trustees have executed these presents the day month and year first before written

**SIGNED AS A DEED AND DELIVERED BY**

PLATO CHRIS FOUFAS ("The Settlor")
in the presence of:

Mary-Ann W.S.

**SIGNED FOR AND ON BEHALF OF**

NOVA CORPORATION ("The Original Trustee")
in the presence of:

Nova Corporation
by its corporate representative
Calypso Tropicana Limited
by its corporate representatives
Mark Moroney
and Nigel Rotheroe.

## SCHEDULE 1
## "ASSETS"

1.      **Plato Foufas and Company (an Illinois Corporation)**
        98% of the outstanding Stock.

2.      **Foufas Properties, Inc., (an Illinois Corporation)**
        100% of the outstanding Stock in

3.      **Foufas Properties/Forest Cove Inc., (an Illinois Corporation)**

4.      **Various investments in Limited Partnerships**

SCHEDULE 2

"EXCLUDED PERSON"

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (6.37%) and all rights attached to such interest as a special limited partner in BRIARCLIFFE VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated 23rd May 1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By: Plato Foufas, transferor

Dated: 5/7/96

*************************

## APPLICATION TO BECOME
## A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to BRIARCLIFFE VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated 23rd May 1996

BY:

Date: 23rd May 1996

ID#: 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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

*************************

## CONSENT TO ADMISSION AS A
## SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in BRIARCLIFFE VENTURE L.P., an Illinois limited partnership.

Plato Foufas, General Partner

Date: 5/7/96

- LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (14.0063%) and all rights attached to such interest as a limited partner in BRIARCLIFFE VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated 23ʳᵈ May 1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas, transferor

Dated:     5/7/96

************************

APPLICATION TO BECOME
A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to BRIARCLIFFE VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated 23ʳᵈ May 1996

BY:

Date:     23ʳᵈ May 1996

ID#:     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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

***************************

CONSENT TO ADMISSION AS A
SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in BRIARCLIFFE VENTURE L.P., an Illinois limited partnership.

Plato Foufas, General Partner

Date:     5/7/96

## LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (39.00%) and all rights attached to such interest as a limited partner in COVERED BRIDGES VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ May 1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:   Plato Foufas, transferor

Dated:   5/7/96

************************

## APPLICATION TO BECOME
## A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to COVERED BRIDGES VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ May 1996

BY:

Date:   23ʳᵈ May 1996

ID#:   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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

************************

## CONSENT TO ADMISSION AS A
## SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in COVERED BRIDGES VENTURE L.P., an Illinois limited partnership.

Date:   5/7/96

Foufas Properties, Inc. General Partner

Plato Foufas, President

LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (9.00%) and all rights attached to such interest as a limited partner in FOREST COVE VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated  23ʳᵈ  May  1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas, transferor

Dated:  5/7/96

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPLICATION TO BECOME
A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to FOREST COVE VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated  23ʳᵈ  may  1996

BY:

Date:  23ʳᵈ  may  1996

ID#:  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

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONSENT TO ADMISSION AS A
SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in FOREST COVE VENTURE L.P., an Illinois limited partnership.

Date: 5/7/96

Foufas Properties/Forest Cove, Inc.  General Partner

Plato Foufas, President

- LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (.8144%) and all rights attached to such interest as a limited partner in MANSARDS VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23rd   may   1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:   Plato Foufas, transferor

Dated:   5/7/96

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
APPLICATION TO BECOME
A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to MANSARDS VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated   23rd   May   1996

BY:

Date:   23rd   May   1996

ID#:   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

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CONSENT TO ADMISSION AS A
SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in MANSARDS VENTURE L.P., an Illinois limited partnership.

Date:   5/7/96

Foufas Properties, Inc. General Partner

Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (5.994%) and all rights attached to such interest as a special limited partner in MANSARDS VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ  May  1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas, transferor

Dated:     5/7/96

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### APPLICATION TO BECOME
### A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to MANSARDS VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4.  Has read the Partnership's limited partnership agreement; and

5.  Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ  May  1996

BY:

Date:   23ʳᵈ  May  1996

ID#:   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

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CONSENT TO ADMISSION AS A
### SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in MANSARDS VENTURE L.P., an Illinois limited partnership.

Date:   5/7/96

Foufas Properties, Inc. General Partner

Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (1.00%) and all rights attached to such interest as a special limited partner in TEMPE MINNETONKA VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated _____ 23rd May 1996 _____

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:  Plato Foufas, transferor

Dated:  5/7/96

************************

## APPLICATION TO BECOME
## A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to TEMPE MINNETONKA VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated _____ 23rd May 1996 _____

BY: _____

Date: _____ 23rd May 1996 _____

ID#: _____ 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 _____

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

**************************

## CONSENT TO ADMISSION AS A
## SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in TEMPE MINNETONKA VENTURE L.P., an Illinois limited partnership.

Date: _____ 5/7/96 _____

Foufas Properties, Inc. General Partner

Plato Foufas, President

LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (.229%) and all rights attached to such interest as a limited partner in TEMPE MINNETONKA VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ   May  1996
(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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
(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas, transferor

Dated:   5/7/96

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPLICATION TO BECOME
A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to TEMPE MINNETONKA VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated  23ʳᵈ  May  1996

BY:

Date:   23ʳᵈ  May  1996          Nova Corporation by its corporate
                                 representative Calypso Tropicana Limited
ID#:   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               by its corporate representatives
                                 Mark Moroney and Nigel Rotheroe

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONSENT TO ADMISSION AS A
SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in TEMPE MINNETONKA VENTURE L.P., an Illinois limited partnership.

                                 Foufas Properties, Inc., General Partner

Date:   5/7/96

                                 Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (1.00%) and all rights attached to such interest as a special limited partner in TOLLGATE ASSOCIATES Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated    23ʳᵈ   May   1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas, transferor

Dated: _____ 5/7/96 _____

************************

### APPLICATION TO BECOME
### A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to TOLLGATE ASSOCIATES L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated  23ʳᵈ  May  1996

BY: _____

Date: _____ 23ʳᵈ May 1996 _____

ID#: ____ 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 ____

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

************************

### CONSENT TO ADMISSION AS A
### SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in TOLLGATE ASSOCIATES L.P., an Illinois limited partnership.

Date: _____ 5/7/96 _____

Aspen Casino Corp., General Partner

Plato Foufas, President

· LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (83.00%) and all rights attached to such interest as a limited partner in TOLLGATE ASSOCIATES Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated    23rd  May  1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies

(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:    Plato Foufas, transferor

Dated:    5/7/96

*************************

APPLICATION TO BECOME
A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to TOLLGATE ASSOCIATES L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated    23rd  May  1996

BY:

Date:    23rd  May  1996

ID#:    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

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

*************************

CONSENT TO ADMISSION AS A
SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in TOLLGATE ASSOCIATES L.P., an Illinois limited partnership.

Date:    5/7/96

Aspen Casino Corp., General Partner

Plato Foufas, President

## LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (9.43%) and all rights attached to such interest as a limited partner in VERSAILLES VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated    23rd  May  1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:    Plato Foufas, transferor

Dated:    5/7/96

************************
APPLICATION TO BECOME
A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to VERSAILLES VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

    4. Has read the Partnership's limited partnership agreement; and

    5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated  23rd  May  1996

BY:

Date:    23rd  May  1996

ID#:    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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

************************
CONSENT TO ADMISSION AS A
SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in VERSAILLES VENTURE L.P., an Illinois limited partnership.

Date:    5/7/96

Foufas Properties, Inc. General Partner

Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (1.00%) and all rights attached to such interest as a special limited partner in WESTMORE VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ   May   1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies

(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas Transferor

Dated:     5/7/96

************************

## APPLICATION TO BECOME
## A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to WESTMORE VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated     23ᵈ   May   1996

BY:

Date:     23ʳᵈ   May   1996

ID#:     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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

************************

## CONSENT TO ADMISSION AS A
## SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in WESTMORE VENTURE L.P., an Illinois limited partnership.

Date:     5/7/96

Foufas Properties, Inc., General Partner

Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (5.00%) and all rights attached to such interest as a special limited partner in FOSTMAN VENTURE #16 Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23ᵈ  May  1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies

(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:   Plato Foufas, transferor

Dated:   5/7/96

***********************
### APPLICATION TO BECOME
### A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to FOSTMAN VENTURE #16 L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated _ 23ᵈ  may  1996

BY:

Date:   23ᵈ  may  1996

ID#:   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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

***********************
### CONSENT TO ADMISSION AS A
### SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in FOSTMAN VENTURE #16 L.P., an Illinois limited partnership.

Date:   5/7/96

Foufas-SRG #16 Ltd.  General Partner

Plato Foufas, President

## LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire limited partnership interest (3.59%) and all rights attached to such interest as a limited partner in LOMBARD ASSOCIATES Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ   May   1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies

(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:      Plato Foufas & Associates, transferor

Plato Foufas, President  6 .P.

Dated:      5/7/96

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## APPLICATION TO BECOME
## A SUBSTITUTE LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to LOMBARD ASSOCIATES L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4.  Has read the Partnership's limited partnership agreement; and

5.  Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute limited partner.

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ   may   1996

BY: _____ TS

Date: __ 23ʳᵈ  may  1996

ID#:     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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CONSENT TO ADMISSION AS A
## SUBSTITUTE LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute limited partner in LOMBARD ASSOCIATES L.P., an Illinois limited partnership.

Date: __ 5/7/96

Plato Foufas & Co, General Partner

Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (5.89%) and all rights attached to such interest as a special limited partner in LOMBARD ASSOCIATES Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated    23ʳᵈ   May   1996

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:     Plato Foufas, transferor

Dated:    5/7/96

************************

## APPLICATION TO BECOME
## A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to LOMBARD ASSOCIATES L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated   23ʳᵈ   May   1996

BY: _____

Date: 23ʳᵈ May 1996

ID#: 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

Nova Corporation by its corporate representative Calypso Tropicana Limited by its corporate representatives Mark Moroney and Nigel Rotheroe

************************

## CONSENT TO ADMISSION AS A
## SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in LOMBARD ASSOCIATES L.P., an Illinois limited partnership.

Date: 5/7/96

Plato Foufas & Co., General Partner

Plato Foufas, President

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (72.5%) and all rights attached to such interest as a special limited partner in PLATO FOUFAS & ASSOCIATES Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated _23rd May 1996_

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By:    Plato Foufas, transferor

Dated:    _5/7/96_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### APPLICATION TO BECOME
### A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to PLATO FOUFAS & ASSOCIATES L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated _23rd May 1996_

BY:

Date:    _23rd May 1996_

ID#:    _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_

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CONSENT TO ADMISSION AS A
### SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in PLATO FOUFAS & ASSOCIATES L.P., an Illinois limited partnership.

Date:    _5/7/96_

Plato Foufas & Co., General Partner

Plato Foufas, President

© DWIGHT & M. H. JACKSON
CORPORATION SUPPLY CO.
205 W. RANDOLPH ST.
CHICAGO, ILLINOIS 60606

( RESERVE THIS SPACE TO PASTE BACK CANCELLED STOCK CERTIFICATE )

Certificate No. 2   For 100 Shares

FOUFAS PROPERTIES/FOREST COVE, INC.

Issued to Nova Corporation, Trustee of the
KM Settlement dated 23rd May 1996

Dated 5/7 1996

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

Received this Certificate 23rd May 1996

Surrendered this Certificate

IF NOT AN ORIGINAL ISSUE SHOW DETAILS OF TRANSFER BELOW

Transferred from: Plato Foufas

| | Original Certificate | | New Certificate | |
|---|---|---|---|---|
| No. | No. | Date | No. of Orig. Shares | No. of Shbs Transfd. |
| 1 | 12/6/93 | 100 | 100 | |

IF THIS CERTIFICATE IS SURRENDERED FOR TRANSFER SHOW DETAILS

New Certificate Issued to: | No. of New Certificate | No. of Shares Transferred |

( RESERVE THIS SPACE TO PASTE BACK CANCELLED STOCK CERTIFICATE )

© DWIGHT & M. H. JACKSON
CORPORATION SUPPLY CO.
205 W. RANDOLPH ST.
CHICAGO, ILLINOIS 60606

*Certificate No* _2_ *For* _1,000_ *Shares*

POUFAS PROPERTIES, INC.

*Dated* _5/7_ _1996_

*Issued to*

Nova Corporation, Trustee of the

KM Settlement dated 23rd May 1996

*Received this Certificate* _23rd_ _May_ _19 96_

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

*Surrendered this Certificate* _19_

*Transferred from*

*New Certificate Issued to*

| | IF NOT AN ORIGINAL ISSUE SHOW DETAILS OF TRANSFER BELOW | | | |
|---|---|---|---|---|
| *No.* | *Original Certificate* | | *No of Orig'l. Shares* | *No. of Shrs Transf'd.* |
| | *No.* | *Date* | | |
| | 1 | 8/9/73 | 1,000 | 1,000 |

IF THIS CERTIFICATE IS SURRENDERED FOR TRANSFER SHOW DETAILS

| *No. of New Certificate* | *No. of Shares Transferred* |
|---|---|
| | |

Plato Poufas

( RESERVE THIS SPACE TO PASTE BACK CANCELLED STOCK CERTIFICATE )

COPYRIGHT, 1930, BY
DWIGHT M. H. JACKSON
CHICAGO
PATENT PENDING

Certificate No. 11

PLATO FOUFAS & CO.

_____ for _____ 83 _____ Shares

Transferred to

KM Settlement dated 23ʳᵈ May 1996

Dated _____ 5/7 _____ 1996

Nova Corporation, Trustee of the

Nova Corporation by its corporate
representative Calypso Tropicana Limited
by its corporate representatives
Mark Moroney and Nigel Rotheroe

Received this Certificate _____

23ʳᵈ May 1996

Surrendered this Certificate _____ 19

IF NOT AN ORIGINAL ISSUE    SHOW DETAILS OF TRANSFER BELOW

Transferred from

| | No. | Original Certificate Date | No. of Orig'l. Shares | No. of Shs. Transf'd. |
|---|---|---|---|---|
| Plato Foufas | 8 | 12/26/73 | 83 | 83 |

IF THIS CERTIFICATE IS SURRENDERED FOR TRANSFER SHOW DETAILS

New Certificate Issued to

| No. of New Certificate | No. of Shares Transferred |
|---|---|
| | |

PLATO FOUFAS' PARTNERSHIP INTEREST TRANSFERRED TO TRUST IN 1996/ 1997

| PARTNERSHIP | | Transferred to Trust in 1996 | Transferred to Trust in 1997 | |
|---|---|---|---|---|
| Acme Partners | | NONE | NONE | |
| Briarcliffe Lakeside Associates | | NONE | 1.000% | SLP |
| Briarcliffe Venture | LP | 14.0063% | | |
| | SLP | 6.370% | | |
| | SLP | 0.990% | | |
| | | 21.3663% | | |
| Covered Bridges Venture | LP | 39.000% | | |
| | SLP | 0.500% | | |
| | | 39.500% | | |
| Forest Cove Venture | SLP | 9.000% | | |
| Fostman Venture #16 | SLP | 5.000% | | |
| Lombard Associates | LP | 3.590% | | |
| Lombard Associates · → - | GP | 5.890% | | |
| Mansards Associates | SLP | 1.250% | | |
| | SLP | 0.99775% | | |
| | | 2.24775% | | |
| Mansards Venture Profit Percentages | LP | 1.8084% | | |
| Mansards Venture Profit Percentages | SLP | 5.994% | | |
| | | 7.8024% | | |
| Mansards Venture Loss Percentages | LP | 2.1064% | | |
| Mansards Venture Loss Percentages | SLP | 0.7992% | | |
| | | 2.9056% | | |
| Plato Foufas & Associates | SLP | 72.500% | | |
| Tanglewood Venture | | NONE | 0.875% | SLP |
| Tempe Minnetonka Venture | LP | 0.229% | | |
| | SLP | 1.000% | | |
| | SLP | 0.001% | | |
| | | 1.230% | | |
| Tollgate Associates | LP | 83.000% | | |
| | SLP | 1.000% | | |
| | | 84.000% | | |
| Tollgate Stagedoor LLC | | NONE | NONE | |
| Versailles Venture | ILP | 9.000% | | |
| | LP | 4.286% | | |
| | LP | 5.144% | | |
| | SLP | 0.900% | | |
| | | 19.330% | | |
| Wacker Drive Box | | NONE | 1.790% | SLP |
| Wacker Drive Mansards 'A' | SLP | 91.125% | | |
| Wacker Drive Mansards 'B' | SLP | 66.800% | | |
| Westmore Venture *** | SLP | 0.999% | | |
| Woodfield Plaza Venture Profit % | | NONE | 3.87612% | SLP |
| Woodfield Plaza Venture Loss % | | NONE | 0.872127% | SLP |

SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (1.79%) and all rights attached to such interest as a special limited partner in WACKER DRIVE BOX VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies

(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By: Plato Foufas, transferor

Dated: 1/28/97

************************
APPLICATION TO BECOME
A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission to WACKER DRIVE BOX VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated

BY: _____     ITS: _____

Date: _____

ID#:    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

************************
CONSENT TO ADMISSION AS A
SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in WACKER DRIVE BOX VENTURE L.P., an Illinois limited partnership.

Foufas Properties, Inc. General Partner

Date: _____1/28/97_____

Pres.

## SPECIAL LIMITED PARTNER INTEREST ASSIGNMENT

For value received, the undersigned hereby transfers and assigns the undersigned's entire special limited partnership interest (profit % of 3.87612% and loss % of 0.872127%) and all rights attached to such interest as a special limited partner in WOODFIELD PLAZA VENTURE Limited Partnership to

Nova Corporation, Trustee of the KM Settlement dated

(name of transferee)

Hunkin's Plaza, P.O. Box 556, Main Street, Charlestown, Nevis, West Indies
(address of transferee)

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

(F.E.I.N. or Soc. Sec. # of transferee)

By: Plato Foufas, transferor

Dated: 1/28/97

************************
## APPLICATION TO BECOME
## A SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned hereby accepts the above assignment and applies for admission WOODFIELD PLAZA VENTURE L.P., an Illinois limited partnership (the "Partnership"), and represents that it:

4. Has read the Partnership's limited partnership agreement; and

5. Agrees to be bound by the terms and conditions of the Partnership's limited partnership agreement if it is admitted as a substitute special limited partner.

Nova Corporation, Trustee of the KM Settlement dated

BY: ITS:

Date:

ID#: 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

************************
## CONSENT TO ADMISSION AS A
## SUBSTITUTE SPECIAL LIMITED PARTNER

The undersigned general partner does hereby consent to the assignment for the above partnership interest and the admission of the above party as a substitute special limited partner in WOODFIELD PLAZA VENTURE L.P., an Illinois limited partnership.

Foufas Properties, Inc. General Partner

Date: 1/28/97

Pres.

# EXHIBIT B

Atty No. 26828

## IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:

PLATO FOUFAS,
      Counter-Respondent,

    and

TEDDY FOUFAS,
      Counter-Petitioner.

No. 91 D 4780

Calendar 71

**ENTERED**

OCT 4 1999

JUDGE MOSHE JACOBIUS
Circuit Court-1656

4634

### SUPPLEMENTAL JUDGMENT OF DISSOLUTION OF MARRIAGE

This cause coming on to be heard upon the Counter-Petitioner's Amended Petition for Adjudication of Maintenance and Property Rights, her Petition for Contempt and Petition for Contribution to Attorneys Fees as well as Counter-Respondent's Motion to Reconsider Order of June 27, 1996; this matter having been set before this Court for trial on the issues of property division, maintenance, contempt, reconsideration of earlier order of this Court and contribution to attorneys' fees; the parties marriage having been earlier dissolved by bifurcated Judgment of Dissolution of marriage in the State of Colorado on November 6, 1995 entered *nunc pro tunc* as of October 8, 1995; the Counter-Petitioner having filed during the course of trial of this matter Petition for Finding of Fraudulent Transfer, Piercing the Corporate Veil, Appointment of a Receiver and Expansion of Injunction; TEDDY FOUFAS, the Counter-Petitioner, being represented by Donald C. Schiller and Carlton R. Marcyan of the law firm of Schiller DuCanto and Fleck as her counsel, and the Counter-Respondent, PLATO FOUFAS being represented by

ADMITTED EXHIBIT FF

Robert Keck, of the law firm of Robert Keck and Associates, the Court having heard the evidence adduced by the Counter-Petitioner and Counter-Respondent over numerous days of trial, and having heard arguments of counsel and being fully advised in the premises, DOTH FIND:

1.  That this Court has jurisdiction of the parties to, and the subject matter of, this cause.

2.  That the Counter-Petitioner was a resident of the State of Illinois on a continuous basis at least 90 days prior to the commencement of this action and has continuously maintained that residency through the date of the making of these findings.

3.  At the time this matter was originally filed the parties were legally married, the date of said marriage occurring on September 10, 1965 in the State of Illinois, however, that marriage was dissolved in the State of Colorado on November 6, 1995 entered *nunc pro tunc* as of October 8, 1995 through an *in rem* proceeding with jurisdiction over property distribution, maintenance and attorneys fees reserved to this Court;

4.  That Timothy Foufas and Christopher Foufas, both emancipated, were born to the parties as a result of the marriage and no other children were born to or adopted by the parties. The Counter-Petitioner is not pregnant.

5.  That the Counter-Petitioner, TEDDY FOUFAS is 56 years of age, currently does not have any income and currently resides at 1260 North Astor Street in Chicago, Illinois. Even if TEDDY could work the most she could make is approximately $30,000 per annum which is what she earned as a designer. That the Counter-Respondent, PLATO FOUFAS is 65 years of age, is an accomplished businessman and has the ability to earn immense sums of money and accumulate

2

substantial property in the future given his business acumen and his track record of earning huge sums of money. PLATO'S gross income ranges at no less than $800,000 to $1,000,000 per year.

6. TEDDY FOUFAS suffers from very serious health problems including metastatic ependymoma, lichen planus and melasma. PLATO FOUFAS suffers from chronic asthma and cyst on his right kidney and during the pendency of the proceedings had right hip replacement surgery to alleviate a degenerative hip; however, he is able to continue his business operations unimpeded and his energy has not waned.

7. TEDDY made contributions to the marriage by introducing PLATO to society and business people as well as helping raise the parties' two children. PLATO made substantial financial contributions to the marriage through his businesses.

8. PLATO dissipated $2,161,708 of marital funds as follows:

payments totaling $88,009 for insurance premiums with respect to life insurance trusts for the benefit of Charmaine Brower;

payments of $24,978 in rental expense for Charmaine Brower's apartment in UN Plaza;

payments of $664,981 for his attorneys' and other experts;

payments totaling $306,244 on behalf of Charmaine Brower after the marriage underwent an irretrievable breakdown;

$585,750 withdrawn from his IRA without explanation of the disposition of the funds; and

$491,746 of funds withdrawn from his IRA to pay TEDDY'S maintenance.

3

9,    The marital assets of the parties and the respective values as of the effective date of the dissolution of marriage were as follows:

| ASSET | VALUE |
|---|---|
| Bayshore Management Co. | $402,609 |
| Real Estate Limited Partnerships: Mansards, Versailles, Briarcliffe, Covered Bridges and Forest Cove | $307,642 |
| 1260 Astor Street Chicago Residence | $1,186,098 |
| 575 Park Avenue Manhattan Residence ("Beckman"). During the pendency of this proceeding the parties sold this real estate and $397,000 in proceeds was received and is held in escrow and from which $4,434 was paid out to an attorney, Bruce Levinson, for his legal representation of the parties with respect to this property. TEDDY FOUFAS received an advance distribution of $25,000 from the net proceeds at an earlier date. | $392,566 |
| IRA Lien on Placer Lane Residence in Colorado | $845,000 |
| 3740 Lake Shore Drive Residence in Chicago | $97,502 |
| 1260 Astor Street Personal Property | $175,000 |
| 575 Park Avenue Personal Property | $55,445 |
| Placer Lane Personal Property | $175,374 |
| One IBM Plaza Personal Property | $29,220 |
| Teddy's Private Bank Accounts | $39,808 |
| Teddy's Bank of America Account | $54,507 |
| Teddy's First Bank Account | $3,591 |

4

| | |
|---|---|
| Teddy's Certificate of Deposit | $100,000 |
| Forest Cove Venture Receivables | $86,667 |
| Other Limited Partnerships Receivables | $129,362 |
| PLATO'S Dissipation | $2,161,708 |

10.    The parties stipulate and agree that there remains a balance in the Individual Retirement Account at US Bank National Association with an approximate balance of $2,468 for the benefit of PLATO; an account #3000202341 at Central Federal Savings in the name of PLATO and TEDDY.

11.    As of the effective date of the dissolution of marriage PLATO had marital liabilities of $1,873,596 and TEDDY had marital liabilities of $149,700.

12.    Arrearages owed to TEDDY from PLATO total $513,876 as shown on Exhibit "A" attached hereto and made a part hereof. Said amount is comprised of a $380,000 judgment of June 27, 1996 for arrearages that accumulated prior to April 1, 1995 for maintenance and other expenses and $133,867 for maintenance arrearages from April 1, 1995 through August 31, 1999. In addition there remains a judgment against PLATO in favor of TEDDY dated February 26, 1996 in the amount of $76,613 of which $71,613 was satisfied leaving a remaining judgment from that date of $5,000. Further, there remains a judgment against PLATO in favor of TEDDY dated May 24, 1996 in the amount of $43,325.08 of which $25,290 was satisfied leaving a in judgment from that date of $18,035.08.

IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED:

5

A.    A 50%-50% split of the marital estate is in "just proportions" and the marital estate is to be divided as follows:

To PLATO:

| | |
|---|---|
| Bayshore Management Co. | $402,609 |
| Limited Partnerships (Mansards, Versailles, Briarcliffe, Covered Bridges and Forest Cove) | $307,642 |
| IRA Lien | $845,000 |
| 3740 North Lake Shore Drive | $97,502 |
| Placer Lane Personal Property | $175,374 |
| One IBM Plaza Personal Property | $29,220 |
| Forest Cove Venture Receivables | $86,667 |
| Other Limited Partnerships Receivables | $129,362 |
| PLATO'S Dissipation | $2,161,708 |
| Total Assets | $4,235,084 |
| | |
| Minus Liabilities | $1,873,596 |
| Net After Liabilities | $2,361,888 |
| Minus Cash Payment To TEDDY To Balance Marital Estate | $252,086.50 |
| Net Assets | $2,109,401.50 |

To TEDDY:

| | |
|---|---|
| 1260 Astor Street Chicago, Illinois | $1,186,098 |

6

| | |
|---|---|
| 575 Park Avenue Proceeds (Beekman)  X | $392,556 |
| 1260 Astor Street Personal Property | $175,000 |
| 575 Park Avenue Personal Property | $55,445 |
| TEDDY'S Private Bank Accounts | $39,808 |
| TEDDY'S Bank of America Account | $54,507 |
| TEDDY'S First Bank Account | $3,591 |
| TEDDY'S Certificate of Deposit | $100,000 |
| Total Assets | $2,007,015 |
| | |
| Minus Liabilities | $149,700 |
| Net After Liabilities | $1,857,315 |
| Plus Cash Payment From PLATO To Balance the Marital Estate | $252,086.50 |
| Net Assets | $2,109,401.50 |

B.    The parties stipulate and agree that the Individual Retirement Account in US Bank National Association with an approximate balance of $2,468 for the benefit of PLATO and the account #300020234 1 at Central Federal Savings in the name of PLATO and TEDDY shall be divided in kind equally.

C.    PLATO shall pay to TEDDY the sum of $252,086.50 to balance the marital estate within 30 days of entry of this Supplemental Judgment of Dissolution of Marriage. Any unpaid amount after that time shall be a judgment in that amount against PLATO in favor of TEDDY.

D.    TEDDY shall have all the remaining proceeds of the sale of the Beekman property free and clear of any claim of PLATO. The escrow agent holding those funds is ordered to pay to TEDDY those proceeds forthwith.

E.    PLATO shall give to TEDDY the rug remnants from 1260 Astor from the boys' room and master bedroom, as well as the heavy bronze bull and the two ceramic vases that he removed from the Draw Drive residence. He shall cause to be made photographic quality copies of personal photos that were at Draw Drive. He shall provide all those items to TEDDY within 30 days of entry of this Supplemental Judgment of Dissolution of Marriage. PLATO may keep the wood bear and skis. Additionally, TEDDY shall receive all jewelry and watches in her possession and control and the Pre-Columbian Eagle/Jade Bead necklace as her nonmarital property. Further, TEDDY shall receive the membership at the Saddle and Cycle Club held by PLATO and he shall take all steps and execute all documents to transfer to her a residential membership as to which TEDDY shall be solely responsible to pay all dues accruing from that time forward.

F.    The $124,124 TEDDY received pursuant to the October 1, 1996 Order of the Federal County Judge Wayne Anderson as a distribution of property is reconstituted as payment by PLATO toward his outstanding maintenance obligation to TEDDY and duly credited as reflected on Exhibit "A" attached hereto.

G.    PLATO shall pay as and for maintenance to TEDDY the sum of $22,000 per month commencing September 1, 1999 subject to 750 ILCS 5/510. Said maintenance shall not be deductible by PLATO for federal and state income tax purposes and shall not be includable as taxable income by TEDDY for federal and state income tax purposes. Said amount shall be due on the first of each month. PLATO is forever barred from seeking maintenance from TEDDY.

8

H.    PLATO shall be responsible for any and all reasonable and necessary medical and dental need of TEDDY not covered by insurance. TEDDY shall submit any claims directly to PLATO that are not covered by insurance and he shall make payment on these submissions within 30 days of receipt. For purposes of this paragraph the term reasonable shall include private rooms and private nursing care. TEDDY shall use her best efforts to maintain her current health insurance coverage or obtain other reasonably comparable health insurance coverage.

I.    So long as PLATO has a maintenance obligation to TEDDY he shall provide to TEDDY true and correct and complete copies of his personal income tax returns as well as tax returns, including all schedules appended thereto for all of the business in which PLATO has a financial interest including, but not limited to, Plato Foufas and Co., Bayshore Management Company, Plato Foufas Investments, Inc., Foufas Properties, Inc., Covered Bridges, Mansards, Briarcliffe, Versailles, Forest Cove as well as all of his other limited partnership interests.

J.    With regard to PLATO'S Motion to Reconsider this Court's Memorandum Opinion and Order of May 15, 1996 and Order of June 27, 1996, said orders are hereby modified to the extent that the monthly maintenance obligation is reduced to $15,000 for the period April 1995 to August 31, 1999. For the period commencing April 1995 PLATO'S obligation to pay direct expenses for the residences shall be vacated; however, PLATO shall pay TEDDY the sum of $26,135.45 to reimburse her for her medical expenses. Judgment is entered in favor of TEDDY against PLATO in that amount. In all other respects, the Motion to Reconsider is denied. PLATO owes to TEDDY an arrearage of $513,876 for unpaid maintenance and other obligations of which there is a $380,000 judgment of June 27, 1996 that survives and remains outstanding and in full force and effect for arrearages that accumulated prior to April 1, 1995. As to the additional $133,867 for maintenance arrearages from April 1, 1995 through August 31, 1999, judgment is

entered in favor of TEDDY against PLATO for that amount. In addition there remains a judgment which survives and is outstanding and in full force and effect against PLATO in favor of TEDDY dated February 26, 1996 in the amount of $76,613 of which $71,613 was satisfied leaving a remaining judgment from that date of $5,000. Further, there remains a judgment which survives and is outstanding and in full force and effect against PLATO in favor of TEDDY dated May 24, 1996 in the amount of $43,325.08 of which $25,290 was satisfied leaving a remaining judgment from that date of $18,035.08.

K.    PLATO shall pay to TEDDY the sum of $9,200 as an additional amount owed to her with respect to the reimbursement owed to her for the rental in the summer of 1994 of a residence in Aspen. Accordingly, judgment is entered in favor of TEDDY against PLATO for that amount.

L.    The Order of February 23, 1996 is vacated and held for naught with regard to the sanction of $50 per day imposed upon PLATO for failure to return paintings he removed from the Beekman residence as these are his nonmarital property painted by him prior to the marriage.

M.    No Rule shall enter against PLATO for removal of $585,750 from an IRA in contravention of the July 12, 1991 injunctive order of this Court because this Court has considered the removal of those sums dissipation and factored them into the marital estate.

N.    PLATO is held in indirect civil contempt of this Court for his failure to pay maintenance obligations to TEDDY; the Court earlier issued its Rule to Show Cause as to this. Said contempt may be purged by PLATO fully complying with all of this Court's Orders set forth in this Supplemental Judgment of Dissolution of Marriage.

10.

O.      PLATO'S arguments that 750 ILCS 5/503(j) is unconstitutional are unpersuasive and denies his motion. Pursuant to 750 ILCS 5/503(j) PLATO is ordered to pay to the firm of Schiller, DuCanto and Fleck the sum of $700,000 in addition to any previous payments as and for his contribution to TEDDY'S attorneys' fees. Further, PLATO is ordered to pay Coopers & Lybrand the sum of $50,000 as his contribution to TEDDY'S obligation to Coopers & Lybrand. Accordingly, judgment is entered in favor of Schiller, DuCanto and Fleck against PLATO in the amount of $700,000. Further, judgment is entered in favor of Coopers & Lybrand and its successors against PLATO in the amount of $50,000.

P.      The entity known as PLATO FOUFAS & CO. is one in the same as PLATO FOUFAS and this Court has the authority and jurisdiction to pierce the corporate veil and accordingly does so.

Q.      The creation of the Grantor Trust on or about May 23, 1996 constituted a fraudulent conveyance in law in accordance with the provisions of the Uniform Fraudulent Transfer Act. The issues of appointment of a receiver is reserved to afford PLATO an opportunity to comply with the provisions of the Supplemental Judgment of Dissolution of Marriage.

R.      Each of the parties is hereby ordered to make, execute, acknowledge and deliver, good and sufficient instruments necessary or proper to vest the titles and estates in the respective parties hereto, and from time to time, to make, execute, acknowledge and deliver any and all documents which may be necessary or proper to carry out the purposes of this Supplemental Judgment of Dissolution of Marriage and to establish of record the sole and separate ownership of the several properties of said parties in the manner herein provided.

11

S.    The findings set forth in the Memorandum Opinion and Order entered by this Court on July 13, 1999 and May 15, 1996 are incorporated herein by reference and shall stand as additional findings of this Supplemental Judgment of Dissolution of Marriage. Any specific findings in this Supplemental Judgment of Dissolution of Marriage shall control over those findings in the Memorandum Opinion and Order.

T.    The findings as hereinabove set forth in full are made a part of this Supplemental Judgment of Dissolution of Marriage; and all of the provisions are expressly ratified, confirmed, approved and adopted as the orders of this Court, to the same extent and with the same force and effect as if said provisions were in this paragraph set forth verbatim as the judgment of this Court; each of the parties hereto shall perform under the terms of said agreement.

U.    That the Court shall and it does reserve jurisdiction of the subject matter of this cause, and of the parties hereto for the purpose of enforcing the terms of this Supplemental Judgment of Dissolution of Marriage.

V.    PLATO'S Motion for Clarification filed prior to the entry of this Supplemental Judgment of Dissolution of Marriage shall stand as his Motion to Reconsider and therefore this Judgment stayed to the extent provided for by the law. TEDDY has leave to file her Motion to Reconsider and PLATO has leave to amend his Motion to Reconsider within 30 days or such extended time as this Court may grant upon proper notice and motion. The stay shall not apply to paragraphs "D" or "G" above.

ENTER:

_____
JUDGE

Schiller, DuCanto and Fleck
Attorneys for TEDDY FOUPAS
200 North LaSalle Street, Suite 2700
Chicago, Illinois 60601-1089    Attorney Number 26828

12

ARREARAGES TO TEDDY

| TIME PERIOD | AMOUNT | PAID | BALANCE | |
|---|---|---|---|---|
| pre April 1995 per 6/27/96 o. for 1195 | $300,000 | | $300,000 | |
| | | | | |
| April | $15,000 | $25,000 | ($10,000) | |
| May | $15,000 | $25,000 | ($10,000) | |
| June | $15,000 | $25,000 | ($10,000) | $25K per 7/8/96 judgt ord pd by 9/26/95 turn ord |
| July | $15,000 | $25,000 | ($10,000) | |
| August | $15,000 | $25,000 | ($10,000) | $50K (7&9/95) per 8/26/95 judge. ord pd by 9/26/95 turn |
| September | $15,000 | $10,000 | $5,000 | $10K pd per 2/26/96 judgment order pd by 3/11/96 ord |
| October | $15,000 | $10,000 | $5,000 | $10K pd per 2/20/96 judgment order pd by 3/11/96 ord |
| November | $15,000 | $10,000 | $5,000 | $10K pd per 2/26/96 judgment order pd by 3/11/96 ord |
| December | $15,000 | $10,000 | $5,000 | $10K pd per 2/26/96 judgment order pd by 3/11/96 ord |
| 1996 | | | | |
| January | $15,000 | $10,000 | $5,000 | $10K pd per 2/26/96 judgment order pd by 3/11/96 ord |
| February | $15,000 | $10,000 | $5,000 | $10K pd per 2/26/96 judgment order pd by 3/11/96 ord |
| March | $15,000 | $0 | $15,000 | |
| April | $15,000 | $0 | $15,000 | |
| May | $15,000 | $0 | $15,000 | |
| June | $15,000 | $0 | $15,000 | |
| July | $15,000 | $0 | $15,000 | |
| August | $15,000 | $0 | $15,000 | |
| September | $15,000 | $0 | $15,000 | |
| October | $15,000 | $0 | $15,000 | |
| November | $15,000 | $0 | $15,000 | |
| December | $15,000 | $0 | $15,000 | |
| 197 | | | | |
| January | $15,000 | $0 | $15,000 | |
| February | $15,000 | $0 | $15,000 | |
| March | $15,000 | $0 | $15,000 | |
| April | $15,000 | $0 | $15,000 | |
| May | $15,000 | $0 | $15,000 | |
| June | $15,000 | $0 | $15,000 | |
| July | $15,000 | $10,000 | $5,000 | $10K per order of 7/10/97 for 6 &7/97 |
| August | $15,000 | $14,000 | $1,000 | per order of 7/10/97, $2k extra for 7/97 |
| September | $15,000 | $12,000 | $3,000 | |
| October | $15,000 | $12,000 | $3,000 | |
| November | $15,000 | $12,000 | $3,000 | |
| December | $15,000 | $12,000 | $3,000 | |
| 1998 | | | | |
| January | $15,000 | $12,000 | $3,000 | |
| February | $15,000 | $12,000 | $3,000 | |
| March | $15,000 | $12,000 | $3,000 | |
| April | $15,000 | $12,000 | $3,000 | |
| May | $15,000 | $12,000 | $3,000 | |
| June | $15,000 | $12,000 | $3,000 | |

EXHIBIT "A"

ARREARAGES TO TEDDY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| July | $15,000 | $12,000 | $3,000 | | | | |
| August | $15,000 | $12,000 | $3,000 | | | | |
| September | $15,000 | $12,000 | $3,000 | | | | |
| October | $15,000 | $12,000 | $3,000 | | | | |
| November | $15,000 | $12,000 | $3,000 | | | | |
| December | $15,000 | $12,000 | $3,000 | | | | |
| 1999 | | | | | | | |
| January | $15,000 | $12,000 | $3,000 | | | | |
| February | $15,000 | $12,000 | $3,000 | | | | |
| March | $15,000 | $12,000 | $3,000 | | | | |
| April | $15,000 | $12,000 | $3,000 | | | | |
| May | $15,000 | $12,000 | $3,000 | | | | |
| June | $15,000 | $12,000 | $3,000 | | | | |
| July | $15,000 | $12,000 | $3,000 | | | | |
| August | $15,000 | $12,000 | $3,000 | | | | |
| | $1,176,000 | $497,000 | $678,000 | | | | |
| | | | ($26,000) | less turnover per May 23, 1987 order | | | |
| | | | ($10,000) | less May 4, 1999 Order advance | | | |
| | | | ($5,000) | less June 21, 1999 Order advance | | | |
| | | | ($124,124) | less IRA turnover per federal order 10/1/06 | | | |
| | | | $513,876 | arrearage owed | | | |

Exhibit "A"

# EXHIBIT C

Attorney I.D. No. 46484

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                        )
                                              )
PLATO FOUFAS,                                 )
                                              )
    Petitioner and Counter-Respondent,    )        No. 1991 D 004780
                                              )
           vs.                            )
                                              )
TEDDY FOUFAS,                                 )
                                              )
    Respondent and Counter-Petitioner.    )

## AGREED ADMISSION OF EXHIBITS & STIPULATIONS AS TO FACTS REGARDING PETITION FOR ADJUDICATION OF INDIRECT CIVIL CONTEMPT FILED MARCH 22, 2016

The Respondent/Counter-Petitioner, TEDDY FOUFAS ("Teddy"), individually and by her counsel, Carlton R. Marcyan of SCHILLER DU CANTO & FLECK LLP, and the Petitioner/Counter-Respondent, PLATO FOUFAS ("Plato"), individually and by his counsel, Louis D. Bernstein and Jay D. Stein of Bernstein Law Firm LLC, hereby make stipulations regarding the facts, background, history and exhibits relating to Teddy's Petition for Adjudication of Indirect Civil Contempt Filed March 22, 2016.

### RESERVATION OF RIGHTS

The agreed admission of exhibits and stipulation of facts set forth herein by the parties are for the purpose of the pending trial on Teddy's Petition for Adjudication of Indirect Civil Contempt proceeding and trial in this cause presently set to commence on July 18, 2019. By agreeing to this stipulation of facts, neither party is acknowledging that all of the stipulated facts are relevant to the issues before the court.

3771580_1.docx

Both parties expressly state that they have freely and voluntarily entered into these agreements of their own volition, free from any duress or coercion and with full knowledge of each and every provision contained herein.

The parties reserve the right to offer further evidence to the court. The parties shall be able to present additional written stipulations to the Court as they may so agree.

<u>ADMITTED EXHIBITS</u>

The parties hereby agree to the admissibility of the following documents which are attached hereto and incorporated herein as **Admitted Exhibits A through ZZ**. Admission in no way bars either party from arguments concerning an exhibit's content except as to admission into evidence. An exhibit list outlining the same is attached as **Appendix I**.

<u>STIPULATIONS OF FACT</u>

1.     Plato Foufas ("Plato") is 86 years old.

2.     Plato is a resident of Wellington, Florida.

3.     Theodora Foufas ("Teddy") is 76 years old.

4.     Teddy is a resident of Chicago, Illinois.

5.     The marriage of the parties was 30 years.  They were married on September 10, 1965 and their marriage was dissolved on October 8, 1995.

6.     The parties have two children, Christopher and Timothy, both of whom are emancipated adults.

7.     Plato is not currently employed.  He is a licensed attorney and was a businessman.  He worked in the real estate industry as well as gaming and hospitality.

8.     Teddy is not employed.

2

9.      Plato owes the following debts to the IRS and state revenue services for various tax years as listed below (true and correct copies of Plato's Federal tax returns and related tax forms are included herein as **Admitted Exhibits H through U** as listed on Admitted Exhibit List; Notices from the Department of Treasury or other State services regarding the arrearages below are included herein as **Admitted Exhibits V through Z**):

    a.      Federal IRS 2016 - $4,797,711.61 (**Admitted Exhibit V**)

    b.      Federal IRS 2014 and 2015 - $901,806.42 (**Admitted Exhibit W**)

    c.      Federal IRS 2011 and 2012 - $940,718 (**Admitted Exhibit X**)

    d.      Illinois Department of Revenue - 2015 and 2016 - $164,762.60 (**Admitted Exhibit Y**)

    e.      Indiana Department of Revenue 2016 - $571,980.50   (**Admitted Exhibit Z**)

10.     There is presently an IRS tax lien on Plato's Florida residence located at 11932 Longwood Green Drive, Wellington, Florida, in the amount of $4,628,284.13 relating to the 2016 tax year.  Notice of the tax lien on the Wellington, Florida property is attached hereto as **Admitted Exhibit AA**.  Plato's ownership interest in the Florida residence is a tenancy in the entirety with his wife, Charmaine.

11.     On October 15, 2014, Plato sent a letter to R. Wallace of the Internal Revenue Service.  A genuine copy of the letter is **Admitted Exhibit RR**.

12.     On May 15, 2018, Plato sent an Offer in Compromise to the Internal Revenue service proposing a resolution of his federal tax debt.  A genuine copy is **Admitted Exhibit BB**.

3

13.    By letter dated June 6, 2019, the Internal Revenue Service tentatively rejected Plato's proposed Offer in Compromise. **Admitted Exhibit SS**.

14.    In response to the letter of June 6, 2019 from the Internal Revenue Service and at the request of IRS in a phone call Plato had with the Internal Revenue Service, Plato obtained and forwarded to the Internal Revenue service a letter from the lawyer for KM Settlement dated June 27, 2019. **Admitted Exhibit TT**.

15.    In 1996, Plato, as settlor, created a trust known as K.M. Settlement. The original trust agreement ("Original Trust Agreement") is attached as **Admitted Exhibit A.**

16.    When Plato, as settlor, created the KM Settlement, he placed nearly all his investments and business holdings in it.  They are set out in the Original Trust Agreement (**Admitted Exhibit A**).

17.    Pursuant to its terms, the Original Trust Agreement was amended several times and its current version is the Fifth Amendment and Restatement of The KM Settlement, dated June 10, 2010 ("Current Trust Agreement"), a genuine copy of which is **Admitted Exhibit B**.

18.    Plato was the settlor and a beneficiary under the Original Trust Agreement.

19.    Plato is the settlor and a beneficiary under the Current Trust Agreement. The other beneficiaries of the Current Trust include his present wife, Charmaine Foufas, and his son Timothy Foufas. Orion Corporate & Trust Services Ltd., a corporation registered in the country of Belize, is the trustee of the Current Trust. Plato's document attached as **Admitted Exhibit C** states that Guardian Fiduciary Management Ltd. registered in the Bahamas, was appointed by Plato as the "Initial Protector" of the

4

Second Amendment & Restatement of the KM Settlement Trust on October 3, 2003. Plato is listed in the RECITALS section of the Current Trust Agreement as the Protector of the KM Settlement as of October 3, 2003. Plato asserts that this is a scrivener's error, and that he never was the Protector.

20.     Plato, as Settlor of "KM Settlement known as THE SECOND AMENDMENT & RESTATEMENT OF THE KM SETTLEMENT TRUST, dated October 3, 2003", wrote a letter dated October 3, 2003 to the then trustee, Cititrust International, Inc. of KM Settlement trust in which he appointed Guardian Fiduciary Management Ltd. as the "Initial Protector of said Trust Settlement." A genuine copy of the letter is **Admitted Exhibit C**.

21.     The Trustee under the Original Trust Agreement was Nova Corporation of Nevis, West Indies. The Trustee under the Current Trust Agreement is Orion Corporate & Trust Services Ltd. of Belize City, Belize.

22.     On July 13, 1999, this Court entered a Memorandum Opinion stating that the creation of the Original Trust was a fraudulent conveyance under the Uniform Fraudulent Transfer Act. A true and correct copy of the July 13, 1999 Memorandum Opinion and Order, and Supplemental Opinion and Order are attached as **Admitted Exhibits D and E**. Plato and Teddy were aware of both of these written opinions and their terms.

23.     This Court entered its Supplemental Judgement for Dissolution of Marriage on October 4, 1999. A copy of the Supplemental Judgment for Dissolution of Marriage is attached hereto as **Admitted Exhibit FF**. This Judgment reaffirmed the maintenance obligation in which Plato was to pay Teddy $22,000 per month non-

5

taxable and non-deductible. Both Plato and Teddy were aware of the terms of this Supplemental Judgment for Dissolution of Marriage.

24.    Plato has not made all the court ordered maintenance payments to Teddy since the beginning of January of 2006. Since that time, he made payments in the amount of $241,000, with his last payment of $7,000 made in January 2009. As of May 1, 2019, this results in a total arrearage of $3,286,000 plus statutory interest of $1,850,976.78 for a total as of May 1, 2019 of $5,136,976.78 as set forth in **Admitted Exhibit ZZ.**

25.    On February 22, 2006, Teddy filed her Third Petition for Rule to Show Cause ("Third Petition"), alleging that Plato was not complying with his maintenance obligation. A genuine copy of her Third Petition is attached as **Admitted Exhibit II.**

26.    Plato filed a Verified Response to the Third Petition, along with a three - volume set of exhibits which he asserted detailed his financial circumstances at the time and demonstrated his inability to comply with the maintenance order. A genuine copy of his Verified Response is attached along with the three-volume set of exhibits as **Admitted Exhibit JJ.**

27.    No hearing was ever held on the Third Petition and, accordingly, the Third Petition was never adjudicated by the court.

28.    Court Orders, which are attached as **Admitted Exhibit KK**, were entered by the court with respect to the Third Petition. The orders were entered from March 27, 2006 through the last order, entered by Judge Jacobius on June 20, 2009, which provides that the Third Petition is taken "off calendar" without prejudice.

29.    Plato's Financial Affidavit is **Admitted Exhibit F.**

6

30.     For many years, up until about April, 2018, the trustee of KM Settlement paid Plato's living expenses as set forth on his Financial Affidavit. The process whereby the expenses were paid was that Plato would communicate his expenses to his lawyer, Dennis Kleinfeld, and Mr. Kleinfeld communicated those expenses to the trustee, who then paid the expenses.

31.     The trustee of KM Settlement retained counsel and filed a Notice of Claim on behalf of the trust in the court liquidation proceedings of Choice Bank in Belize. The letter regarding the KM Settlement Trust's engagement of legal services for this purpose is attached as **Admitted Exhibit EE.** On February 28, 2019, Choice Bank sent a "Notice by Liquidator on Evaluation of Your Claim" to the Trustee of the Current Trust identifying that the liquidator allowed a claim of $3,236,812.89. A copy of this Notice by Liquidator is attached hereto as **Admitted Exhibit CC.** A schedule of actions identified by the liquidator of the Choice Bank claims is attached hereto as **Admitted Exhibit DD.** Recently the Liquidator issued formal notice that depositors, prepaid cardholders and card partners with balances in excess of US$2,500 can expect to receive approximately 53% of the claimed amount allowed.

32.     Since the failure of Choice Bank, the trustee of KM Settlement has borrowed money in three separate loan transactions:

      a.     A loan from the PF Trust in the amount of approximately $270,000. The PF Trust is a life insurance trust created by Plato as grantor to hold a policy of insurance on his life; Plato is neither a trustee nor beneficiary of the PF Trust.

      b.     A loan of $20,000 from the corporate trustee (Orion) of KM Settlement.

7

    c.      A loan of $65,000 arranged by attorney Dennis Kleinfeld from an Individual Retirement Account.

33.    In August of 2017, Plato traveled to Belize to meet with Brian Escalante, an employee of the Trustee of the Current Trust.  Plato asked the Trustee what its intended actions were regarding the tax liabilities and the maintenance judgment for Teddy.

34.    In 2019, a real estate asset called Forest Cove Venture LP, in which KM Settlement Trust had an ownership interest, was liquidated.  Cash in the approximate amount of $1.1 million was received by KM Settlement.  The loans to KM Settlement set forth above in paragraph 32 were repaid from these proceeds.

35.    If called to testify, Plato would testify that the assets currently owned by KM Settlement are:

    a.      Its claim in the Choice Bank of Belize liquidation.

    b.      Remaining cash to be distributed from the Forest Cove project in the amount of approximately $600,000, which is anticipated to be the amount of the income tax liability owed by Plato as grantor as a result of the liquidation.

    c.      A house in Woody Creek, Colorado, which Plato uses.  The house itself was appraised in 2018 at a fair market value of $3.3 million; the mortgage associated with this property is approximately $1.9 million.

    d.      An interest in Sixth & Gest Properties, LLC, a project in Cincinnati, Ohio.  The project is in the process of developing a self-storage unit facility and is estimated to be valued at $1,800,000 based on the amount of investment.

36.     The residence at 11932 Longwood Green Drive in Wellington, Florida is titled in the name of Plato and his wife Charmaine as tenants by the entireties.   The mortgage and the home equity loan are in the name of Plato alone.   **See Admitted Group Exhibits LL and MM**.   The mortgage loan payments and the home equity loan payments have been paid by KM Settlement.   The residence is currently subject to the IRS lien placed on Plato's assets as a result of the unpaid taxes due to the IRS.

37.     For many years, Plato has maintained memberships as a non-resident member at the Union League Club of Chicago and Saddle & Cycle Club of Chicago. Copies of some invoices are **Admitted Group Exhibits NN and OO**.   Many of the invoices have been paid by KM Settlement.


**AGREED TO AND STIPULATED BY**:


Teddy Foufas or her counsel

Date: 7/8/2019

SCHILLER DUCANTO & FLECK LLP
Attorney No. 26826
Attorneys for Teddy Foufas
100 North Field Drive, Suite 160
Lake Forest, IL 60045
(847) 615-8300

Plato Foufas or his counsel

Date: 7/8/2019

BERNSTEIN LAW FIRM, LLC
Attorney No. 46484
Attorneys for Plato Foufas
350 N. Clark Street, Suite 400
Chicago IL 60654
(312) 645-6090

3771580_1.docx

Atty No. 26828

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

|  |  |
|---|---|
| IN RE FORMER MARRIAGE OF: | |
| PLATO FOUFAS, | |
| Petitioner, | |
| And | No. 91 D 4780 |
| THEODORA ("TEDDY") FOUFAS, | |
| Respondent. | |

## APPENDIX I

### ADMITTED EXHIBIT LIST
### TEDDY'S PETITION FOR ADJUDICATION OF INDIRECT CIVIL CONTEMPT

| Exhibit No. | Description |
|---|---|
| A | Initial KM Settlement Trust Agreement 1996 |
| B | Fifth Amendment and Restatement to the KM Settlement Trust Agreement 2010 |
| C | Appointment of Protector October 3, 2003 |
| D | Memorandum Opinion and Order by Judge Jacobious July 13, 1999 |
| E | Supplemental Memorandum Opinion and Order by Judge Jacobious July 13, 1999 |
| F | Financial Affidavit of Plato Foufas November 8, 2018 |
| G | None |
| H | Plato Foufas Federal Tax Return 2006 |
| I | Plato Foufas Federal Tax Return 2007 |
| J | Plato Foufas Federal Tax Return 2008 |
| K | Plato Foufas Federal Tax Return 2009 |
| L | Plato Foufas Federal Tax Return 2010 |

10

3771580_1.docx

| Exhibit No. | Description |
|---|---|
| M | Plato Foufas Federal Tax Return 2011 |
| N | Plato Foufas Federal Tax Return 2012 |
| O | Plato Foufas Federal Tax Return 2013 |
| P | Plato Foufas Federal Tax Return 2014 |
| Q | Plato Foufas Federal Tax Return 2016 |
| R | Plato Foufas Federal Form W-2 Wage and Tax Statement 2016 |
| S | Plato Foufas Federal Tax Return 2017 |
| T | Plato Foufas Federal Form SSA-1099 Social Security Benefit Statement 2017 |
| U | Plato Foufas Federal Form W-2 Wage and Tax Statement 2017 |
| V | Notice dated March 19, 2018, from IRS to Plato Foufas regarding tax owed for 2016 tax year |
| W | Notice dated March 19, 2018, from IRS to Plato Foufas regarding tax owed for 2014 and 2015 tax years |
| X | Notice dated March 19, 2018, from IRS to Plato Foufas regarding tax owed for 2011 and 2012 tax years |
| Y | Notice dated February 27, 2018 from Linebarger Goggan Blair & Sampson, LLP to Plato Foufas regarding tax owed to the State of Illinois for the 2015 and 2016 tax years |
| Z | Notice dated April 10, 2018 from the Indiana Department of Revenue to Plato Foufas regarding tax owed for the 2016 tax year |
| AA | Notice of Federal Tax Lien regarding property located at 11932 Longwood Green Drive, Wellington Florida dated March 7, 2018 |
| BB | Offer of Compromise made by Plato Foufas to the IRS dated May 15, 2018 |
| CC | Notice by Liquidator on Evaluation of your Claim sent to KM Settlement Trust dated February 28, 2019 |
| DD | Schedule of Actions Proposed for Winding-Up of Choice Bank as of February 18, 2019 |
| EE | Letter dated April 27, 2018 regarding KM Settlement Trust engaging services of Glenn D. Godfrey & Company, LLP regarding Choice Bank claim |
| FF | Supplemental Judgment of Dissolution of Marriage entered October 4, 1999 |
| GG | Teddy Foufas' Verified Petition for Rule to Show Cause against Plato Foufas filed 2004 |
| HH | Teddy Foufas' Verified Petition for Rule to Show Cause against Plato Foufas filed 2005 |

11

| Exhibit No. | Description |
|---|---|
| II | Teddy Foufas' Third Verified Petition for Rule to Show Cause against Plato Foufas filed February 2006 |
| JJ | Plato Foufas' Verified Response to Rule to Show Cause and Motion to Reconsider filed March 2006 – PROVIDED IN SECOND PRODUCTION OF ADMITTED EXHIBITS |
| Group KK | Group Exhibit including Court Orders regarding 2006 Petition for Rule to Show Cause Litigation |
| LL | Chase Bank loan modification agreement dated September 20, 2010 regarding mortgage on property located at 11932 Longwood Green Drive, Wellington, Florida 33414 |
| MM | Home equity line of credit statement for period of September 3, 2016 through October 2, 2016 regarding property located at 11932 Longwood Green Drive, Wellington, Florida 33414 |
| NN | Billing statements from Union League Club of Chicago in the name of Plato Foufas for period of January 1, 2016 through June 30, 2018 |
| OO | Billing statements Saddle & Cycle Club in Chicago, Illinois in the name of Plato Foufas for period of January 31, 2016 through June 30 , 2018 |
| PP | None |
| QQ | None |
| RR | Letter to R. Wallace of IRS dated October 15, 2014 |
| SS | Letter to Plato Foufas from IRS dated June 6, 2019 |
| TT | Letter from Carl. H. Linder, attorney for KM Settlement Trust to Plato Foufas dated June 27, 2019 |
| UU | None |
| VV | None |
| WW | None |
| XX | None |
| YY | None |
| ZZ | Scheduled of Plato Foufas' maintenance arrearage as owed to Teddy Foufas as of May 1, 2019 inclusive of statutory interest |

SCHILLER DuCANTO & FLECK LLP
Attorney No. 26826
Attorneys for Teddy Foufas
100 North Field Drive, Suite 160
Lake Forest, Illinois 60045
Telephone No. (847) 615-8300

BERNSTEIN LAW FIRM, LLC
Attorney No. 46484
Attorneys for Plato Foufas
350 North Clark Street, Suite 400
Chicago, Illinois 60654
Telephone No. (312) 645-6090

3771580_1.docx

# EXHIBIT D

2020 IL App (1st) 192107-U

FIFTH DIVISION
Order filed: June 5, 2020

No. 1-19-2107

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the |
| | ) Circuit Court of |
| PLATO FOUFAS, | ) Cook County. |
| | ) |
|     Petitioner/Counter-Respondent-Appellant, | ) |
| | ) No. 91 D 4780 |
| and | ) |
| | ) |
| THEODORA ("TEDDY") FOUFAS, | ) Honorable |
| | ) Lori Rosen, |
|     Respondent/Counter-Petitioner-Appellee. | ) Judge, presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's finding that husband was in indirect civil contempt for failing to pay maintenance to his ex-wife was not against the manifest weight of the evidence where the evidence showed husband had sufficient assets to pay the obligation but had voluntarily transferred them to a spendthrift trust with himself as the beneficiary. *Laches* did not bar the claim where husband did not show that he was prejudiced by his ex-wife's failure to petition for an adjudication of civil contempt earlier.

**EXHIBIT
T-26**

T000657

No. 1-19-2107

¶ 2    Plato Foufas (Plato) appeals from orders of the circuit court finding him in indirect civil contempt of court for refusing to pay maintenance to his former wife, Theodora Foufas (Teddy), and ordering him incarcerated until he purges the contempt by paying Teddy $5,183,621.78. For the reasons which follow, we affirm

¶ 3    The operative facts in this case are generally undisputed. The following statement of facts was gleaned from the common law record, the hearing on Teddy's petition for adjudication of contempt, and the exhibits presented during that hearing.

¶ 4    The parties were married in 1965. In a bifurcated proceeding, the marriage of the parties was dissolved on November 6, 1995, leaving the issues of property division and maintenance to be resolved at a later date. On May 23, 1996, while the property division portion of the dissolution proceeding was still pending, Plato, as settlor and grantor, caused the creation of the KM Settlement trust (KM trust) and transferred substantially all of his business holdings into the trust, including 98% of Plato Foufas and Company, Foufas Properties, Inc., Foufas Properties Forest Cove, Inc., and various interests in limited partnerships. Included in the trust document is a spendthrift provision. The original and present beneficiaries of the KM trust are Plato, his current wife Charmaine, and his son, Timothy. The current trustee is Orion Corporate and Trust Services, LTD, a corporation domiciled in Belize and which is a separate entity from any of Plato's companies. Guarantee Fiduciary Management LTD, a corporation domiciled in the Bahamas, is the protector of the trust. No portion of the principal of the KM trust has ever been distributed. The trust has been amended five times since 1996.

¶ 5    On October 4, 1999, a Supplemental Judgment was entered in the underlying dissolution proceeding, awarding Teddy monthly maintenance in the amount of $22,000. That Supplemental

T000658

No. 1-19-2107

Judgment also provided that the KM trust, referred to therein as the Grantor Trust, created by Plato "constituted a fraudulent conveyance in law in accordance with the provisions of the Uniform Fraudulent Transfer Act."

¶ 6    On November 12, 2003, Plato filed a petition seeking a modification of his maintenance obligation to Teddy. The circuit court denied the petition and, on December 14, 2004, denied Plato's motion for reconsideration. Subsequently, Teddy filed three petitions for rules to show cause against Plato, and the parties engaged in settlement negotiations until June 29, 2009, when the matters were taken off the call by the court.

¶ 7    In July 2009, Plato and Charmaine transferred and assigned all of their personal property to the KM trust.

¶ 8    On March 18, 2016, Teddy filed a petition seeking to have Plato found in indirect civil contempt of court for having failed to pay maintenance since January 1, 2006. Following a hearing on June 4, 2018, the circuit court found that Teddy had established a *prima facie* case of indirect civil contempt and issued a rule against Plato to show cause why he should not be held in contempt of court for failing to pay court ordered maintenance from January 1, 2006, through February 29, 2016.

¶ 9    Prior to the hearing on the rule to show cause, the parties jointly prepared agreed admissions, exhibits and stipulations. The hearing on the rule to show cause commenced on July 18, 2019. Plato was the only witness to testify. Plato had submitted a financial affidavit and an addendum that indicated he and Charmaine had monthly living expense totaling $32,626. He testified that all of his expenses were paid by the KM trust, including the mortgage, home equity loan, real estate taxes, utilities, home owners' association fees, and insurance premiums on his

- 3 -

T000659

No. 1-19-2107

home in Florida which he owns with Charmaine as tenants by the entirety. It was also established that the KM trust owns a house in Woody Creek, Colorado, which Plato uses from time to time and that the KM trust pays all of the expenses on the Colorado property, including the mortgage and utilities. Plato testified that Plato Foufas and Company, which is owned by the KM trust, rents an apartment at 1360 Lake Shore Drive in Chicago which he uses as an office and as a residence. He stated that he is the only one who uses the apartment.

¶ 10     Evidence established that the KM trust received approximately 8 million dollars in November 2016 from the sale of the Mansards Apartment Complex (Mansards) in Indiana. Plato's federal tax return for 2016, the year of the Mansards sale, shows an adjusted gross income of $16,398,419, $8,558,935 of which was from sources other than the sale of the Mansards. For the year 2016, Plato had a federal tax liability of $4,247,106.

¶ 11     Plato admitted that $342,000 was withdrawn from the KM trust on January 9, 2018 but testified he did not know what expenses were paid with those funds. On January 22, 2018, $55,552.07 was withdrawn from the KM trust; on February 22, 2018, $150,000 was withdrawn; and on March 28, 2018, an additional $175,000 was withdrawn. In total, $722,552.07 was distributed by the KM trust during the period from January 9, 2018 to March 28, 2018. When asked what the money was used for, Plato stated: "I don't know – I don't remember." Neither Charmaine nor Timothy has ever made a request for a distribution from the KM trust. In contrast, there is no record that a request for an income distribution by Plato has ever been denied. According to Plato, he is the only one who has ever made a request for payments from the KM trust.

¶ 12     The parties stipulated that Plato owes the Internal Revenue Service (IRS) $6,640,235.

T000660

No. 1-19-2107

¶ 13    On August 1, 2019, the circuit court issued its order, finding Plato in indirect civil contempt of court for willful failure to pay maintenance to Teddy, and ordering him committed to the Cook County Jail until he purges himself of contempt by paying $3,564,000 for past due maintenance plus statutory interest of $1,875,621.78, for a total amount due Teddy of $5,183,621.78. In support of its finding of contempt, the circuit court stated that: Plato failed to show an inability to pay the past due maintenance; the KM trust is the source of the funds paying all of Plato's expenses; Plato controls the KM trust; and, until at least June 27, 2019, Plato possessed the ability to amend the terms of the KM trust and/or make decisions regarding payments and distributions. The circuit court stayed its commitment order until November 1, 2019, to allow Plato time to post a $250,000 bond. No bond was ever posted.

¶ 14    On August 23, 2019, Plato filed a motion for rehearing, arguing that the circuit court failed to consider both the $6,640,235 he owed for federal taxes and the resulting tax lien filed by the IRS on all of his assets and the impact of that tax lien on his ability to comply with his obligation to pay the court ordered maintenance. On September 26, 2019, the circuit court denied Plato's motion for rehearing. The circuit court found Plato not to be a credible witness; stating, "I didn't believe most of what he has testified to." The circuit court concluded that Plato has the ability to pay the sums due Teddy. This appeal followed.

¶ 15    On November 15, 2019, this court entered an order staying enforcement of the incarceration portion of the circuit court's August 1, 2019 order pending final resolution of this appeal and the filing of this court's mandate in the circuit court.

¶ 16    In his brief before this court, Plato states that he does not dispute the validity of his maintenance obligation to Teddy or the fact that he has failed to make payments on that

- 5 -

T000661

No. 1-19-2107

obligation since January 1, 2006. Rather, in urging reversal of the circuit court's order finding him in indirect civil contempt and ordering his incarceration, Plato argues that he is incapable of complying with his obligation to pay maintenance. He asserts that he has no assets from which to pay the maintenance owed to Teddy and that the KM trust from which all of his expenses are paid has a spendthrift provision and specifically prohibits the use of trust assets to satisfy maintenance obligations. We find the argument unconvincing.

¶ 17    The circuit court has the power to enforce an order to pay money through a contempt proceeding where there has been a willful refusal to obey the court's order. *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984) Non-compliance with an order to pay maintenance constitutes *prima facie* evidence of indirect civil contempt of court. *Id.* Once a *prima facie* showing is made, the burden shifts to the alleged contemnor to show that his noncompliance was not willful. *Id.* "A defense to contempt exists where the failure to obey an order to pay is due to poverty, insolvency, or other misfortune, unless that inability to pay is the result of a wrongful or illegal act." *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 332–33 (2001) (citing *In re Marriage of Betts*, 155 Ill. App. 3d 85 (1987)). A defendant has the burden of proving that he neither has money to pay his obligation nor has he wrongfully disposed of money or assets with which he might have paid. *Peterson*, 319 Ill. App 3d at 333 (citing *Logston*, 103 Ill. 2d at 285). An alleged contemnor may not assert an inability to comply with a court order when he has voluntarily created the incapacity. *In Re Marriage of Kneitz,* 341 Ill. App. 3d 299, 304 (2003). Financial inability to comply with an order must be shown by definite and explicit evidence. *Petersen*, 319 Ill. App. 3d at 333 (citing *In re Marriage of Chenoweth*, 134 Ill. App. 3d 1015 (1985)).

- 6 -

T000662

No. 1-19-2107

¶ 18    The evidence in this case established that Plato both had the financial ability to pay his maintenance obligation to Teddy, and that he voluntarily transferred all of his assets into the KM trust to avoid his maintenance obligations. In May 1996, Plato, as settlor and grantor, caused the creation of the KM trust and transferred substantially all of his business holdings into the trust. In July 2009, Plato and Charmaine transferred and assigned all of their personal property to the KM trust. Plato and Charmaine have monthly living expense totaling $32,622 which are paid by the KM trust. In November 2016, the KM trust received approximately 8 million dollars from the sale of the Mansards. Plato's federal tax return for 2016 shows an adjusted gross income of $16,398,419, $8,558,935 of which was from sources other than the sale of the Mansards. $722,552.07 was distributed by the KM trust during the period from January 9, 2018 to March 28, 2018. When asked what the money was used for, Plato stated: "I don't know – I don't remember." Plato admitted, however, that he is the only one who has ever made a request for payments from the KM trust.

¶ 19    Plato insists that his only source of funds is the KM trust and that the terms of that trust prohibit the assets from being used to satisfy his maintenance obligations. He contends that the KM trust is irrevocable and that he lacks the ability to either control the trust or to amend its provisions. The fact remains, however, that Plato both voluntarily created the KM trust and voluntarily placed all of his assets into that trust with the obvious purpose of avoiding the payment of his maintenance obligations. The evidence clearly established that Plato had the ability to pay his maintenance obligations and willfully failed to do so. We conclude that Plato failed in his burden of proving that he neither had money to pay his maintenance obligations nor willfully disposed of money or assets with which he might have paid.

- 7 -

T000663

No. 1-19-2107

¶ 20    Next Plato argues that his IRS liens constitute a defense to payment of his maintenance obligation to Teddy. We disagree. Plato cites no authority for the proposition that an IRS lien is a defense to paying maintenance. The issue of whether the IRS can assert a lien against any monies Plato might pay towards his maintenance obligation to Teddy will not arise unless and until Plato pays Teddy the sums she is due and the IRS asserts a lien on those sums. At that time, the IRS and Teddy can resolve any dispute. Moreover, there is sufficient evidence in the record to conclude that, in light of his access to funds from the KM trust, Plato has sufficient funds to pay both Teddy and the IRS.

¶ 21    Finally, Plato argues that the doctrine of *laches* bars Teddy's claim for maintenance. We find no merit in the argument.

> " '*Laches* has been defined as "such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." [Citation.] The existence of *laches* "depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did." [Citation.]' " *In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 60 (quoting *In re Adoption of Miller*, 106 Ill. App. 3d 1025, 1030 (1982)).

Absent prejudice to the respondent, a delay, even a lengthy one, in enforcing a maintenance obligation does not give rise to *laches*. See *In re Marriage of Coufal*, 156 Ill. App. 3d 814, 819 (1987). The respondent must demonstrate injury as a result of the delay, and, generally, having access to the funds during the time during which enforcement was delayed is actually considered a benefit to the respondent. *Id.* Here, Plato argues that he was prejudiced because he could have

- 8 -

T000664

No. 1-19-2107

moved to modify his support obligation sooner and obtained retroactive relief. However, he has identified nothing in Teddy's actions that misled him or prevented him from pursuing a petition to modify his maintenance obligation.

¶ 22    Whether a party is guilty of contempt is a question of fact to be resolved by the circuit court, and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse. *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 38, (citing *Logston*, 103 Ill. 2d at 286-87). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *In re Jay H.*, 395 Ill. App. 3d 1063, 1071 (2009). Based upon the record before us, we find that there is no clearly apparent opposite result from that reached by the circuit court on the question of whether Plato is guilty of indirect civil contempt.

¶ 23    The foregoing analysis leads us to conclude that the circuit court's order finding Plato in indirect civil contempt and ordering his incarceration until he purges the contempt by paying Teddy $5,183,621.78 is not against the manifest weight of the evidence. As a consequence, we affirm both the circuit court's order finding Plato in indirect civil contempt and its denial of his motion for rehearing.

¶ 24    Affirmed.

- 9 -

T000665

# EXHIBIT E

# FIRST RESTATEMENT OF THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT

**THIS FIRST RESTATEMENT OF THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** is made on this 30th day of October, 2020 by and between **GUARDIAN FIDUCIARY MANAGEMENT, LTD.,** a Bahamian company, (hereinafter referred to as the "Protector") and **ORION CORPORATE & TRUST SERVICES LTD.,** which has its registered office at No 5 Cork Street Belize City, Belize  (hereinafter referred to as the "Trustee").

## RECITALS

**WHEREAS**, on the 9th day of January, 1998, **THE KM SETTLEMENT** (hereinafter referred to sometimes as the "Settlement" and sometimes as the "Trust") was established by **PLATO FOUFAS**, as Settlor, and **ST. VINCENT TRUST SERVICE LTD.,** as Trustee; and

**WHEREAS**, on the 17th day of January, 1998, **THE FIRST AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** was entered into; and

**WHEREAS**, on the 16th day of July, 2001, a DEED OF TERMINATION OF TRUSTEE, APPOINTMENT OF NEW TRUSTEE, ACCEPTANCE OF NEW TRUSTEE AND CHANGE OF TRUST STATUS was executed by **PLATO FOUFAS**, as Settlor, **ST. VINCENT TRUST SERVICE LTD.,** the Original Trustee, and **ATC TRUSTEES (BAHAMAS) LTD.,** appointing **ATC TRUSTEES (BAHAMAS) LTD.** as the new Trustee; and

**WHEREAS**, on the 3rd day of October, 2003, **THE SECOND AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** was entered into; and

**WHEREAS**, on the 3rd day of October, 2003, a DEED OF REMOVAL OF CURRENT TRUSTEE AND APPOINTMENT OF NEW TRUSTEE was executed by **PLATO FOUFAS**, as Protector, and **CITITRUST INTERNATIONAL, INC.,** as the new and current Trustee; and

**WHEREAS**, on the 16th day of June, 2006, a DEED OF REMOVAL OF TRUSTEE AND APPOINTMENT OF SUCCESSOR TRUSTEE was executed by **GUARDIAN FIDUCIARY MANAGEMENT LTD.,** as Protector, and **ORION CORPORATE AND TRUST SERVICES LTD.,** as the new and current Trustee; and

**WHEREAS**, on the 21st day of November, 2006, **THE THIRD AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** was amended and restated; and

**WHEREAS**, on the 2nd day of May, 2007, the **FIRST AMENDMENT TO THE THIRD AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** was entered into; and

**WHEREAS**, on the 28th day of December, 2007, **THE FOURTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** was entered into; and

1

Sixth Amendment and Restatement of The KM Settlement

WHEREAS, on the 10th day of June, 2010, **THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** was amended and restated; and

WHEREAS, pursuant to Article 13 subparagraph (1) of the Trust, the Protector may at any time or times during the lifetime of the Settlor, by instrument in writing, make such alterations or additions to or substitutions for or deletions of the provisions of this Settlement as the Protector considers to be for the benefit of all or any one or more of the Beneficiaries, and the Protector shall have the power, at any time and from time to time, by notice in writing to the Trustee, to appoint that the members of such class of persons as is therein specified shall be additional Beneficiaries;

WHEREAS, it is foreseen that further money or other assets may be paid or transferred to or become held by the Trustee (whether by gift, inter vivos or testamentary disposition or otherwise) upon the trusts hereby declared; and

WHERAS, it is intended that this restatement of trust hereby constituted shall be known as the **"FIRST RESTATEMENT OF THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT"**.

## WITNESSETH

NOW, THEREFORE, **GUARDIAN FIDUCIARY MANAGEMENT, LTD.,** a Bahamian company, as Protector, pursuant to the power granted to it under the provisions of the Trust, each and every other power otherwise possessed by the Protector does hereby restate The Fifth Amendment and Restatement Of The KM Settlement as follows, and as of the date first written above:

**NOW IT IS HEREBY AGREED AND DECLARED** as follows:

## ARTICLE 1
## DEFINITIONS

In this Settlement the following expressions shall have the following meanings respectively:

(1)     **Beneficiaries**   means the persons named or referred to in the first schedule attached hereto (hereinafter referred to as "the First Schedule") so that "Beneficiary" means the only or any one of the Beneficiaries; **PROVIDED THAT** if and so long as any person is an Excepted Person, as that term is defined hereinbelow, he or she shall be deemed not to be a Beneficiary.

(2)     **Custodian**   means the person appointed to that office by the Trustee in exercise of the powers herein conferred on the Trustee at the direction or with the consent of the Protector.

(3)    **Discretionary Period**    means that period beginning with the date of this Settlement and ending on the first to happen of the following:

(a)    the expiration of one hundred twenty (120) years referred to in the First Schedule;

(b)    the death of the last survivor of the Beneficiaries (whether born before or after the date of this Settlement);

(c)    the complete distribution of the money and other assets comprised in the Trust Estate as provided for herein;

(d)    such date as is declared to be appropriate by the Trustee with the prior consent of the Protector; or

(e)    if and so long as the law governing this Settlement shall not be the law of the Initial Forum, such date as the Trustee may appoint for the purpose of ensuring that the dispositions herein do not violate any rule against perpetuities thereunder.

(4)    **Event of Duress**    means an occasion on which the Protector or the Trustee shall form the opinion that any of the following events or circumstances has happened or occurred and of which the Protector shall give notice by revocable or irrevocable written instrument to the Trustee, or the Trustee gives like notice to the Protector, specifying (in either case) the nature of the event or circumstance concerned and the jurisdiction in which (in their opinion) it has happened or occurred:

(a)    war or civil disturbance in any part of the world which, in the opinion of the Protector or the Trustee, will or may endanger, whether directly or indirectly, the safety of any money or other assets of which the Trust Estate is comprised;

(b)    political action in any part of the world, whether instigated by any government, political organization, or individual, whether constitutional or otherwise, which, in the opinion of the Protector or the Trustee, will or may endanger, whether directly or indirectly, the safety of any money or other assets of which the Trust Estate is comprised;

(c)    the enactment in any part of the world of any law, regulation, decree, or measure which, in the opinion of the Protector or the Trustee, will or may, directly or indirectly, expropriate, sequester, or empower any person to expropriate or sequester, or in any way control, restrict, or prevent the free disposal or distribution by the Trustee or the Custodian of any money or other assets of which the Trust Estate is comprised;

3

(d)     action or threat of action, whether legal, equitable, administrative, or quasi-judicial, by any governmental body including but not limited to, any government department or agency in any part of the world or by any official purporting to act on the instructions and with the authority of such government department, branch, bureau, service or agency, political organization, public or private individual, or private entity, whether constitutional or otherwise, which, in the opinion of the Protector or the Trustee, will or may, directly or indirectly, expropriate, sequester, levy, or give rise to any right of lien over, or in any way control, restrict, or prevent the free disposal or distribution by the Trustee or the Custodian of any moneys or other assets of which the Trust Estate is comprised (except as otherwise provided for herein, this provision shall not include the levying of taxation by any administrative, quasi-judicial or governmental entity); or

(e)     the entry or threat of any entry of any order, decree or judgment of any court or tribunal in any part of the world which, in the opinion of the Protector or Trustee, will or may, directly or indirectly:

(i)     expropriate, sequester, levy, or give rise to any right of lien over, or in any way control, restrict, or prevent the free disposal by the Trustee or the Custodian of any money or other assets of which the Trust Estate is comprised or the free disposal by a Beneficiary of any distribution therefrom;

(ii)    compel the Trustee to distribute any money or other assets of which the Trust Estate is comprised to an Excepted Person;

(iii)   restrict the performance of, or suspend or abrogate any contract to which the Trustee are a party; or

(iv)    expropriate, sequester, levy, or give rise to any right of lien over, or in any way control, restrict, or prevent the free disposal by a Beneficiary of any distribution from the Trust Estate.

(5)     **Excepted Person**   means any Person or governmental body, including but not limited to, any government department or agency in any part of the world or by any official purporting to act on the instructions and with the authority of such government department, branch, bureau, service or agency, political organization, public or private individual, or private entity, whether constitutional or otherwise, (a) whose rights or interest in or claims to the Trust Estate or any portion thereof arises or exists by virtue of being a claimant, plaintiff, judgment creditor or advocate against the Trustee or the Trust Estate (including, but not limited to, a trustee in bankruptcy); or (b) who in any manner, acting singly or with others, shall have caused an Event of Duress, excepting the Settlor; or (c) who the Trustee, with the consent of the Protector, or the Protector solely, by revocable or irrevocable written instrument, may declare (whether or not otherwise falling within this Section) to be an Excepted Person; **PROVIDED**

**ALWAYS** that a Person shall not be an Excepted Person by reason only of any right, claim, or interest conferred upon him or her by the provisions of this Settlement.

      (6)    **Investment Adviser** means the person appointed to that office by the Trustee in exercise of the powers herein conferred on the Trustee at the direction or with the consent of the Protector.

      (7)    **Person** means any natural being, corporation, partnership, limited liability company, trust, or any other association, entity or nominee.

      (8)    **Protector** means the Person or Persons for the time being holding the office of Protector.

      (9)    **Trust Estate** means:

          (a)    the Initial Sum (the receipt of which the Trustee hereby acknowledges);

          (b)    any money or other assets (including, without limitation, all real, personal or mixed property, of whatever kind or nature) hereafter paid or transferred to and accepted by the Trustee as additions to the Trust Estate (whether paid or transferred by the Settlor or by any other person(s));

          (c)    all accumulation of income of the foregoing; and

          (d)    all the money and other assets from time to time representing the money and other assets referred to in (a), (b), and (c) above.

      (10)    **Trustee** means the Trustee or Trustees hereof for the time being (so that "Trustee" shall mean the only or any one of the Trustees), and any Successor Trustee duly appointed as provided for herein.

      (11)    **U.S. Limited Agent** means the Person authorized by the Settlor to act as the Trust's limited agent solely for the purposes of applying sections 7602, 7603, and 7604 of the United States' Internal Revenue Code of 1986, as amended from time to time, (hereinafter referred to as the "Code") with respect to:

          (a)    any request by the Secretary of the United States' Treasury Department (hereinafter referred to as the "Secretary") to examine records or produce testimony related to the proper treatment of amounts required to be taken into account under the rules of subpart E of part I of subchapter J of chapter 1 of the Code; or

          (b)    any summons by the Secretary for such records or testimony.

(12)    **Limited Partnership Interests** means all Limited Partnership interests and **Special Limited Partnership Interests** including but not limited to those listed in the Second Schedule attached hereto, which includes all entities and individual schematics for such entities.

(13)    **Corporate General Partnership Interests** means all general partnership interests and all **Managing Member interests** and **Manager interests** including but not limited to those listed in the Second Schedule attached hereto, which includes all entities and individual schematics for such entities.

(14)    The singular includes the plural and vice versa.

(15)    The masculine includes the neuter and vice versa and each includes the feminine.

(16)    References herein to "dollars" shall be construed as references to the currency of the United States of America.

**ARTICLE 2**
**DECLARATION OF TRUST**

The Settlor has heretofore transferred or will transfer and deliver to the Trustee, without consideration, the property comprising the Trust Estate and the Trustee hereby declares that it shall henceforth stand possessed of the Trust Estate and the income thereof UPON TRUST subject to the powers and provisions herein contained and the Trustee shall be at liberty during the trust period to accept any money, investments or other property wherein situated from any person(s), or by will or codicil, or under the provisions of any other settlement, declaration of trust, or otherwise, and subject to such terms and conditions as the transferor of such property may impose, to the intent that the same shall be held by the Trustee as an accretion of the Trust Estate.

**ARTICLE 3**

**TRUST ADMINISTRATION**

(1)    **Changing Place of Administration.**    The provision of the First Schedule shall have effect as if set out in this Article 3 Section (1) "*Changing Place of Administration*".    The Trustee, upon giving notice of an Event of Duress, may, or upon receiving notice of an Event of Duress, shall, if the terms of such notice provide that the jurisdiction referred to in such notice (hereinafter called "the Duress Jurisdiction") is the jurisdiction in which this Settlement is then administered or whose law then governs this Settlement, forthwith either: (a) exercise the power herein conferred on the Trustee (for which purpose the Trustee shall be deemed to have the consent of the Protector) to change the place of administration, or (as the case may be) the power herein conferred on the Trustee (for which purpose the Trustee shall be deemed to have the consent of the Protector) to change the said law so that this Settlement shall be administered in and be governed by the law of a jurisdiction other than the Duress Jurisdiction(s); or (b) transfer the money and assets comprised in the Trust Estate to the trustee(s) of a Settlement established under the law of, and administered in, a jurisdiction or jurisdictions other than the Duress Jurisdiction, which they are hereby empowered to do so long as the effect of such transfer shall

6

be that such money and assets be thenceforth held on trusts and subject to provisions which are substantially the same (*mutatis mutandis*) as those declared and contained in this Settlement.

(2)     **Limitation on Transfer Situs**.   Despite the foregoing provisions regarding changing the place of administration, no such change or transfer as aforesaid shall be made to any jurisdiction whereby any Excepted Person shall be or may become capable of benefiting hereunder, and in making such transfer, due regard shall be had to any applicable rule against perpetuities.

(3)     **Appointment of Investment Adviser**.   The Trustee shall, at the direction of the Protector, and may, with the prior consent of the Protector, at any time and from time to time appoint an Investment Adviser upon the terms as agreed to by the Trustee with the consent of the Protector, according to the form of agreement regularly used by such Investment Adviser, and with such modifications as the Protector may in writing approve.

(4)     **Appointment of Custodian**.   The Trustee shall, at the direction of the Protector, and may, with the prior consent of the Protector, at any time and from time to time appoint a Custodian upon the terms as agreed to by the Trustee with the consent of the Protector, according to the form of agreement regularly used by such Custodian, and with such modifications, as the Protector may in writing approve.

(5)     **Nature of Investments**.   After the appointment of the Investment Adviser, the Trustee shall have power to make, hold or dispose of such investments of whatever kind or nature (whether real or personal and wherever situate and whether producing income or not or involving liability) as the Investment Adviser may advise.

(6)     **Transfer to Custodian**.   After the appointment of the Custodian, the Trustee shall transfer the assets comprised in the Trust Estate to the Custodian for safekeeping, retaining only such amount as the Trustee deems necessary, with the consent of the Protector, to maintain an administrative account in accordance with a budget schedule projecting costs and expenses for the next following ninety (90) day period.   Upon transfer of such assets, all further transactions relating to such assets during the currency of such appointment shall be effected by transfer to or from the Custodian.

(7)     **Distribution of Assets Following Expiration of Discretionary Period**. If, at the expiration of the Discretionary Period, there are no Beneficiaries living, any undistributed principal and income shall be transferred to such charity or charities the Trustee shall determine. In this clause, "charity or charities" means any trust, foundation, company, or other body (corporate or unincorporated) established exclusively for charitable purposes in accordance with the law of the jurisdiction in which the charity or charities is (are) domiciled.

(8)     **Settlor's Retained Powers**. Notwithstanding anything contained herein to the contrary, the Settlor may reacquire any part(s) or all of the trust corpus by substituting other property of an equivalent value.

(9)    **Belize Real Property**. Notwithstanding anything contained herein to the contrary, no real property situated in Belize shall be capable of forming part of the Trust Estate.

## ARTICLE 4

### ADMINISTRATIVE POWERS OF THE TRUSTEE

(1)    **Holding and Investment of Assets**.    In the management and administration of the Trust Estate for the benefit of the Beneficiaries and subject to the limitations set forth in the First Schedule, the Trustee shall have all such powers of holding, investing and disposing of the money and assets comprised in the Trust Estate and of carrying out any transaction whatever without limitation in the manner and to the extent as if it was the owner thereof (including, without prejudice to the generality of the foregoing, taking out and keeping in effect any policy of insurance on the life of any Beneficiary or the acquisition of any annuity for any Beneficiary), to the extent that such powers are lawfully capable of being conferred on a trustee of a settlement to the same effect as if such powers were expressly conferred by this Settlement and specified, *in extensio*; and the Trustee may exercise or omit to exercise all or any of such powers in its absolute and uncontrolled discretion.

(2)    **Keeping Accounts**.    The Trustee shall keep accurate and proper accounts of its trusteeship and provide, if requested, periodic statements to the Protector, the U.S. Limited Agent, and any Beneficiary as directed by the Protector.

(3)    **Payment of Expenses**.    The Trustee shall, upon receiving written billing, at all times be authorized to pay out of the income or principal of the Trust Estate all the reasonable costs, including, but not limited to, legal, accounting, protector, and trust services, of or incidental to the preparation, execution, and registration of this Settlement, the transfer or funding of assets under this Settlement or its ongoing administration and maintenance.

(4)    **Professional Assistance**.    The Trustee shall at all times be authorized to employ and pay for such professional or other assistance as the Trustee may deem reasonably requisite in the discharge of its duties.

(5)    **Extent of Powers**.    The powers of the Trustee shall extend to any and every act or omission which is necessary or desirable for the due execution of the Trust or trusts created herein and the exercise of the powers herein, including (without prejudice to the generality of the foregoing), upon the written approval of the Protector, the power to engage the services of and reasonably remunerate any lawyer or other professional person. The proper costs of and incident to every act of the Trustee incidental to the formation, administration, or termination of the Trust shall be met first out of income and then, to the extent required, out of principal of the Trust Estate or partly out of each (as the Trustee thinks fit).

(6)    **Delegation of Power, If Joint Trustees**.    If at any time there shall be more than one Trustee, then the Trustees may at any time, notwithstanding the law of the jurisdiction governing the Settlement at such time, by signed instrument, delegate to one Trustee any or all powers or discretions under this Settlement. Thereafter, the act of the one Trustee shall be the

8

binding act for all Trustee then acting.  Any person dealing with a Trustee may rely without enquiry upon such instrument or document with respect to any delegation of powers or discretions.

(7)   **Delegation of power, If One Trustee.**  If at any time there shall be solely one Trustee, then the Trustee may at any time, notwithstanding the law of the jurisdiction governing the Settlement at such time, by signed instrument, delegate to a third party other than current Trustee any or all powers or discretions under this Settlement.  Thereafter, the act of the third party shall be the binding act for the Trustee then acting.  Any person dealing with a Third Party Delegate of Trustee powers may rely without enquiry upon such instrument or document with respect to any delegation of powers or discretions as executed by the current Trustee.

(8)   **Termination of Settlor as Trustee.**   A Settlor may be a Trustee of this Settlement, provided, however, that any Trustee being the Settlor shall without further action, upon the occurrence of an Event of Duress and during the pendency thereof, be deemed terminated as Trustee and, thereafter, the remaining Trustee(s), if any, or if none, then the Trustee(s) otherwise appointed as provided herein shall act as Trustee(s).  Upon the conclusion of the Event of Duress, the Trustee(s), with the consent of the Protector, or the Protector solely, may, upon notice to the then acting Trustee(s), reappoint Settlor as Trustee or Co-Trustee of this Settlement.

(9)   **Gifting**.  The Trustee, in the Trustee's sole and absolute discretion, may, at any time, or from time to time, with the consent of the Protector, make gift(s) for estate and gift tax purposes to any person designated as a Beneficiary under this instrument; provided, however, that such gifts need not be made in equal amounts to all Settlor's relatives in the same degree of kinship to Settlor, and no recipient of such gifts shall receive more than the annual exclusion amount under Code §2503(b), as amended, from time to time, or twice the annual exclusion amount to allow for split-gift treatment under Code §2513, from time to time, in any one (1) calendar year.

(10)   **Retirement Accounts.**  In order to comply with Sections 408(a), 401(a) or 403(b) of the Code, the Trustee shall direct that any Retirement Account make distributions at least annually to this trust or any trust established hereunder that holds any such Retirement Account, as the case may be, of the amount of the minimum distributions required to be distributed under the method of distribution in effect for such Retirement Account for purposes of Section 401(a)(9) of the Code.

(11)   **Appointment of Accountant.**  Notwithstanding anything contained herein to the contrary, the Trustee shall have the power to employ such accountant as is deemed appropriate by the necessary parties to pay bills, and manage the books and taxes of any trusts established herein.  Any such accountant's fees shall be paid from the relative trust for which services were performed.

## ARTICLE 5

## PAYMENT OF TAXES

The Trustee may at its discretion or upon the written request of the Protector pay out of the principal or income of the Trust Estate any taxes of any kind which become payable anywhere in the world in respect of any part of the Trust Estate or its income (whether or not enforceable), either by the Trustee or by the Settlor, any other person who has transferred assets to this Settlement, or by any Beneficiary, notwithstanding that the payment of taxes may be prejudicial to one or more of the Beneficiaries.

Anything to the contrary notwithstanding, the Trustee and the Protector shall rely upon the U.S. Limited Agent's determination of any United States (hereinafter referred to as the "U.S.") taxes, of any kind, which may become due and payable.

## ARTICLE 6

## REMUNERATION OF THE TRUSTEE

(1)     **Entitlement.**   The Trustee shall be entitled to remuneration upon such terms as may receive the consent of the Protector.

(2)     **Usual and Customary Fees.**   In the absence of an agreement pursuant to Article 6 Section (1) "*Entitlement*" and so far as it may not extend:

   (a)     **Published Terms.**   Any Trustee which shall be a company authorized by its memorandum and articles of association (or, in the case of a company incorporated outside the jurisdiction of current administration, by documents of a like nature) to undertake trust business shall be entitled to reimbursement of its proper expenses and remuneration for its services in accordance with such company's published terms and conditions for trust business in force from time to time.

   (b)     **Professional Fees.**   Any Trustee being an advocate, solicitor, barrister, accountant or other individual engaged in any profession or business shall be entitled, with the consent of the Protector, to charge and be paid all usual professional or other charges for business done and time spent and services rendered by him or his firm, and expenses incurred by him or his firm in the execution and exercise of the trusts and powers hereof, whether in the ordinary course of his profession or business or not.

   (c)     **Other Fees Earned.**   No Trustee or director or other officer of any corporation which is a Trustee shall be liable to account for any reasonable remuneration or other profit received by him in consequence of his acting as or being appointed to be a director or other officer or servant of any company, even though his appointment was procured by him or by such

corporate Trustee by virtue of voting rights attached to securities in the Trust Estate or by an abstention from exercising such voting rights.

(c)    **Banking Charges**.  Any Trustee which carries on the business of banking may, with the consent of the Protector, act as a banker for this Settlement on the same terms as those made with an ordinary customer without being liable to account to the Trust Estate for any profits earned thereby.

## ARTICLE 7

## LIABILITY OF THE TRUSTEE

(1)    **Willful Fraud or Gross Negligence**.  No Trustee shall be liable for any loss, expenses, or cost to the Trust Estate or its income however caused unless such loss results from willful fraud, breach of fiduciary duty, other wrongful act or from gross negligence by such Trustee or from some act or omission in respect of which that Trustee cannot, under the proper law for the time being of this Settlement, lawfully be exonerated from personal liability by the terms of this Settlement.

(2)    **Bond or Security Indemnity**.    The Trustee shall not be required to give any bond or security for the due and faithful administration of the Trust Estate or for the execution of the Trust or trusts hereby declared, and should any bond or undertaking be required by any law, statute, or rule of court notwithstanding, no surety shall be required thereon.

(3)    **Proper Indemnity**.  The Trustee shall be entitled to indemnity out of the Trust Estate for any judgment given against and paid by the Trustee, and for any loss, expense, or cost incurred in defending any action against the Trustee, in the Trustee's capacity as Trustee (save in so far as such judgment is given in respect of or the proceedings in such action related to willful fraud, breach of fiduciary duty, other wrongful act or to gross negligence by the Trustee or to some act or omission in respect of which it cannot under the proper law for the time being of this Settlement lawfully be indemnified pursuant to the terms of this Settlement).

(4)    **Consultation With and Opinion of Counsel**.    The Trustee may consult with legal counsel concerning any question which may arise with reference to the Trustee's duties or power or any of the provisions of this Settlement, and the opinion of such counsel shall be a full and complete authorization and protection in respect to any action taken or omitted to be taken by the Trustee in good faith in accordance with such opinion of counsel. The Trustee shall not be liable for any loss or damage sustained as a result thereof, **PROVIDED, HOWEVER,** that the Trustee shall be absolutely prohibited from disclosing any information concerning the Beneficiaries, the provisions or the assets of this Trust, or of any trust hereby created, to any government, governmental entity or political or other subdivision thereof, to any director, officer, agent, or employee thereof, or to any Excepted Person or a representative thereof, unless in the opinion of the Trustee, made in good faith and upon obtaining an affirmative legal opinion, disclosure is required or desirable in the circumstances.

(5)    **Retention of Trust Property**.  During the lifetime of the Settlor, the Trustee may retain any other property, whether personal, real or mixed, of whatever kind or nature,

constituting the Trust Estate or additions hereafter made, and is authorized to retain any such property (including, but not limited to, stock of closely held companies, limited partnership interest, and certificates of limited liability companies) contributed by the Settlor, without regard to the proportion of such property to the entire Trust Estate, irrespective of any laws governing property authorized to be held by the Trustee. The Trustee shall not be liable to the Beneficiaries of this Trust or the Beneficiaries of any trust hereby created or to any other party for retaining such property. In no event and under no circumstances shall the Trustee be liable for any loss, depreciation, surcharge or damage resulting from any action or omission of any director, officer, agent or employee of any corporation organized by the Settlor (the shares of which constitute a part of the principal of this Trust or of any trust hereby created). Every person claiming any interest in this Trust or in any trust hereby created shall take with notice of and subject to this protection conferred upon the Trustee.

(6)    **Management of Certain Trust Property**.    The Trustee shall not be bound or required to interfere in the management or conduct of the business of any company (whether in corporate, partnership or other business organization form) in which the Trustee hereof shall be interested (although holding the whole or a majority of the shares or interests carrying the control of the company), notwithstanding that the Trustee may participate or vote in favor of the appointment or election of officers, and/or directors and/or managers of such company. So long as there shall be no notice of any act of dishonesty or misappropriation of moneys on the part of the directors or managers having the management of such company, the Trustee shall be at liberty to leave the conduct of its business (including the payment or non-payment of dividends) wholly to such directors or managers and no Beneficiary hereunder shall be entitled to require the distribution of any dividend by any company or require the Trustee to exercise any powers the Trustee may have to compel any such distribution.

(7)    **Exculpatory Provisions**.    The trustee shall not be liable for any loss to the Trust Estate or its income, occasioned by any act or omission of the Investment Adviser or the Custodian unless the Trustee has acted in concert with the Investment Adviser or Custodian in breach of the trustee's fiduciary duty.

(8)    **Merit of Investments**.    Without prejudice to the generality of the foregoing Exculpatory Provisions, the Trustee shall be under no obligation to investigate the merits of, and no Trustee shall be liable in any manner with respect to, any investment made, held, or disposed of at the suggestion of or with the advice of the Investment Adviser. The Trustee shall not be bound to enquire as to the accuracy of any assessment or valuation provided by the Investment Adviser and shall not be liable for any loss to the Trust Estate directly or indirectly resulting therefrom.

## ARTICLE 8

## RETIREMENT OR REMOVAL OF TRUSTEE

(1)    **Retirement Notice**.    A Trustee may retire at any time by giving thirty (30) days written notice to the Protector if there is one, or, if there is none, to the Person who for the time being has the power to appoint a new Trustee.

(2)    **By Protector.**    The Protector shall have power at any time to remove a Trustee by giving notice in writing to such Trustee and by appointing a successor Trustee (the Person(s) thereafter being the Trustee(s) being hereinafter called "the Successor Trustee(s)").

(3)    **Effectiveness.**    The retirement or removal of a Trustee shall not take effect unless and until there is at least one (1) corporate Trustee or one (1) individual Trustee to act as the Successor Trustee.

(4)    **Appointment of Successor Trustee.**    If, within thirty (30) days of receipt of notice pursuant to Article 8 Section (1) "*Retirement Notice*", the Protector shall not have appointed a Successor Trustee(s) (being at least one (1) individual or one (1) corporation), then, until removed, **AMS TRUSTEES LIMITED**, whose registered office is in Sea Meadow House, PO Box 116 Road Town Tortola, British Virgin Islands, shall become the sole Successor Trustee.

(5)    **Event of Duress.**    Upon issuance of notice of an Event of Duress specifying the jurisdiction of current administration, any Trustee as shall be domiciled or resident in such jurisdiction shall automatically and immediately shall be deemed removed as a Trustee except for the purpose of exercising or joining in the exercise of powers as required by Section 3(1) "*Changing Place of Administration*" and a Successor Trustee(s), if appointed by the Protector or otherwise as set forth herein, shall be Successor Trustee(s). The forum for administration of this Settlement shall be the jurisdiction of domicile of the Successor Trustee (or if more than one such successor is appointed, of the alphabetically first of them). The matters set out in a notice by the Protector or the Trustee regarding an Event of Duress shall be binding on all parties interested herein, including (not by way of limitation) any Investment Adviser and Custodian and l every Beneficiary. The Person(s) who have so ceased to be Trustee shall be deemed to have appointed such Successor Trustee(s), as aforesaid, as his, her or their attorney with full power to take all action which may be necessary or desirable and (without prejudice to the generality of the foregoing) to execute any document which may be required to transfer the Trust Estate to the control of the Successor Trustee(s).

(6)    **Liability of Successor Trustee.**    No successor Trustee shall be liable or responsible for the acts or defaults of any Person formerly a Trustee (hereinafter referred to as a "Previous Trustee"). A Successor Trustee may accept the account rendered and the money and other assets transferred or delivered by any Previous Trustee as a true account and as the entirety of the money and other assets comprised in the Trust Estate and shall incur no liability to any person for so doing.

(7)    **Indemnification of Previous Trustee.**    Where a Trustee for any reason ceases to hold office as a Trustee (has become a Previous Trustee) and he or his personal representatives or (in the case of a corporate person) its liquidator, reasonably believes that he, they or it is/are, or may be or become under any liability (including a contingent liability and a fiscal liability of any nature whatsoever arising in any part of the world) and:

(a)     such liability has been incurred or may be incurred by that Previous Trustee or his personal representatives or its liquidator in consequence of having been a Trustee; and

(b)     that Previous Trustee would have been entitled to discharge or reimburse himself for the same out of the principal or income of the Trust Estate if that liability had been discharged at a time when he was still a Trustee; then the Successor Trustee(s) shall covenant to indemnify that Person or his personal representatives or its liquidator out of the principal or income of the Trust Estate against any such liability so incurred.

(8)     **Transfer of Assets to Successor Trustee.**   Upon ceasing to act as Trustee, and immediately upon the grant of the indemnity as provided for herein, the Previous Trustee shall effect a transfer and delivery of all money and other assets comprised in the Trust Estate to the Successor Trustee(s).  The receipt of the Successor Trustee(s) shall be conclusive evidence of the transfer of the said money and other assets.

(9)     **Power of Attorney to Successor Trustee.**   Any Successor Trustee of this Trust or any trust hereby created, upon becoming the same pursuant to the provisions hereof, is hereby granted, immediately, automatically, and irrevocably by the Previous Trustee ceasing to be the acting Trustee, an irrevocable Power of Attorney to transfer the Trust Estate and the income therefrom to itself as Successor Trustee, to execute any document or instrument deemed necessary or desirable and to exercise all of the powers conferred by the law and by this Settlement upon the Previous Trustee.  Any Person or entity dealing with this Trust or any trust hereby created shall be entitled to rely upon any such Power of Attorney and any document or instrument signed under its authority, and shall be entitled to assume (unless the contrary is proved) that in regard to any directions involving the Trust Estate pursuant to such Power of Attorney, such directions are validly given.

(10)    **Reliance upon Trust Documents.**   Any Person dealing with the Trustee may rely upon a copy of this document and any notices, schedules, amendments or Trustee Delegation Agreements endorsed or attached thereto when certified by or on behalf of the Trustee before a Notary Public, to the same extent as he, she or it might rely on the original.

## ARTICLE 9

## APPOINTMENT OF NEW OR ADDITIONAL TRUSTEE

(1)     **By Protector.**   Where any Trustee dies, retires (or, being a corporation, is dissolved) or is removed or refuses to act, or is unfit to act, then the Protector, or, if there is none or none able or willing to act, the surviving Trustee or the personal representatives or liquidator of the last surviving Trustee, or, if there is no such person, the retiring or removed Trustee, may by writing appoint one or more other Person(s) (whether or not being or including the Person(s) exercising the power) to be Successor Trustee(s) in the place of the Trustee so deceased, retiring, removed, refusing or being unfit.

(2)    **Additional Trustee(s).**   The Protector, or if there is none or none able or willing to act, the Successor Trustee(s), may from time to time in writing appoint another Person(s) to be an additional Trustee.

(3)    **Excepted Person.**   Under no circumstances shall an Excepted Person be appointed a Trustee, and, if any Trustee becomes an Excepted Person, said Trustee shall be deemed thirty (30) days previously to have given notice of retirement as provided for herein.

(4)    **Number of Trustees.**   The Trustee(s) shall always consist of at least one (1) individual or one (1) corporation.

**ARTICLE 10**

**THE PROTECTOR**

(1)    **First Protector.**   The first Protector shall be such Person or entity as may be appointed by the Settlor by written notice to the Trustee.

(2)    **Successor Protector(s).**   The Protector may in writing at any time or following appointment, nominate one or more successors to the Protector's office.  Any such nomination may be expressed to take effect in accordance with the terms thereof either immediately, at the death of the Protector, at any other date or on the happening of any other event or conditions. Such nomination shall be revocable before it takes effect.  At any time other than during the pendency of an Event of Duress, the Settlor may remove the Protector by instrument in writing appointing a successor Protector(s) as provided for herein.

(3)    **Additional Protector(s).**   The Protector shall have power to nominate in writing one or more additional Protector(s) to act with the Protector.

(4)    **Limitation on Number of Protectors.**   At no time shall there be more than four (4) Protectors.  When there are two (2) of them, references in this Settlement to "the Protector" shall (where the context so admits) be construed as references to both of them who shall only act unanimously.  When there are more than two (2) of them, they may act by a majority and references in this Settlement to "the Protector" shall (where the context so admits) be construed as references to all of them acting by a majority.

(5)    **Vacancy.**   Where there is no Protector, the Settlor, at any time other than during the pendency of an Event of Duress, or, during the pendency of any such Event of Duress, the Trustee, may, in writing and with the consent of the Settlor, appoint one or more Protector(s) and, pending such appointment, may exercise its powers hereunder without first obtaining the consent of the Protector where that is required.  Notice of such appointment by the Settlor or the Trustee shall be sent to the Beneficiaries by the Trustee, or to the Trustee by the Settlor.

(6)    **Excepted Persons.**   Under no circumstances shall an Excepted Person be nominated a Protector and, where a Protector becomes an Excepted Person, such Protector shall be deemed thirty (30) days previously to have given notice of retirement as provided for herein.

15

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

(7)    **Application to Trustee and Protector.**    Article 6 Section (2) "*Usual and Customary Fees*", except to the extent waived by a Protector in writing, and Article 7 Section (1) "*Willful Fraud and Gross Negligence*", shall apply to the Protector(s), *mutatis mutandis*, as they apply to the Trustee(s).

(8)    **Retirement.**    A Protector may retire at any time by giving thirty (30) days written notice to the Trustee.    A Protector who is at any time, in the opinion of the Trustee, unable to act shall be deemed to have given such notice thirty (30) days previously. A Protector may be replaced by the Settlor upon notice to the Trustee at any time other than during the pendency of an Event of Duress.

(9)    **Power to Require Trustee to Distribute.**    The Protector, in the exercise of the Protector's sole discretion, may, by written notice, require the Trustee to distribute as much of the principal and/or accumulated income of this Trust to any or all of the Beneficiaries listed in the First Schedule as the Protector shall deem appropriate; however, no Protector shall exercise any power, discretion or appointment if the Protector, or any Person the Protector is obligated by law to support (except if named as a Beneficiary the First Schedule), has or will receive any beneficial interest resulting from such exercise of such power, discretion, or appointment. Any such distributions shall be made, however, in accordance with the terms and conditions set forth in the First Schedule.

(10)    **No Duty of Investigation.**    The Protector shall assume, until such time as the Protector has actual knowledge to the contrary, that the administration, management, and conduct of the Trust or trusts hereby created is being carried on by the Trustee competently, honestly, diligently and in the best interests of the Beneficiaries, and the Protector shall not be bound or required at any time to take any action to ascertain whether the foregoing assumptions remain correct.

(11)    **Indemnification by Trustee(s).**    The Trustee shall keep the Protector indemnified and held harmless at all times from and against all actions, claims, demands, expenses and other liabilities arising or incurred in respect of the Trust or trusts hereby created or in respect of any exercise or non-exercise of the powers and discretion conferred hereby or otherwise resulting therefrom, and the Trustee shall pay from the Trust Estate all legal and other expenses reasonably incurred by the Protector in obtaining advice in any such regard.

(12)    **Power of Attorney from Trustee.**    Each Trustee or Successor Trustee, by virtue of and upon taking such office, hereby grants the Protector an irrevocable Power of Attorney to execute such documents and to do such other things on behalf of any Trustee removed pursuant to the power conferred upon the Protector by this Settlement as the Protector may consider requisite or desirable for the purpose of vesting the Trust Estate in the Trustee then and thereafter acting and, without prejudice to the generality of the foregoing, the Protector is hereby authorized to exercise any of the powers conferred by this Settlement or by law upon any such removed Trustee for the purpose of vesting the Trust Estate in the Trustee thereafter acting or for the purpose of protecting the Trust Estate. This Power of Attorney, to the extent permitted and not prohibited by law, shall be deemed coupled with an interest.

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

## ARTICLE 11

### THE U.S. LIMITED AGENT

(1)    **First U.S. Limited Agent.**   The first U.S. Limited Agent shall be such Person or entity as may be appointed by the Settlor by written notice to the Trustee.

(2)    **Successor U.S. Limited Agent(s).**   The U.S. Limited Agent may in writing at any time or following appointment, nominate a successor to the U.S. Limited Agent's office. Any such nomination may be expressed to take effect in accordance with the terms thereof either immediately, at the death or liquidation of the U.S. Limited Agent, at any other date or on the happening of any other event or conditions. Such nomination shall be revocable before it takes effect. At any time other than during the pendency of an Event of Duress, the Settlor may remove the U.S. Limited Agent by instrument in writing appointing a successor U.S. Limited Agent as provided for herein.

(3)    **Limitation on Number of U.S. Limited Agents.**   At no time shall there be more than one (1) U.S. Limited Agent.

(4)    **Vacancy.**   Where there is no U.S. Limited Agent, the Settlor, at any time other than during the pendency of an Event of Duress, or, during the pendency of any such Event of Duress, the Trustee, may, in writing and with the consent of the Settlor, appoint a U.S. Limited Agent. Notice of such appointment by the Settlor or the Trustee shall be sent to the Beneficiaries by the Trustee, or to the Trustee by the Settlor.

(5)    **Excepted Persons.**   Under no circumstances shall an Excepted Person be nominated U.S. Limited Agent and, where a U.S. Limited Agent becomes an Excepted Person, such U.S. Limited Agent shall be deemed thirty (30) days previously to have given notice of retirement as provided for herein.

(6)    **Application to U.S. Limited Agent.**   Article 6 Section (2) "*Usual and Customary Fees*", except to the extent waived by a U.S. Limited Agent in writing, and Article 7 Section (1) "*Willful Fraud and Gross Negligence*", shall apply to the U.S. Limited Agent, *mutatis mutandis*, as they apply to the Trustee(s).

(7)    **Retirement.**   A U.S. Limited Agent may retire at any time by giving thirty (30) days written notice to the Trustee.   A U.S. Limited Agent who is at any time, in the opinion of the Trustee, unable to act shall be deemed to have given such notice thirty (30) days previously. A U.S. Limited Agent may be replaced by the Settlor upon notice to the Trustee at any time other than during the pendency of an Event of Duress.

(8)    **No Duty of Investigation.**   The U.S. Limited Agent shall assume, until such time as the U.S. Limited Agent has actual knowledge to the contrary, that the administration, management, and conduct of the Trust or trusts hereby created is being carried on by the Trustee competently, honestly, diligently and in the best interests of the Beneficiaries, and the U.S. Limited Agent shall not be bound or required at any time to take any action to ascertain whether the foregoing assumptions remain correct.

17

(9)    **Indemnification by Trustee(s).**    The Trustee shall keep the U.S. Limited Agent indemnified and held harmless at all times from and against all actions, claims, demands, expenses and other liabilities arising or incurred in respect of the Trust or trusts hereby created or in respect of any exercise or non-exercise of the powers and discretion conferred hereby or otherwise resulting therefrom, and the Trustee shall pay from the Trust Estate all legal and other expenses reasonably incurred by the U.S. Limited Agent in obtaining advice in any such regard.

(10)    **No Office or Permanent Establishment.**    The appointment of a U.S. Limited Agent shall in no way be considered to cause the Trust or trusts hereby created, directly or indirectly, to have an office or permanent establishment within the U.S., or to be engaged in a trade or business within the U.S., solely because of the activities of the U.S. Limited Agent pursuant to section 6048 of the Code and the applicable regulations thereunder.

(11)    **Limited Power of Attorney.**    The Trustee hereby authorizes the U.S. Limited Agent to sign all necessary United States tax forms in light of the various tax filing requirements with which the Trust must comply. The U.S. Limited Agent is authorized but not required to file tax forms on behalf of the Trustee.

## ARTICLE 12

### FORUM OF ADMINISTRATION AND PROPER LAW OF THE SETTLEMENT

(1)    **Initial Forum.**    This settlement was established under the Laws of St. Vincent W.I. which was the initial forum for its administration.

(2)    **Governing Law.**    This Trust is governed under the Laws of Belize, Central America (the "Successor Forum"), and the rights of all the parties and of all the Beneficiaries shall be governed by and construed in accordance with the Laws of Belize, Central America, the Courts of which shall be the forum for the administration hereof notwithstanding that one or more of the Trustee hereof may from time to time be resident or domiciled elsewhere than in Belize, Central America; and, provided always, that the Trustee may administer and manage the Trust in and from such place or places as it shall from time to time think fit without prejudice to the law declared to be applicable hereto and whether or not the law of such place shall be the Law declared to be the applicable law hereunder.

(3)    **Moving Situs of Administration.**    With the consent of the Protector, the Trustee shall have power to move the administration of this Settlement at any time to any other jurisdiction in the world.

(4)    **Change of Governing Law.**    Notwithstanding the foregoing provisions of this Article, the Trustee may, with the consent of the Protector, or shall, upon direction of the Protector, at any time and from time to time by instrument in writing, revocably or irrevocably declare that the rights of all parties hereto and of all Beneficiaries hereunder and the construction and effect of each and every provision hereof shall thenceforth, or from such future date as may be specified in such instrument, no longer be determined according to the said laws of the Successor Forum, but instead shall be determined as if they were governed by the laws of such

18

other jurisdiction (other than a jurisdiction whose laws do not recognize, *mutatis mutandis*, a settlement of the nature hereby established) as may be specified in such instrument and, if they shall do so, this Settlement shall thenceforth have effect as if the name of such other jurisdiction appears herein in place of the name of the jurisdiction of the Successor Forum wherever it herein appears.

(5)    **Resulting Changes**.    If the Trustee shall exercise the aforementioned power to change the laws governing this Settlement, the Trustee shall have power to make and, with the consent of the Protector, shall make such alterations to this Settlement as shall be requisite or desirable to ensure that the trusts, powers, and provisions hereof are as valid and enforceable after such change as before.

## ARTICLE 13

### AMENDMENT OF THE SETTLEMENT

(1)    **By Protector**.    The Protector may at any time or times during the lifetime of the Settlor, by instrument in writing, make such alterations or additions to or substitutions for or deletions of the provisions of this Settlement as the Protector considers to be for the benefit of all or any one or more of the Beneficiaries, and the Protector shall have the power, at any time and from time to time, by notice in writing to the Trustee, to appoint that the members of such class of persons as is therein specified shall be additional Beneficiaries.

(2)    **Diminishment of Powers**.    The Trustee may, at any time or times during the Discretionary Period, by instrument in writing, extinguish (or restrict the future exercise of) any of the powers conferred on the Trustee by this Settlement or by law and the Protector shall have a like power as regards powers so conferred on the Protector.

(3)    **By the Settlor**.    The Settlor may voluntarily and not under any legal, equitable or administrative compulsion, with the consent of the Protector, amend this Trust or any trust hereby created.  Any such action by the Settlor shall be effective only if and as of the time a written instrument to that effect is delivered to the Trustee that is duly executed by the Protector and the Settlor, and, if no Protector is then serving, no power, except as provided below, can be exercised by the Settlor unless and until a Protector is appointed by the Trustee or otherwise as provided for herein.

The above notwithstanding, the Settlor shall have the power to change the interests of the Beneficiaries as between themselves, provided, however, that this power may not be exercised for the benefit of the Settlor or Settlor's creditors, or the Settlor's spouse or the Settlor's Spouse's creditors.

## ARTICLE 14

### IRREVOCABILITY

Except as otherwise herein specifically provided, this Trust and any trust hereby created shall be irrevocable and shall not be subject to modification or alteration.

19

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

## ARTICLE 15

### DISCLOSURE BY TRUSTEE OR PROTECTOR

Without prejudice to any duty of confidentiality under the Governing Law or pursuant to any enactment regarding confidentiality by which the Trustee or the Protector may be bound, the Trustee and the Protector shall not disclose to any governmental department, bureau, branch, agency, service, or division, or to any Excepted Person or their representatives or agents in whatever capacity any document, instrument, information or communication concerning this Settlement, the Trust Estate or concerning any Person(s) in any manner related thereto (including the Custodian and Investment Adviser), provided, always, that the Trustee and the Protector may make such disclosure to a Person who is not an Excepted Person, or their representative or agent, either (i) if the Trustee, with the consent of the Protector; or (ii) in circumstances in which, in the discretion of the Trustee or the Protector, such disclosure would benefit this Settlement or any of the Beneficiaries thereunder or any other Person(s) in any manner related thereto.

## ARTICLE 16

### NOTICE

Any notice, consent, signature, direction or other communication given under this Settlement shall be properly given if (i) in writing; or (ii) (except where writing is expressly required) orally or by electronic means such as telex, facsimile, or telephone, if confirmed in writing, hand delivered or mailed by first class or certified mail, postage paid within thirty (30) days. Any such notice, consent, signature, direction or other communication under this Settlement shall be effective upon the proper giving of such notice.

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

38932580.1

## THE FIRST SCHEDULE

## ABOVE REFERRED TO

1.   **Distribution During Life.**   During the lifetime of the Settlor and in accordance with the terms of the **FIRST RESTATEMENT OF THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT**, the Trustee shall have the following powers at any time and from time to time.

    (a)   **Income to Beneficiaries:**   The Trustee may pay or apply all or none, or any part of income of the Trust Estate to or for the benefit of:

        (i)   the Settlor;

        (ii)   Settlor's Spouse, **CHARMAINE BROWER;**

        (iii)   any person who is a member of a class of persons which has been appointed by the Protector with the consent of the Trustee to be additional Beneficiaries;

            excepting, however, any person deemed either temporarily or permanently an Excepted Person.

    (b)   **Principal to Beneficiaries:**   The Trustee shall have the power at any time and from time to time with the prior consent of the Protector to pay or apply any part of the principal of the Trust Estate to such one or more of the Beneficiaries (and if more than one, in such shares) as they shall in its absolute discretion thinks fit.

    (c)   **Disability of Settlor.**   The Trustee may use funds out of the income or principal of the Trust Estate as it shall consider necessary or advisable for the health, maintenance, support, and education of the Settlor and any person dependent upon him, or for any other purpose which the Trustee considers to be in the Settlor's best interest. The Settlor shall be deemed disabled if at any time or times, the Protector shall have provided the Trustee with, and not withdrawn, written notice to the effect that the Settlor is unable to manage his affairs including a pending event of duress, *provided that* the Protector shall only serve such notice if the Settlor is under a legal disability or by reason of illness or mental or physical disability is unable to give prompt and intelligent consideration to financial matters and, in the case of illness or such disability, and the Protector shall have received written opinions to that effect from the Settlor's physician and a disinterested consulting physician. The Trustee may rely upon the notice of the Protector without enquiring whether the terms of this proviso have been complied with.

    (d)    **Accumulation of Unpaid Income:**  The Trustee shall accumulate any and all income not paid or applied in accordance with the foregoing provisions of this Paragraph.

2.    **Distribution after Death of the Settlor:**  From and after the death of the Settlor, the Trustee shall administer the Trust Estate as follows:

    (a)    Upon the death of the Settlor, the Trustee may, with the prior consent of the Protector, pay from the income or principal of the Trust Estate:

        (i)    **Funeral Expenses:** the Settlor's Funeral Expenses;

        (ii)    **Claims:**  proper claims allowable against the estate of the Settlor except those made or arising by any Excepted Person whether directly or indirectly;

        (iii)    **Costs:**  Costs of Administration of the Settlor's estate including ancillary costs; and

        (iv)    **Taxes:**  estate and inheritance taxes attributable to the trust fund assessed by reason of the death of the Settlor, except that the amount (if any), by which such estate and inheritance taxes shall be increased as a result of the inclusion of the property over which the Settlor may have power of appointment, shall be paid by the person holding or receiving that property. Provided that this subparagraph shall not apply to assets excludable in computing United States Federal Estate Taxes or estate taxes or succession or inheritance taxes of any other jurisdiction, and this subparagraph shall apply to policies of life insurance and the proceeds thereof only to the extent that other assets are not sufficient to pay the foregoing expenses, claims, costs, and taxes. The Trustee may make payment of the foregoing directly or to the legal representative of the Settlor's estate as the Trustee deem advisable. The Settlor hereby waives any and all rights of reimbursement for any payments made pursuant to this subparagraph and the Trustee shall likewise waive any and all such rights.

    (b)    Subject to the provisions of the last foregoing subparagraph hereof, the Trustee shall make the distributions specified hereinbelow, as follows:

3.    **Tangible Personal Property.** While no Event of Duress is pending, Settlor may prepare a written, signed statement or list ("Written Statement") prior to or after the execution of this Trust which Written Statement allocates certain of Settlor's tangible personal property. From time to time, Settlor may alter the Written Statement allocating said items; provided, however, that Settlor shall not be permitted to modify or create any such Written Statement under any legal compulsion or order of any kind. Settlor intends that the Written Statement, as it may read at the time of Settlor's death, be a legally binding allocation of the tangible personal property described in such Written Statement. If no Written Statement is found and properly identified by the Trustee within three (3) months

after the date of Settlor's death, it shall be presumed that no such Written Statement exists and any subsequently discovered Written Statement shall be of no force or effect and shall be ignored. To the extent such tangible personal property is not allocated in such Written Statement, or in the event said Written Statement cannot be found within three (3) months after Settlor's death, all tangible personal property shall be distributed outright to Settlor's spouse. In the event Settlor's spouse fails to survive Settlor, the Trustee shall distribute such property to **CHARMAINE BROWER**.

Settlor directs the Trustee to pay as an administration expense all expenses incurred in safeguarding such items of tangible personal property and also all expenses incurred in packing, shipping and delivering (including insurance) such items of tangible personal property to said devisee at the place designated by such devisee.

4.    **Specific Division of Business Interests.**

    a)    Settlor's Spouse, if willing and able, shall be appointed by the Trustee as President and Secretary of Briarcliffe, Inc. and the Manager of Briarcliffe Lakeside, LLC. Settlor's spouse shall have the right to use, refinance, sell or otherwise dispose of the property. The net proceeds shall be added to the Trust Estate and may be distributed to Settlor's Spouse at her request. Additionally, the Trustee shall additionally confirm that **CHARMAINE BROWER** will be confirmed to be appointed as President, Secretary, Treasurer, Director, Manager of all trust subsidiary entities, including but not limited to Plato Foufas and Company, PFCO, Inc., Wrightford Corporation and Earlsted, LLC and all other entities owned by the Trust.

    b)    In the event of the sale or refinancing of Sixth Street Partners, LLC and subject to the operating agreement for the company (which includes a split with Tim Foufas for his service to the company), all of the remaining net proceeds after tax shall be retained in the KM Settlement or may be distributed to Settlor's Spouse at her request. In the event that Tim Foufas is involved in acquiring the company from the trust or is recommending any sale of the assets of the company, the sale must be arms length.

5.    **Distribution of Remainder:**    Subject to the above division of business interests all the remainder of the Trust Estate directed to be disposed of under the provisions herein, shall, upon the death of the Settlor, be divided into the Credit Shelter Trust and Marital Trust and distributed as set forth under the terms herein below:

    (a)    **Credit Shelter Trust**. If Settlor's spouse survives Settlor, Trustee as of the death of Settlor shall set aside out of the trust estate, including any property added thereto by reason of Settlor's death, as a separate trust, a pecuniary amount equal to the largest amount, if any, that can pass free of the United States Federal estate tax by reason of the applicable credit amount and state death tax credit (provided use of this credit does not require an increase in the state death tax paid) allowable to Settlor's estate, but no other credit, and after taking into account: (i) property passing under other Paragraphs of this Agreement and outside of this Agreement

(whether by Settlor's Will or otherwise) which does not qualify for the marital or charitable deduction; and (ii) charges to principal that are not allowed as deductions in computing Settlor's Federal estate tax. Settlor recognizes that the amount disposed of under this Paragraph 4.(a) may be affected by the action of Settlor's Personal Representative in exercising certain tax elections.

(i)    **Assets Failing to Qualify for Marital Deduction**. Notwithstanding anything to the contrary contained herein, any assets (or proceeds of assets) not used for the payment of expenses and taxes, which do not qualify for the marital deduction shall be allocated to this Credit Shelter Trust even if their total value exceeds the amount which would have been otherwise allocated to this trust.

(ii)    **Disclaimer**. Notwithstanding anything to the contrary contained herein or in Settlor's Will, if Settlor's spouse disclaims or renounces all or any part of the property of Settlor's estate which Settlor's spouse would otherwise be entitled to receive by reason of Settlor's death, the value of the property otherwise passing under this Paragraph 4.(a) shall not be reduced by the value of such disclaimed property, notwithstanding the fact that such disclaimer by Settlor's spouse may cause the imposition of or an increase in the amount of Federal estate tax payable by reason of Settlor's death.

(iii)    **Disposition**. The trust created above pursuant to this Paragraph 4.(a) shall be designated "Credit Shelter Trust" and shall be held and disposed of as follows:

a.    **Income and Principal**. Commencing with Settlor's death, the Trustee shall collect the income of Credit Shelter Trust and, after paying therefrom the necessary expenses of administration that are properly chargeable against such income, may distribute to or for the benefit of Settlor's spouse so much of the income and/or principal of this Trust, in such equal or unequal shares and proportions as the Trustee, in its discretion, may determine for her health, support, maintenance and education. Any undistributed income shall be periodically added to principal. Distributions from this Trust shall be made first from current income, then from income previously earned but undistributed, and then from principal. No payment made to a descendant of Settlor shall be charged against the share which may be hereinafter provided for such descendants or his or her descendants or ancestor. In no event, however, shall any distribution from this Trust in any way be deemed to discharge a support obligation which may be required of a Trustee to any beneficiary hereunder. While Settlor acknowledges that distributions of principal to Settlor's spouse are

discretionary, the Settlor herein expresses his preferences for any distributions to Settlor's spouse.

b.     **Other Trusts for Spouse.** Notwithstanding anything to the contrary contained in Paragraph 4.(a)(iii)a. of this First Schedule, Trustee shall make no invasion of principal for the benefit of Settlor's spouse from the Credit Shelter Trust so long as any readily marketable assets remain in the Qualified Share of the Marital Trust.

c.     **General Power of Appointment.** Upon the death of Settlor's spouse, the then remaining trust estate (other than any portion thereof made subject to this Paragraph 4.(a) as the result of a disclaimer by Settlor's spouse), including any amounts added thereto from a Marital Trust, shall be held in trust hereunder or distributed to or in trust for the benefit, and appointment exercisable in favor of the decedent, her estate, her creditors, or the creditors of her estate, with such powers and in such manner and proportions as Settlor's spouse (of such Beneficiary's trust) may appoint by Settlor's spouse's Last Will or by lifetime instrument delivered to the Trustee prior to the Settlor's spouse's death, making specific reference to this power of appointment.

d.     **Distribution in Default of Exercise of Power of Appointment.** Upon the death of Settlor's spouse, the balance, if any, of the Credit Shelter Trust (including any amounts added thereto from a Marital Trust) not effectively appointed pursuant to the foregoing paragraph shall be divided and disposed of as hereinafter provided, in the Paragraph herein entitled "TRUSTS FOR DESCENDANTS" in 5(b)(vii) below.

(iv)     **Co-Trustee of Credit Shelter Trust. CARL H. LINDER** shall serve as Co-Trustee of the Credit Shelter Trust. If **CARL H. LINDER**, retires, is removed, or becomes unable or unwilling to act as Trustee, **ORION CORPORATE AND TRUST SERVICES, LTD.** shall continue to serve as Trustee until a new Trustee is appointed pursuant to Article 9 hereinabove.

(b)     **Marital Trusts.** The Marital Trust shall be held and disposed of as follows:

(i)     **Income.** Commencing with Settlor's death, Trustee shall collect the income of the Marital Trust and, after paying therefrom the necessary expenses of administration that are properly chargeable against such income, shall pay the net income to Settlor's spouse, in monthly or other installments not less often than annually as Settlor's spouse and Trustee shall determine to be most convenient for Settlor's spouse. The amount of

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

38932580.1

net income distributable to Settlor's spouse under the provisions of this paragraph shall not, in any event, be less than the amount required to be treated as "income" under the marital deduction provisions of the Code, and the composition of such net income shall include all items within the meaning of the term "income" in the marital deduction provisions of the Code.

Notwithstanding the foregoing, if any Retirement Accounts are held hereunder and the net income earned by any such Retirement Account in any year exceeds the minimum distribution amount, then the Settlor's spouse may compel the Trustee at any time, or from time to time, to withdraw from such Retirement Account an additional amount equal to the difference of the net income earned on the assets held by the Retirement Account during such year and the minimum distribution amount withdrawn by the Trustee in such year, and thereafter, the Trustee shall distribute such amount to Settlor's spouse; however, the Trustee is not required to withdraw and distribute such additional amount unless the Settlor's spouse so compels the Trustee by request in writing. This power to compel the Trustee to withdraw and distribute the entire net income of all Retirement Accounts, at least annually, shall not be less than the amount established to qualify as a qualifying income interest for life within the meaning of I.R.C. 2056(b)(7)(B)(ii) and as held in Revenue Ruling 2000-2. This power herein granted to the Settlor's spouse may be exercisable annually or more frequently at Settlor's spouse's sole and absolute discretion. If this power is not exercised in a given year for any Retirement Account, the Trustee must withdraw from such Retirement Account only the annual minimum distribution amount.

(ii)     **Principal.** Trustee may also pay to Settlor's spouse such sums from principal as Trustee deems necessary or advisable from time to time for Settlor's spouse's health, support and maintenance, the maintenance of her horses, pets, support of her parents, and similar expenditures which she, in her sole discretion determines appropriate considering the income and any readily marketable assets of Settlor's spouse known to Trustee.

(iii)    **Election.** Settlor's Personal Representative may elect to have a specific portion or all of the Marital Trust, herein referred to as the "Qualified Share," treated as qualified terminable interest property for Federal estate tax purposes. If an election is made as to less than all of the Marital Trust, Trustee shall divide the Marital Trust into two separate shares to reflect such partial election, one share being referred to as the "Non-Qualified Share" and the other share being referred to as the "Qualified Share." Trustee may administer each share as a separate trust; however, both shares shall be administered, held and disposed of as otherwise provided in this Paragraph (4)(c). In funding both the Non-Qualified and Qualified Shares, assets shall be valued at the time or times of allocation.

26

Notwithstanding anything to the contrary contained in this Agreement or in law, if Settlor's Personal Representative elects to qualify less than all of a Marital Trust, the estate taxes, if any, incurred as a result of such partial election shall be charged to and paid out of only the Non-Qualified Share.

(iv)   **Co-Trustee of Marital Trusts. CARL H. LINDER** shall serve as Co-Trustee of the Marital Trusts.  If **CARL H. LINDER** retires, is removed, or becomes unable or unwilling to act as Trustee, then **ORION CORPORATE AND TRUST SERVICES, LTD.** shall continue to serve as Trustee until a new Trustee is appointed pursuant to Article 9 hereinabove.

(v)    **Use of Residence by Spouse.**  If any residence of Settlor is held is held as part of the Trust Estate, Settlor's Spouse will have the exclusive use and benefit of the residence(s) during her lifetime. Settlor's Spouse may direct the Trustee to sell any of the residences listed in this paragraph (vii).

(vi)   **Disposition of Marital Trust Upon Death of Spouse.**  Upon the death of Settlor's spouse, unless Settlor's spouse directs by Last Will or by lifetime instrument delivered to Trustee prior to Settlor's spouse's death that less death taxes be paid from a Marital Trust (or the Qualified Share, as the case may be), Trustee shall first pay from the principal of Marital Trust B (or the Qualified Share thereof), and to the extent of any insufficiency, from the principal of Marital Trust A, directly or to the legal representative of the estate of Settlor's spouse as Trustee deems advisable, the amount by which the estate and inheritance taxes assessed by reason of the death of Settlor's spouse shall be increased as a result of the inclusion of the Marital Trusts (or the Qualified Share) in the estate of Settlor's spouse for such tax purposes.  Trustee's selection of assets to be sold to pay that amount and the tax effects thereof, shall not be subject to question by any beneficiary.  After making or providing for the foregoing payments, any then remaining part of the principal of the Marital Trusts shall be disposed of under the Trusts for Descendants hereinbelow.

(vii)  **Trusts For Descendants.**  The Co-Trustee of the Trusts for Descendants shall be **CARL H. LINDER**  If **CARL H. LINDER**, retires, is removed, or becomes unable or unwilling to act as Trustee, **ORION CORPORATE AND TRUST SERVICES, LTD.** shall continue to serve as Trustee until a new Trustee is appointed pursuant to Article 9 hereinabove. The Co-Trustees shall hold and distribute the remaining Trust estate as follows:

If **CHARMAINE BROWER** shall die without issue, then the remainder of the Trust Estate shall be distributed outright and free of trust to the Settlor's son, **TIMOTHY FOUFAS.**

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

In the event that **TIMOTHY FOUFAS** becomes deceased prior to complete distribution of all assets, then the remaining trust assets shall be held and distributed in equal shares outright and free of trust to the Settlor's five (5) grandchildren, *per stirpes.*

Each share created with respect to the descendants, collectively, of a deceased child shall be further divided into separate shares, *per stirpes,* for the benefit of such descendants. Each share created with respect to a living child and/or the then living descendants of a deceased child shall be held by Trustee as a separate trust for the benefit of such descendant and disposed of as follows:

      a.    **Income and Principal.** The Trustee shall collect the income of each Beneficiary's share held in trust and, after paying therefrom the necessary expenses of administration that are properly chargeable against such income, may distribute to or for the benefit of such Beneficiary or such Beneficiary's living lineal descendants, so much of the income and/or principal of such Beneficiary's respective trust, in such equal or unequal shares and proportions as the Trustee, in its discretion, may determine for their health, support, maintenance and education. Any undistributed income shall be periodically added to principal. Distributions from each Beneficiary's trust shall be made first from current income, then from income previously earned but undistributed, and then from principal. No payment made for a descendant of the Beneficiary shall be charged against the share hereinafter provided for the descendant or his or her ancestor or descendants. In no event, however, shall any distribution from a Beneficiary's trust in any way be deemed to discharge a support obligation which may be required of a Trustee to any beneficiary hereunder.

      b.    **Investments in Business and Residence**. The Trustee, in the Trustee's sole and absolute discretion, may invest assets hereunder or distribute to or for the benefit of the Beneficiary such amounts that are reasonably necessary to start or expand a business owned by the Beneficiary or to purchase a place of residence for the Beneficiary. It is Settlor's intent that assets be readily available for business start-up purposes and for residency and that such intention be given priority over conservation of principal; however, consideration should be made to investing the underlying assets of the Beneficiary's trust in such business or residence in comparison to an outright distribution.

      c.    **Limited Power of Appointment**. Upon the death of the Beneficiary, such Beneficiary's trust shall be held in trust

hereunder or distributed to or in trust for the benefit of such one or more of the Beneficiary's descendants, with such powers and in such manner and proportions as the Beneficiary may appoint by Last Will or by lifetime instrument delivered to Trustee prior to such Beneficiary's death making specific reference to this power of appointment.

d.  **Distribution In Default of Beneficiary's Exercise of Power of Appointment**. Upon the death of a Beneficiary, any part of such Beneficiary's trust not effectively appointed, shall be divided into separate shares, *per stirpes,* for the benefit of such Beneficiary's then living descendants, or if none, *per stirpes,* for the benefit of the descendants of the closest ascendant of the Beneficiary who is a descendant of Settlor and who has then living descendants. Each share created pursuant to this Paragraph shall be held by Trustee as a separate trust for the benefit of such descendant and disposed of as hereinabove provided under Paragraphs 4.(d)(i) through 4.(d)(v) of this First Schedule; except that each portion otherwise provided for the benefit of a descendant of Settlor for whom a trust is then provided hereunder this Paragraph 4.(d) shall be added to that trust and thereafter administered and disposed of as a part thereof.

6.  **Alternate Devise.**  If, upon the death of Settlor, or at any time thereafter but prior to complete distribution of any of the trusts created hereunder, there is no living descendant of Settlor, then any remaining trust property held hereunder and not vested or effectively appointed, shall be distributed outright and free of trust to Settlor's then living heirs at law.

7.  **Simultaneous Death:**  If the Settlor and Settlor's Spouse shall die under such circumstances that there is insufficient evidence that they died otherwise than simultaneously, the Settlor shall be deemed to have survived Settlor's Spouse for the purposes of this Schedule. Notwithstanding the foregoing, if the Settlor's Spouse is not living on the 180th day after death, the pecuniary amount set forth in paragraph 4.(a) hereinabove shall be reduced by the maximum amount, if any, required to subject such estate to the same marginal United States Federal Estate Tax rate which would be applicable to the estate of the spouse if she had died intestate immediately after the moment of such Settlor's death, and the estate were valued as of the date on and in the manner in which the Settlor's estate is valued for Federal estate tax purposes.  The Settlor's Personal Representative may rely without further inquiry upon the statement of the legal representative of such Settlor's Spouse's estate as to the nature and value of the estate and its debts and expenses, and the Settlor's Personal Representative's determination based thereon shall not be subject to question by any Beneficiary.

8.  **Qualified Terminable Interest Election:**  Notwithstanding any provision of this document to the contrary, the Settlor directs the Trustee, and, to the extent necessary, directs the Trustee to direct the Personal Representative of the Settlor's estate, to make an election under Section 2056(b)(7) of the Code, and to take any other action necessary to have the

property in the Marital Trust treated as Qualified Terminable Interest Property and therefore qualify for the Federal estate tax marital deduction.

9.  **Primary Direction**:  Consistent with the Settlor's intent to secure for Settlor's estate the Federal estate tax marital deduction with respect to the Marital Trust, the Settlor directs the Trustee, and to the extent necessary directs the Trustee to direct the Personal Representative of the Settlor's estate, to take whatever action shall be necessary to secure said deduction; accordingly, if any provision of this document (other than the preceding paragraph 7. shall prevent the allowance of the Federal estate tax marital deduction with respect to the Marital Trust, such offending provision shall not apply to the Marital Trust, and the Marital Trust shall be held, administered and distributed as if such offending provision did not exist.

10.  **Spendthrift**:  If the beneficiary of any trust created by this trust attempts at any time to anticipate, commute, hypothecate, pledge, assign, sell, transfer, or otherwise alienate, charge, or encumber in any manner all or any part of the income or principal interest reserved to such beneficiary or if at any time any creditor of or claimant against any beneficiary attempts to subject all or any part of such income to the payment of any debts, contracts, liabilities, engagements, torts, or obligations of such beneficiary or any claims against such beneficiary, then and in such event the absolute right of such beneficiary to such interest in said trust shall forthwith cease; and the Trustee shall, from and after such event, pay such income to or apply the same for the education, support, welfare and maintenance of the following persons or such one or more of them (to the exclusion of the other or others), namely, such beneficiary and the issue of such beneficiary, and in such manner and portions, as the Trustee from time to time determines in its or their absolute discretion.  All income not distributed shall be added to the principal of such beneficiary's trust; and at any time when there shall be no issue of such beneficiary, then the Trustee shall pay such income to or apply the same for the following persons (to the exclusion of the other or others), namely, such beneficiary and the persons who would be entitled to receive the principal of said trust if such beneficiary had died immediately prior thereto, and in such manner and portions, as the Trustee from time to time determines in its or their absolute discretion, and the Trustee shall not be compelled to pay to or for such beneficiary any part of the income or principal that would have been payable to such beneficiary but for such attempted alienation or other act.

11.  **Beneficiary Disability**:   In the event that income or principal shall become distributable free of any trust to an infant Beneficiary or to a Beneficiary under other legal disability or to a Beneficiary not adjudicated incompetent but who (by reason of illness or mental or physical disability) is in the opinion of the Trustee unable properly to administer such amounts, then such amounts may be used by the Trustee directly for the best interests of the said Beneficiary or distributed by the Trustee for the benefit of the said Beneficiary to such one or more of the following distributees whom the Trustee shall in its/their sole discretion deem best under the circumstances:

(a)  directly to the said Beneficiary;

(b)  to any legally appointed guardian of the said Beneficiary;

(c)      to a parent or a relative or friend of the said Beneficiary;

(d)      to those who, in the opinion of the Trustee, are dependent for support upon the said Beneficiary; or

(e)      in the case of an infant Beneficiary resident or domiciled in any part of the United States of America, to any custodian under the Uniform Transfer to Minors Act ("Act") of any applicable jurisdiction (but if there shall not then be a custodian for said Beneficiary under such Act then the Trustee(s) shall have power to designate a custodian from among those eligible and willing to serve); and the receipt of any person (whether or not an infant) to whom any such distribution shall be made shall constitute a full release and discharge to the Trustee upon making such distribution and the Trustee shall not be obliged to see to the application of any money or property so distributed.

12.     **Small Trust Termination:** The Trustee shall have the right to terminate any trust created hereunder if its market value declines to a size which makes the continued retention of its principal in trust uneconomical, imprudent, or unwise. The Trust Estate of any trust terminated under this provision shall be distributed outright to the beneficiaries of said trust pursuant to their respective interests.

13.     **Perpetuity:** Notwithstanding anything elsewhere herein contained, no power conferred or reserved by this settlement shall be capable of exercise so that (but for the provisions of this Paragraph) the Trust Estate or any part thereof would vest in interest later than one hundred and twenty years after the creation of this Settlement or such applicable perpetuity period in effect in such jurisdiction as the Trustee in resident.

**[Remainder of page intentionally left blank- Execution page follows]**

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

38932580.1

**ARTICLE 17**
**EXECUTION PAGE**

SIGNED SEALED and DELIVERED                )
on this 30th day of October, 2020          )
by the Protector                           )

Authorised
- Signatories

Guardian Fiduciary Management, Ltd   , Protector

The foregoing Settlement was on the 30th day of October, 2020 signed and sealed by
GUARDIAN FIDUCIARY MANAGEMENT, LTD., the Protector therein named, and published
and declared by it to be the **FIRST RESTATEMENT OF THE FIFTH AMENDMENT AND
RESTATEMENT OF THE KM SETTLEMENT**, all in the presence of us and each of us; and
we thereupon, at his request and in his presence and in the presence of each other, signed our
names thereto as attesting witnesses thereof.

Witness Signature
Print Name: _Asher Nisbett_

Address:
_Gearden View_
_Nevis_

Witness Signature
Print Name: _Keysha Smithen_

Address:
_Prospect, St. John's Parish_
_Nevis_

**[Remainder of page intentionally left blank – Self-proving Acknowledgment follows]**

We, GUARDIAN FIDUCIARY MANAGEMENT LTD., the Protector and ___Asher Nisbett___, and ___Keysha Smithen___, the Witnesses of the foregoing instrument, on oath state that each of us was present and saw the Protector, sign this Trust Agreement, of which this affidavit is a part, in our presence; that this Trust Agreement was attested by each of us in the presence of the Settlor and in the presence of each other; and that each of us believed the Settlor to be older than 18 years, of sound mind and memory at the time of signing.

Authorised
- Signatories

Guardian Fiduciary Management, Ltd___ , Protector

Witness Signature
Print Name: ___Asher Nisbett___

Witness Signature
Print Name: ___Keysha Smithen___

**[Remainder of page intentionally left blank – Trustee's execution page follows]**

33

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

38932580.1

**IN WITNESS WHEREOF** the Trustee of **THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT** has executed and accepted this **FIRST RESTATEMENT OF THE FIFTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT**, on the foregoing terms and conditions on the day and year denoted.

On the 30 day of October , 2020 **THE**    )
**COMMON SEAL** of the said **ORION**    )
**CORPORATE AND TRUST SERVICES LTD.**    )
was hereunto affixed in accordance with its    )
Articles of Association in the presence of    )

                    **ORION   CORPORATE   AND   TRUST SERVICES LTD.,** Trustee

                    By: _____
                    Print Name: Christine Ping
                    Title: Director

Natoria Marin
**SECRETARY**                    Corporate Seal

[Remainder of page intentionally left blank – The First Schedule follows]

## THE SECOND SCHEDULE

### above referred to

The Second Schedule attached hereto includes all entities and individual schematics for such entities.

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

# SECOND SCHEDULE SCHEMATICS ATTACHED

The First Restatement of the Fifth Amendment and Restatement of The KM Settlement

38932580.1

## ORGANIZATION CHART





## ORGANIZATION CHART





# ORGANIZATION CHART



# ORGANIZATION CHART



## THE THIRD SCHEDULE

**above referred to**

The Third Schedule attached hereto includes Assignment of Personal Property

38932580.1

# THIRD SCHEDULE ASSIGNMENTS
# ATTACHED

Fifth Amendment and Restatement of The KM Settlement

38932580.1

## ASSIGNMENT OF PERSONAL PROPERTY

THIS ASSIGNMENT is dated the _6th_ day of _July_, 2009, by and among CHARMAINE FOUFAS ("Assignor") and ORION CORPORATE & TRUST SERVICES LTD. AS TRUSTEE OF THE FOURTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT ("Assignee").

RECITALS:

A.    WHEREAS, Assignor owns furniture, clothing, jewelry, fur coats, horses and fine arts as indicated on the attached Schedule A, (referred to herein as "Personal Property"); and

B.    WHEREAS, Assignor has the right to transfer all of her interest in the Personal Property; and

C.    WHEREAS, Assignee is a Belizean Trust; and

D.    WHEREAS, Assignor wishes to assign her entire interest in the Personal Property.

NOW, THEREFORE, the Assignor and Assignee agree to the following assignment of Personal Property.

BE IT KNOWN THAT, the Assignor, for good and valuable consideration in the amount of twenty dollars (USD $20.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns, transfers and irrevocably sets over unto Assignee and its lawful successors in interest, all of the Assignor's right, title and interest in the Personal Property.

The Assignor warrants that she has good title to same, and full authority to transfer said interest and that Assignee shall have full rights and benefits accruing from such interest

hereinafter, including all rights to enforce same whether in its own name or in the name of the

Assignor, subject to the terms of the Agreement.

IN WITNESS WHEREOF, the parties set their hand and seal this _6th_ day of
_July_, 2009.

_Michelle Keller_
Witness Signature
Print Name: _Michelle Keller._

_Beruni Smythe_
Witness Signature
Print Name: _Beruni Smythe_

_Charmaine Foufas_
**CHARMAINE FOUFAS**, Assignor

**ORION CORPORATE & TRUST
SERVICES LTD. AS TRUSTEE OF
THE FOURTH AMENDMENT AND
RESTATEMENT OF THE KM
SETTLEMENT**, Assignee

_Christina Chou_
Witness Signature
Print Name: _Christina Chou_

_Lorena Cervantes_
Witness Signature
Print Name: _Lorena Cervantes_

By: _____
Print Name: _Christine Ping_
Title: _Director_

## SCHEDULE A

All personal clothing, jewelry, fur coats, fine arts, posters, photographs, paintings, furniture, furnishings, drapery, linens, carpets, china, silverware, serving pieces, glassware, cooking utensils and cookware, appliances, lamps and lighting fixtures, files, records, TV audio and computer equipment located in the residences at 11932 Longwood Green Drive, Wellington FL, and the Co-op apartment at 1120 North Lake Shore Drive Chicago, IL and together with the contents in the Security Self Storage facility at 1341 State Road #7 Wellington, FL. 33414.

All personal clothing, jewelry, fur coats, fine arts, posters, photographs, antique French desk and desk chair, leather wing back chair, French writing table, computer equipment, fine silverware, serving pieces, chinaware, glassware, cooking utensils and cooking ware located in the residence at 210 Woods Rd Aspen CO and the contents which includes paintings, fine arts, furniture, fixtures and furnishings, carpeting, rugs, mirrors and lighting fixtures located at Olde Towne Storage facility at 0062 County Rd 113 Bldg H Carbondale, CO 81623

## AND

Two horses, saddles, Tack, and all Horse equipment.

All of the above personal property is more specifically described in schedule B.

## ASSIGNMENT OF PERSONAL PROPERTY

THIS ASSIGNMENT is dated the _6th_ day of _July_, 2009, by and among PLATO FOUFAS ("Assignor") and ORION CORPORATE & TRUST SERVICES LTD. AS TRUSTEE OF THE FOURTH AMENDMENT AND RESTATEMENT OF THE KM SETTLEMENT ("Assignee").

### R E C I T A L S:

A.      WHEREAS, Assignor owns ~~vehicles~~ CLOTHING &. , jewelry, electronics and fine arts as indicated on the attached Schedule A,  (referred to herein as "Personal Property"); and

B.      WHEREAS, Assignor has the right to transfer all of his interest in the Personal Property; and

C.      WHEREAS, Assignee is a Belizean Trust; and

D.      WHEREAS, Assignor wishes to assign his entire interest in the Personal Property.

NOW, THEREFORE, the Assignor and Assignee agree to the following assignment of Personal Property.

BE IT KNOWN THAT, the Assignor, for good and valuable consideration in the amount of twenty dollars (USD $20.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns, transfers and irrevocably sets over unto Assignee and its lawful successors in interest, all of the Assignor's right, title and interest in the Personal Property.

The Assignor warrants that he has good title to same, and full authority to transfer said interest and that Assignee shall have full rights and benefits accruing from such interest hereinafter, including all rights to enforce same whether in its own name or in the name of the Assignor, subject to the terms of the Agreement.

IN WITNESS WHEREOF, the parties set their hand and seal this 6th day of July, 2009.

_____          _____
Witness Signature                          PLATO FOUFAS, Assignor
Print Name: Michelle Keller

_____
Witness Signature
Print Name: Berani Smith

                                           ORION CORPORATE & TRUST
                                           SERVICES LTD. AS TRUSTEE OF
                                           THE FOURTH AMENDMENT AND
                                           RESTATEMENT OF THE KM
                                           SETTLEMENT, Assignee

_____          By: _____
Witness Signature                          Print Name: Christine Ping
Print Name: Christina Chow                  Title: Director

_____
Witness Signature
Print Name: Lorena Cervantes

## SCHEDULE A

All personal clothing, books, artifacts, CDs, DVDs, TV and audio equipment, furniture, fixtures and furnishings located in the residence at 11932 Longwood Green Drive, Wellington FL

All personal clothing, wristwatches, books, files and records (business and personal), CDs, DVDs, TV and audio and computer equipment, bookcases, furniture, furnishing, fixtures, lamps artifacts, paintings, photographs, and etchings located in the residence at 1120 North Lake Shore Drive Chicago, IL and at Public Storage at 1916 North Elston Avenue, Chicago, IL

All personal clothing, books, photographs, in the residence at 210 Woods Rd Aspen, CO and files, books, DVDs, LPs, paintings, photographs, furniture, and furnishings located at Olde Towne Storage facility at 0062 County Rd 113 Bldg H Carbondale, CO  81623

All of the above personal property is more specifically described in Schedule B.

# EXHIBIT F

**GUARDIAN FIDUCIARY MANAGEMENT LIMITED**
Suite 205A, Saffrey Square, Bay Street
Nassau, Bahamas

May 12, 2021

Mr. Plato Foufas
11932 Longwood Green
Wellington, FL 33414

## RE: Bankruptcy Court order to Liquidate all assets

Dear Mr. Foufas:

Please be advised that we are in receipt of your request letter dated May 7, 2021 related to the Bankruptcy Court order to liquidate all assets under The KM Settlement.

Please note that we cannot comply with any request whatsoever as we determine that these requests are made by you during an Event of Duress. As such, we are not obligated nor will satisfy your request at this time.

Very truly yours,

**GUARDIAN FIDUCIARY MANAGEMENT LIMITED**, Protector

By: _____
Kenley Maynard, Authorized Signatory

By: _____
Marsha Fahie, Authorized Signatory